**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RICOH COMPANY, LTD., | ) ) |
| Defendant. | ) ) ) |

Case No. 1:12-cv-03109 (DLC)

## MEMORANDUM OF LAW IN SUPPORT OF EASTMAN KODAK COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT RICOH COMPANY, LTD. BREACHED THE PARTIES' PATENT LICENSE AGREEMENT

Robert J. Gunther, Jr.
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com

*Attorneys for Eastman Kodak Company*

**REDACTED**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..................................................................................................1

II. UNDISPUTED FACTUAL BACKGROUND.....................................................4

    A.  The Plain Terms of the PLA Require Ricoh to Pay Royalties on All Digital Cameras Sold By an Acquired Company That was Not Previously Licensed and Had Not Paid Royalties to Kodak. ..........................................................4

    B.  Ricoh Breached the PLA By Failing to Pay Royalties on Pentax's Digital Camera Sales. ...............................................................................................5

        1.  Ricoh Acquired Pentax in 2011. ..........................................................5

        2.  Pentax Sold Digital Cameras, as That Term Is Defined by the PLA, from 2002 through 2012. ......................................................................5

        3.  Pentax Did Not Have a License to Kodak's Digital Camera Patent Portfolio. ..............................................................................................7

        4.  Neither Pentax Nor Ricoh Paid Any Royalties to Kodak on Pentax's Digital Camera Sales. ..........................................................................9

III. ARGUMENT ....................................................................................................10

    A.  Summary Judgment that Ricoh Breached the PLA Is Appropriate. ............10

    B.  Ricoh's Attorney Arguments Are Directly Contrary to the Undisputed Record.........12

        1.  Ricoh's Implied License Defense Fails as a Matter of Law ...............12

        2.  Ricoh's Estoppel Defense is Contrary to the Undisputed Record. .....................17

        3.  Ricoh's Patent Misuse Claim Fails as a Matter of Law......................18

        4.  Ricoh's Laches Claim Fails as a Matter of Law................................20

        5.  Pentax's Digital Cameras Meet the Definition of "Digital Camera" Set Forth in the PLA. ................................................................................22

IV. CONCLUSION..................................................................................................23

**REDACTED**

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*,
  750 F.2d 903 (Fed. Cir. 1984) .............................................................................16

*Brown v. Henderson*,
  257 F.3d 246 (2d Cir. 2001) ....................................................................................8

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*,
  930 F.2d 228 (2d Cir. 1991) ..................................................................................16

*CIT Group/Equip. Financing, Inc. v. Shapiro*,
  No. 09-civ-409 (JPO), 2013 WL 12852689 (S.D.N.Y. Mar. 29, 2013) ............12, 18

*Duval Sulphur & Potash Co. v. Potash Co. of Am.*,
  244 F.2d 698 (10th Cir. 1957) ...............................................................................16

*Eastman Kodak Co. v. Asia Optical Co., Inc.*,
  No. 11-civ-6036 (DLC), 2012 WL 917393 (S.D.N.Y. Mar. 16, 2012), *aff'd by
  Eastman Kodak Co. v. Asia Optical Co., Inc.*, 2013 WL 1811086 (2d Cir. May 1,
  2013) .................................................................................................................16, 19

*Engel Indus., Inc. v. Lockformer Co.*,
  96 F.3d 1398 (Fed. Cir. 1996) ...............................................................................19

*FCS Advisors, Inc. v. Fair Fin. Co., Inc.*,
  378 Fed. Appx. 65 (2d Cir. May 24, 2010) ............................................................11

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
  639 F.3d 557 (2d Cir. 2011) ..................................................................................10

*Ferring B.V. v. Allergan, Inc.*,
  --F. Supp. 2d. -- 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013) ............................21

*Hemstreet v. Comp. Entry Sys. Corp.*,
  972 F.2d 1290 (Fed. Cir. 1992) .............................................................................22

*In re Eastman Kodak Co.*,
  479 B.R. 280 (Bankr. S.D.N.Y. 2012) ...................................................................21

*M. Lowenstein & Sons, Inc. v. Austin*,
  430 F. Supp. 844 (S.D.N.Y. 1977) ........................................................................21

*Margo v. Weiss*,
  213 F.3d 55(2d Cir. 2000) ........................................................................................8

**REDACTED**

*Medinol, Ltd. v. Boston Scientific Corp.*,
  346 F. Supp. 2d 575 (S.D.N.Y. 2004)...................................................................17

*Podell v. Citicorp Diners Club, Inc.*,
  914 F. Supp. 1025 (S.D.N.Y. 1996)......................................................................8

*Princo Corp. v. Int'l Trade Comm'n*,
  616 F.3d 1318 (Fed. Cir. 2010)...........................................................................20

*Stickle v. Heublein, Inc.*,
  716 F.2d 1550 (Fed. Cir. 1983)...........................................................................16

*The Brandner Corp. v. V-Formation, Inc.*,
  98 Fed. App'x 35 (2d Cir. 2004)...................................................................10, 11

*U.S. v. Gordon*,
  78 F.3d 781 (2d Cir. 1996)..................................................................................21

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*,
  262 F.3d 1363 (Fed. Cir. 2001).....................................................................17, 18

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969).......................................................................................3, 19

**STATE CASES**

*Fade v. Pugliani/Fade*,
  779 N.Y.S.2d 568 (2d Dep't 2004)..................................................................3, 20

Eastman Kodak Company ("Kodak") respectfully submits this memorandum in support of its Motion for Partial Summary Judgment that Ricoh Company, Ltd. ("Ricoh") breached the parties' May 1, 2002 Patent License Agreement ("PLA").

## I.      INTRODUCTION

Kodak granted Ricoh a license to Kodak's portfolio of more than one thousand digital camera patents.  In return, Ricoh agreed to pay royalties on covered sales of digital cameras.  After extensive discovery, the undisputed facts show that Ricoh has breached the PLA by failing to pay royalties owed to Kodak under the plain terms of the agreement.

In Section 4.4 of the PLA, Ricoh expressly agreed that if it acquired another company that: (i) was not already licensed to Kodak's portfolio of digital camera patents; and (ii) had not already paid royalties to Kodak on its digital camera sales, Ricoh would pay royalties on the acquired company's digital camera sales made during the term of the PLA.  (Ex. 1 [PLA] at § 4.4.)  The undisputed facts show that Ricoh has not complied with the unambiguous requirements of this provision.  It is undisputed that:

- In 2011, while the PLA was in effect, Ricoh acquired Pentax Imaging Corp.;

- Pentax sold thousands of digital cameras during the term of the PLA;

- Pentax never entered a written digital camera patent license agreement with Kodak;

- Pentax never paid any royalties to Kodak on its sales of digital cameras; and

- Ricoh has refused to pay any royalties to Kodak on Pentax's digital camera sales.

Ricoh does not appear to dispute the straightforward requirements of Section 4.4.  Instead, Ricoh attempts to avoid its royalty obligations under Section 4.4 through a series of attorney arguments that are directly contrary to the undisputed evidence – including the testimony of Ricoh's own witnesses – and well-settled law.

**REDACTED**

First, Ricoh argues that Pentax had an "implied license"—royalty-free—to Kodak's digital camera patent portfolio and that, as a result, Ricoh is not required to pay royalties on Pentax's sales under Section 4.4.  But Ricoh's (and Pentax's) own witnesses repeatedly and unequivocally admitted that Pentax never had a license or any rights to Kodak's digital camera patents.  Indeed, the manager of Pentax's intellectual property group – the individual who was responsible for overseeing Pentax's intellectual-property related work -- admitted that Pentax had "***no licensing relationship whatsoever***" with Kodak.  (Ex. 2 [Taniguchi Dep. Vol. 2] at 202:2-9.)

Second, Ricoh argues that Kodak is "estopped" from collecting royalties on Pentax's digital camera sales because Kodak allegedly lead Pentax to believe that it would not assert its digital camera patents against Pentax.  But Ricoh could not identify ***a single instance*** in which Kodak indicated that it would not sue Pentax for patent infringement.  (Ex. 3 [Kawano Dep. Vol. 1] at 86:1-7 (emphasis added).)  Moreover, Ricoh's (and Pentax's) own witnesses confirmed that Pentax was well aware, and in fact "afraid," that Kodak might assert its patents.  The General Manager of Pentax's Imaging Systems Business Division -- *the same individual who Ricoh alleges was led to believe that Kodak would not assert its patents* -- conceded that Kodak told him that it might in fact assert its patents.  (Ex. 4 [Tsuruta Dep. Vol. 1] at 87:2-5 ("Q. And ***he told you that Kodak might assert its patents against Pentax***, but if that happened, he would work to get Pentax favorable treatment, correct?  A. Yes, that's right.") (emphasis added).)  And Pentax's senior general manager in charge of digital camera development admitted in an internal company email in 2010 that he had been "afraid" that Kodak would sue Pentax for patent infringement.  (Ex. 5 [RICOH60000453].)

REDACTED

Third, Ricoh argues that Kodak's claim is barred by the doctrine of patent misuse because Kodak has allegedly not shown that each and every Pentax digital camera infringed a Kodak patent.  But the U.S. Supreme Court has already rejected this argument.  It is well-settled that where the parties expressly contract to pay a commuted royalty on all products for the sake of mutual convenience, there is no patent misuse.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 138 (1969) ("If convenience of the parties rather than patent power dictates the total-sales royalty provision, there are no misuse of the patents and no forbidden conditions attached to the license.").  The plain terms of the license confirm that is exactly what happened here.

Finally, Ricoh argues that Kodak's claim is barred by the doctrine of laches because Kodak was allegedly aware that Pentax was selling digital cameras since at least 2001.  Again, this argument fails on the facts and the law.  As an initial matter, laches does not apply to claims for damages for breach of contract.  *See Fade v. Pugliani/Fade,* 779 N.Y.S.2d 568, 570 (2d Dep't 2004) ("laches is not applicable to an action at law, and thus may not bar ... causes of action alleging breach of contract… to the extent they seek money damages").  In any event, Kodak's claim against Ricoh for failure to pay royalties on sales of Pentax cameras could not have accrued prior to Ricoh's October 2011 acquisition of Pentax.  Kodak filed its complaint in this action only six months later.  Accordingly, laches does not apply to Kodak's claims in this case.

Under the plain terms of Section 4.4, after Ricoh acquired Pentax, Ricoh was required to pay royalties on Pentax digital cameras sold during the term of the PLA.  Kodak respectfully requests that the Court enter summary judgment that Ricoh's failure to do so constitutes a breach of the PLA.

- 3 -

REDACTED

## II.    UNDISPUTED FACTUAL BACKGROUND

### A.    The Plain Terms of the PLA Require Ricoh to Pay Royalties on All Digital Cameras Sold By an Acquired Company That was Not Previously Licensed and Had Not Paid Royalties to Kodak.

Kodak was founded in 1892 and has a long history of innovation in photography and image processing. After inventing the digital camera in 1975, Kodak invested billions of dollars into the research and development of digital imaging technology. This investment resulted in many foundational inventions—inventions that led to more than 1,000 patents in the field of digital imaging.

Under the parties' May 1, 2002 PLA, Kodak granted Ricoh a license to Kodak's full digital camera patent portfolio. (Ex. 1[ PLA ] at § 3.1.) In return, Ricoh agreed to pay royalties on all Digital Cameras as that term is defined in the PLA. (*Id.* at §§ 1.2, 4.2, 3.1.) Specifically, Ricoh agreed to pay a ████ royalty on all revenues resulting from its sales of Digital Cameras. (*Id.* at § 4.2.) The parties agreed that any disputes over the PLA would be governed by the laws of the State of New York. (*Id.* at § 8.4.)

In Section 4.4, Ricoh further agreed to pay royalties on Digital Cameras sold by companies that Ricoh acquired during the term of the PLA.[1] Ricoh agreed that if Ricoh acquired a company that sold Digital Cameras, was not a Kodak licensee, and had not paid royalties to Kodak on its Digital Camera sales, Ricoh was required to pay royalties on the Digital Cameras sold by the acquired company during the term of PLA:

> If Ricoh acquires a business after the Effective Date of this Agreement which business was not previously licensed by Kodak under Kodak's Patents and for which said business had not paid royalties on Licensed Products sold by said acquired business, then Ricoh shall, with its next royalty payment following the acquisition, remit to Kodak a payment equal to ████████████████████ multiplied by the worldwide Net Sales for the acquired business' Licensed Products for the period beginning on the Effective Date and

---

[1]    The term of the PLA is ten years—from May 1, 2002 until April 30, 2012. (Ex. 1 [PLA] at § 6.1.)

ending on the acquisition date in addition to paying the royalty due under Paragraph 4.2 for sales by such acquired business after the acquisition date.

(Ex. 1 [PLA] at § 4.4.)

Multiple senior Ricoh employees reviewed and approved the requirements of Section 4.4 before Ricoh executed the agreement. (Ex. 6 [Saji Dep. Vol. 1] at 75:14-76:5, 51:10-52:7, 54:23-55:4 (PLA was carefully reviewed prior to signing and approved by at least three people at Ricoh, including the general manager of the image capturing device division, the general manager of the legal and intellectual property division, and the president of the personal multimedia division).) Moreover, in a 2007 amendment to the PLA, Kodak and Ricoh *explicitly reaffirmed the requirements of Section 4.4.* (Ex. 7 [Second Amendment to PLA] at § 7(a) (reaffirming Section 4.4).)

### B. Ricoh Breached the PLA By Failing to Pay Royalties on Pentax's Digital Camera Sales.

The undisputed facts show that: Ricoh acquired Pentax in 2011; Pentax sold Digital Cameras during the term of the PLA; Pentax was never a licensee to Kodak's digital camera patent portfolio; Pentax never paid royalties to Kodak; and Ricoh nonetheless failed to pay any royalties on the digital cameras that Pentax sold.

### 1. Ricoh Acquired Pentax in 2011.

On October 1, 2011, Ricoh acquired Pentax's digital imaging division, which made and sold digital cameras. (June 25, 2012 Answer to Compl., Dkt. 18, ¶ 29.) It is undisputed that Pentax sold digital cameras throughout the entire term of the PLA—from May 1, 2002, when the PLA was executed, through April 30, 2012, when the PLA expired. (Ex. 8 [Eguchi Dep. Vol. 1] at 61:23-62:13.)

### 2. Pentax Sold Digital Cameras, as That Term Is Defined by the PLA, from 2002 through 2012.

The PLA defines "Digital Camera" as follows:

> "Digital Camera" shall mean a portable, self-contained device utilizing an Area Image Sensor having at least 300,000 pixels, as well as electronics and optical elements that captures still or motion images of visible radiation and (a) records a digital signal representing such images on a Removable Digital Storage Media or (b) stores at least two such images in internal memory.

(Ex. 1 [PLA] at § 1.2.)

Ricoh has admitted that nearly all of the digital cameras that Pentax sold during the term of the PLA met the definition of Digital Camera. (Ex. 9 [Ricoh Resp. to Int. Nos. 9, 18] at Ex. A (admitting that all but 22 of the 127 digital camera models Ricoh sold during the relevant period meet the definition of "Digital Camera"); Ex. 10 [Ricoh's Resp. to Kodak's First Set of RFAs] at RFA Nos. 11, 12 ("Ricoh admits that certain digital cameras sold by Pentax from at least 1997 to October 1, 2011 fall within the definition of Digital Cameras in the PLA as amended…. Ricoh admits that certain digital cameras sold by Pentax since October 1, 2011 fall within the definition of Digital Cameras in the PLA as amended").)[2]

Ricoh's attorneys argue that one subset of Pentax digital cameras -- Pentax digital single lens reflect cameras ("DSLRs") sold in a kit with a lens – are not "Digital Cameras" because they are allegedly neither "portable" nor "self-contained."  But Ricoh's corporate designee testified that Pentax's DSLRs are both portable and "complete picture taking devices" when sold with a lens.  (Ex. 3 [Kawano Dep., Vol. 1] at 31:3-6 ("Q. So, Mr. Kawano, all Pentax SLR cameras are portable, correct?  A. That's correct, if you're talking about general SLRs."); *id.* at 27:3-17 (Pentax DSLRs are capable of being carried); *id.* at 21:3-7, 21-24 (when used with lens, battery, and memory, Pentax DSLR is complete picture taking device); Ex. 11 [Kawano Dep., Vol. 2] at 235:1-4 (Pentax intends for DSLRs to be used with a lens); *id.* at 235:10-20 (DSLR

---

[2]       *See also* (Ex. 11 [Kawano Dep., Vol. 2] at 233:1-13 (all Pentax cameras contain an image sensor of greater than 300,000 pixels); *id.* at 233:17-19 ("Q. They all include electronics that allow the cameras to capture images, correct? A. That's correct."); *id.* at 237:14-16 (all Pentax digital cameras can store multiple images); Ex. 3 [Kawano Dep., Vol. 1] at 31:3-6, 26:24-25 (Pentax cameras are portable).)

with lens attached allows user to take a photograph and contains an optical element that allows a user to capture an image).)[3]

> ### 3.   Pentax Did Not Have a License to Kodak's Digital Camera Patent Portfolio.

The overwhelming and undisputed evidence shows that Pentax never had a license – written or otherwise -- to Kodak's digital camera patent portfolio.  Indeed it is undisputed that:

- Pentax and Kodak never signed a written patent license agreement covering Kodak's digital camera patents (Ex. 3 [Kawano Dep., Vol. 1] at 65:1-6 ("Q. But we can both agree that between 2002 and 2011, Pentax never entered a written license agreement for Kodak's digital camera patents, right?  A. There's no written patent agreement."));

- Pentax and Kodak never had any discussions or negotiations regarding the terms of a license to Kodak's digital camera patents (Ex. 4 [Tsuruta Dep., Vol. 1] at 59:18-21 ("Q. So there were no negotiations, as far as you're aware of, between Kodak and Pentax with respect to a license to Kodak's patents, right? A. That's correct."); Ex. 3 [Kawano Dep., Vol. 1] 54:11-14 ("Q. Well, did it get down to negotiations concerning patent royalties with Kodak? A I don't think there were any negotiations."));

- Pentax and Kodak never agreed that any specific Pentax products would be covered by a license to Kodak's digital camera patents (Ex. 3 [Kawano Dep., Vol. 1] at 68:18-22 ("Q. Okay. So Kodak and Pentax never discussed what products would be covered by a license to Kodak's patents, correct? A. That's correct in regard to there was no discussion of the products or the patents, yes."));

- Pentax and Kodak never agreed that Pentax had the rights to use any specific Kodak digital camera patents (Ex. 3 [Kawano Dep. Vol. 1] at 68:23-69:2 ("There was no specific discussion of specific patents"));

- Pentax and Kodak never agreed to a royalty rate that would cover a license to Kodak's digital camera patents (Ex. 3 [Kawano Dep. Vol. 1] 54:11-14, 57:11-22; Ex. 4 [Tsuruta Dep. Vol. 1] at 89:20-22 ("Q. You and Mr. Kojima didn't reach agreement as to a particular royalty rate, correct? A. That's correct."));

- Kodak never told Pentax that Pentax had permission to use Kodak's digital camera patents (Ex. 3 [Kawano Dep. Vol. 1] at 83:18-84:6 ("Q. …My question is, no one from Kodak specifically told Pentax that it had permission to use Kodak's digital camera patents, correct?  A. I have no—I have no understanding of that being

---

[3]      Kodak is not seeking damages for DSLRs sold without a lens.

**REDACTED**

received in written form.  Q. And do you have any understanding of that being received in any other form?  A.  No, I don't know."));

- Kodak never told Pentax that Kodak would not sue Pentax for patent infringement (Ex. 12 [Kitazawa Dep., Vol. 2] at 170:13-20 (could not identify any instance in which Kodak said it would not sue Pentax for patent infringement), *id.* at 172:17-22 (could not identify any instance in which Kodak said it would not assert its patents against Pentax); Ex. 3 [Kawano Dep., Vol. 1] at 86:1-7 ("Q. You can't identify a single instance in which anyone from Kodak ever promised Pentax that Kodak would not sue Pentax for patent infringement, correct? [Objection] A. I don't know."); Ex. 4 [Tsuruta Dep., Vol. 1] at 87:2-5 ("Q. And he told you that Kodak might assert its patents against Pentax, but if that happened, he would work to get Pentax favorable treatment, correct?  A. Yes, that's right."); Ex. 13 [Tsuruta Dep., Vol. 2] at 149:18-22 ("Q. So he told you that there was a possibility that Kodak would assert its digital camera patents against Pentax, and in the event that that happened, he would work to get Pentax favorable treatment, right?  A. Yes, 'if' is what he said…"));

- When Ricoh acquired Pentax in 2011, Pentax did not say **anything** about having a license to Kodak's digital camera patents.  (Ex. 14 [Saji Dep., Vol. 2] at 159:5-8,163:16-20.) ███████████████████████████████████
███████████████████████████████████████████████████████
███████████████████

---

[4]      Ricoh's only answer to this testimony has been to attempt to substantively alter much of it through errata sheets under the guise of "mistranslation."  (Ex. 16 [Kawano Errata]; Ex. 17 [Tsuruta Errata] at, e.g., p. 9 (effectively changing "yes" to "no" by changing a simple "Yes" to "Yes. That is what Mr. Kojima stated in his declaration in 2012.  But he definitely did not say this to me at the time," under the guise of a "Translation Issue").)  By way of example only, Ricoh has attempted to add the word "*written*" to its witnesses' repeated admissions that there was "no agreement" between Kodak and Pentax in order to suggest that there was only no written license between Kodak and Pentax.  In just three errata sheets, (Ex. 18 [Urano Errata], Ex. 19 [Eguchi Errata], Ex. 17 [Tsuruta Errata, Vol. 1]), Ricoh has made this change **more than one hundred times.**  This is improper.  There were two sworn interpreters at the depositions of Ricoh's witnesses—including an interpreter hired and paid by Ricoh.  Neither interpreter translated Ricoh's witnesses' answers to refer only to "written" agreements.  And Ricoh did not attempt to establish this on redirect during any of the depositions.  It is well-settled that a party cannot avoid summary judgment by attempting to change its witnesses' admissions through an errata sheet.  *See Margo v. Weiss*, 213 F.3d 55, 60-61(2d Cir. 2000) ( "well-settled rule in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony") (internal citations omitted); *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1034 (S.D.N.Y. 1996) (granting summary judgment for Defendant, finding "Plaintiff is not entitled to have his altered answers take the place of the original ones.  His original deposition answers constitute the admissions of a party, and as such form part of the record evidence."); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first

**REDACTED**

In fact, the Manager of Pentax's Intellectual Property Group, Kazuya Taniguchi, the individual responsible for Pentax's intellectual property matters, expressly admitted that Pentax had "***no licensing relationship whatsoever with Kodak***":

> Since our company (IS Division) currently has no licensing relationship whatsoever with Kodak, we are not paying any patent fees.  I think that we would have to negotiate and have no choice but to pay some amount if Kodak approached us with a license, but at this point in time, our policy is not to initiate any license discussions.

(Ex. 2 [Taniguchi Dep., Vol. 2] at 202:2-9; Ex. 20 [RICOH10265506].)

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████    In fact, confirming that Pentax did not have any licensing relationship with Kodak, Pentax's Senior General Manager for development of digital cameras admitted in 2010 that Pentax had been "afraid" that Kodak would sue Pentax for infringing Kodak's digital camera patents.  (Ex. 5 (RICOH6000453) (noting that Pentax had been "afraid … that Kodak may sue").)

     **4.**     **Neither Pentax Nor Ricoh Paid Any Royalties to Kodak on Pentax's Digital Camera Sales.**

Pentax made billions of dollars from the sales of digital cameras from 2002 through the expiration of the PLA in April, 2012.  (Ex. 8 [Eguchi Dep., Vol. 1] at 64:11-14 ("Q. Since 2002, you would agree that Pentax has sold billions of U.S. dollars['] worth of digital cameras, correct? A. Yes.").)  It is undisputed that Pentax did not pay any royalties on its sales of digital cameras. (Ex. 23 [Urano Dep.] at 115:22-25 ("Q. Okay. Let me just back up for a second. You would

_____

time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony").

agree with me that Pentax never paid Kodak any royalties, right? A. Yes.").)  Similarly, it is undisputed that after acquiring Pentax, Ricoh did not pay any royalties to Kodak on Pentax's digital camera sales (from either before or after the acquisition).  (Ex. 10 [Ricoh's Resp. to Kodak's First Set of RFAs] at Nos. 13, 14.)

## III.   ARGUMENT

Summary judgment is appropriate where there are no disputed issues of material fact. *See Fed. Ins. Co. v. Am. Home Assur. Co*., 639 F.3d 557, 566 (2d  Cir. 2011) ("Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.") (internal citations and quotations omitted).  Where the requirements of a contract are unambiguous, claims for breach of contract are particularly amenable to summary judgment.  *See The Brandner Corp. v. V-Formation, Inc.,* 98 Fed. App'x 35, 38 (2d Cir. 2004) (affirming judgment where terms of contract were clear and no dispute that defendant did not comply with terms).  Summary judgment is appropriate here because the undisputed facts establish that Ricoh breached the plain terms of the PLA by failing to pay royalties on Pentax digital camera sales after it acquired Pentax in 2011.

### A.   Summary Judgment that Ricoh Breached the PLA Is Appropriate.

The requirements of Section 4.4 are straightforward and unambiguous.  Section 4.4 provides that Ricoh must pay royalties on the covered digital camera sales of a company that Ricoh acquires where:

 i. The company that Ricoh acquires sold Digital Cameras during the term of the PLA (2002 – 2012);

 ii. The acquired company was not licensed to Kodak's portfolio of digital camera patents; and

    iii.    The acquired company had not paid royalties to Kodak on its sales of Digital Cameras.

(Ex. 1 [PLA] at § 4.4 (requiring Ricoh's payment on "Licensed Products" sold by acquired, unlicensed company during the term of the agreement); §1.8 (defining "Licensed Products" as "Digital Cameras").)  The undisputed evidence shows that each of the conditions of Section 4.4 is met here:

    i.    In 2011, Ricoh acquired Pentax (June 25, 2012 Answer to Compl., Dkt. 18, ¶ 29), which made and sold digital cameras from 2002 through 2012 (Ex. 8 [Eguchi Dep., Vol. 1] at 61:23-62:13);

    ii.    Pentax made and sold Digital Cameras as defined in the PLA throughout the term of the agreement (Ex. 9 [Ricoh Resp. to Int. Nos. 9, 18] at Ex. A (admitting that all but approximately 22 of the 127 digital camera models Ricoh sold during the relevant period meet the definition of "Digital Camera"); Ex. 10 [Ricoh's Resp. to Kodak's First Set of RFAs] at Nos. 11, 12 ("Ricoh admits that certain digital cameras sold by Pentax from at least 1997 to October 1, 2011 fall within the definition of Digital Cameras in PLA as amended…. Ricoh admits that certain digital cameras sold by Pentax since October 1, 2011 fall within the definition of Digital Cameras in the PLA as amended");

    iii.    Pentax has never taken a license to Kodak's digital camera patents (Ex. 20 [RICOH10265506]; Ex. 2 [Taniguchi Dep., Vol. 2] at 202:2-9  (Kodak and Pentax have "no licensing relationship whatsoever"); Ex. 5 [RICOH6000453] (Pentax afraid Kodak would sue); ███████████████████████ ███████████████████████████████████████████ ████████████████████████; Ex. 3 [Kawano Dep., Vol. 1] at 65:1-6; Ex. 14 [Saji Dep., Vol. 2] at 159:5-8, 163:16-20); and

    iv.    Pentax never paid royalties to Kodak on its sales of digital cameras (Ex. 23 [Urano Dep., Vol. 1] at 115:22-25).

Accordingly, Ricoh's failure to pay royalties on Pentax's digital camera sales (Ex. 10 [Ricoh's Resp. to First Set of RFAs] at Nos. 13, 14.) is plainly a breach of Section 4.4.  *See The Brandner Corp.,* 98 Fed App'x at 38 (affirming summary judgment of liability on breach of contract claim where terms of contract were clear and there was no dispute that defendant did not comply with terms); *FCS Advisors, Inc. v. Fair Fin. Co., Inc.,* 378 Fed. Appx. 65, 67 (2d Cir.

May 24, 2010) (affirming district court's grant of summary judgment of breach of contract where undisputed evidence demonstrated that defendant had breached the plain language of the agreement); *CIT Group/Equip. Financing, Inc. v. Shapiro*, No. 09-civ-409 (JPO), 2013 WL 12852689 at * 1-3 (S.D.N.Y. Mar. 29, 2013) (granting summary judgment of liability for breach of contract to plaintiff where there was no dispute that defendant failed to make payments due under the plain terms of the agreement; rejecting "grab-bag of arguments designed to defeat Plaintiff's straightforward breach of contract claim").

**B.    Ricoh's Attorney Arguments Are Directly Contrary to the Undisputed Record.**

Ricoh does not dispute the requirements of Section 4.4.  (Ex. 10 [Ricoh's Resp. to First Set of RFAs] at No. 9.)  Instead, Ricoh attempts to excuse its failure to comply with the plain terms of the agreement through five attorney arguments, each of which is wrong on the facts and the law.

**1.    Ricoh's Implied License Defense Fails as a Matter of Law**

It is undisputed that Pentax never entered a written license agreement with Kodak for its digital camera patents.  Ricoh argues, however, that Pentax allegedly obtained an "implied license" to Kodak's entire portfolio of 1,000 digital camera patents—without having to pay a single dollar in royalties—through two alleged oral conversations with Kodak-Japan employees.

Ricoh contends that in October 2003, in connection with discussions relating to a printer program called ImageLink, Kodak employee Yusuke Kojima told Masataka Tsuruta, the General Manager of Pentax's Imaging Systems Group, that he would "use [his] personal efforts to negotiate within Kodak to obtain favorable treatment regarding patent royalties for Pentax in the event that Kodak were ever to assert its digital camera patents against Pentax."  (Ex. 24 [Kojima Decl.]; Ex. 25 [Ricoh's Amended and Second Supp. Resp. to Kodak Int. No. 3] at 19.)  Ricoh

further contends that in February 2004, in connection with discussions regarding the supply of CCD sensors to Pentax, Kodak employee Kunio Kimeda told Mr. Tsuruta that Kodak "would grant favorable treatment to Pentax regarding patent royalties in the event that Kodak were ever to assert its digital camera patents against Pentax." (Ex. 25 [Ricoh's Amended and Second Supp. Resp. to Kodak Int. No. 3] at 19.) As a matter of law, both statements are insufficient to create an implied license. The undisputed evidence establishes that Pentax had no licensing relationship with Kodak and no rights to use Kodak's patents.

*First*, the alleged statements, on their face, are insufficient to create a license. As an initial matter, Ricoh's witnesses concede that the two conversations in which the statements were made lasted only *five to ten minutes each*. (Ex. 13 [Tsuruta Dep., Vol. 2] 147:18-22, 149:6-10.) In any event, the statements are merely offers to "negotiate within Kodak" in an attempt to obtain "favorable treatment" for Pentax "in the event that Kodak were ever to assert its digital camera patents against Pentax." (Ex. 26 [Tsuruta Decl.]; Ex. 4 [Tsuruta Dep., Vol. 1] at 58:2-5, 58:21-24; Ex. 13 [Tsuruta Dep., Vol. 2] at 119:11-15 (all Mr. Kojima and Mr. Kimeda said was that they would "try" to get preferential treatment).) It is undisputed that Kodak never told Pentax that potential "preferential treatment" meant that Pentax would receive a license or any rights to its patents. (Ex. 27 [Kitazawa Dep., Vol. 1] at 77:14-24 ("preferential treatment" never defined), Ex. 12 [Kitazawa Dep., Vol. 2] at 109:10-14 (no discussion or agreement concerning what "favorable treatment" meant).) And in fact, it is undisputed that Mr. Kojima specifically told Pentax that there was "*no guarantee*" that he could even obtain preferential treatment for Pentax. (Ex. 13 [Tsuruta Dep., Vol. 2] at 119:16-18 ("Q. And he specifically said that there was no guarantee that his efforts would be successful, right? A. Yes.").)

**REDACTED**

***Second***, the undisputed evidence demonstrates that Kodak and Pentax never reached agreement on any specific terms that would govern an implied license.  (Ex. 4 [Tsuruta Dep., Vol. 1] at 59:18-21 ("Q. So there were no negotiations, as far as you're aware of, between Kodak and Pentax with respect to a license to Kodak's patents, right? A. That's correct."); Ex. 3 [Kawano Dep., Vol. 1] at 54:11-14 ("Q. Well, did it get down to negotiations concerning patent royalties with Kodak? A. I don't think there were any negotiations.").  Ricoh concedes that the parties never even discussed, let alone agreed to:  applicable royalty rates; the products that would allegedly be covered by a license; or the patents that would be included in a license.  (Ex. 27 [Kitazawa Dep., Vol. 1] at 70:10-14, 59:17-19, 60:1-5, 60:24-61:2; Ex. 12 [Kitazawa Dep., Vol. 2] at 108:12-109:1; Ex. 3 [Kawano Dep., Vol. 1] at 54:11-14, 57:11-22, 68:18-69:2; Ex. 4 [Tsuruta Dep., Vol. 1] at 89:20-22).

***Third***, the evidence confirms that Pentax did not know whether either Mr. Kimeda or Mr. Kojima had the authority to grant Pentax a license.  (Ex. 13 [Tsuruta Dep., Vol. 2] at 110:24-111:7 (did not know who at Kodak was required to approve a license; was not certain whether Mr. Kojima had the authority to grant a license); *id.* at 158:23-159:14 (conceding that Pentax did not know whether Mr. Kimeda had the authority to grant a license and did not investigate); Ex. 12 [Kitazawa Dep., Vol. 2] at 105:9-12 (same).

***Fourth***, Ricoh's argument that Pentax had an implied license is directly contrary to the unequivocal testimony of Ricoh's and Pentax's own witnesses and to Ricoh's own documents. The Manager of Pentax's Intellectual Property Group expressly admitted that Pentax had "***no licensing relationship whatsoever with Kodak.***"  (Ex. 20 [RICOH10265506]; Ex. 2 [Taniguchi Dep., Vol. 2] at 202:2-9 (same); Ex. 5 [RICOH6000453] (admitting that Pentax had been afraid Kodak would sue); ████████████████████████████

- 14 -

**REDACTED**

███████████████████████████████████████

███████████████████ Ex. 14 [Saji Dep., Vol. 2] at 159:5-8, 163:16-20 (prior to

acquisition, had never heard anyone say that Pentax had a license to Kodak's patents).)

   ***Finally***, it is undisputed that both statements on which Ricoh relies were made in the

context of negotiations of agreements ***that explicitly provide that Pentax receives no intellectual***

***property rights from Kodak.***  Mr. Kojima's alleged statement in October 2003 was indisputably

made in the context of discussions about the ImageLink program.  (Ex. 4 [Tsuruta Dep., Vol. 1]

at 73:13-18; Ex. 12  [Kitazawa Dep., Vol. 2] at 102:25-103:7.)  It is undisputed that the final

ImageLink agreement, executed in September 2005, explicitly states that Pentax did ***not*** receive

any rights to Kodak's digital camera patents:

> [N]othing [in] this Agreement shall be construed to grant or imply
> to grant ***any rights under any other Kodak patents, including but***
> ***not limited to those covering Consumer Digital Cameras or other***
> ***digital camera products.***

(Ex. 28 [ImageLink Agreement, RICOH10241968] at § 8.5 (emphasis added).)  Indeed, directly

contrary to Ricoh's assertion that it entered into the ImageLink agreement in exchange for the

promise of a license, the agreement specifically states that Pentax "acknowledges that it has not

been induced to enter into this Agreement by any representations or statements, oral or written,

not expressly contained in this Agreement."  (*Id.* at § 13.15.)

   Similarly, Mr. Kimeda's February 2004 statement indisputably occurred in the context of

discussions about Pentax's purchase of CCD sensors from Kodak.  (Ex. 13 [Tsuruta Dep., Vol.

2] at 142:11-19; Ex. 12 [Kitazawa Dep., Vol. 2] at 103:8-14 (February 2004 conversation took

place in connection with CCD relationship).)  When the parties finalized the CCD agreement

eight months later in October 2004, they explicitly agreed that Pentax did ***not*** obtain any rights to

Kodak's patents.  (Ex. 12 [Kitazawa Dep., Vol. 2] at 157:6-8, 159:2-9; Ex. 29 [CCD Letter of

Intent, RICOH10239928] at § 11 ("***neither party … acquires any intellectual property rights***").[5]

Indeed, Ricoh's corporate designee on statements made between Kodak and Pentax confirmed

that Pentax did not receive any patent rights in connection with Kodak's agreement to supply

sensors to Pentax:

> Q. Sir, after the February 2004 discussion with Mr. Kimeda,
> Pentax and Kodak agreed that under the CCD agreement neither
> party acquires any intellectual property rights, correct?
>
> [Objection from Ricoh attorney]
>
> A. Even though I'm not a patent expert, if I were to answer that, I
> agree.

(Ex. 12 [Kitazawa Dep., Vol. 2] at 159:2-9.)[6]

Ricoh's "implied license" theory therefore plainly fails as a matter of law.  *See Stickle v.*

*Heublein, Inc*., 716 F.2d 1550, 1559 (Fed. Cir. 1983) (no implied license where discussions were

"general" and parties had not agreed on specific terms); *Bandag, Inc. v. Al Bolser's Tire Stores,*

*Inc*., 750 F.2d 903, 925 (Fed. Cir. 1984) (internal citations omitted) (no implied license unless

"the circumstances plainly indicate that the grant of a license should be inferred"); *Duval*

*Sulphur & Potash Co. v. Potash Co. of Am*., 244 F.2d 698, 701 (10th Cir. 1957) ("To create an

---

[5]    This statement appears in the Confidential Disclosure Agreement appended to the CCD Letter of Intent and signed by Kodak and Ricoh on the same date.  (Ex. 29 [CCD Letter of Intent] at RICOH10239927-928.)  *See Carvel Corp. v. Diversified Mgmt. Group, Inc*., 930 F.2d 228, 233 (2d Cir. 1991) ("Under New York law, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together."); *see also Eastman Kodak Co. v. Asia Optical Co., Inc*., No. 11-civ-6036 (DLC), 2012 WL 917393 at *3, n.7 (S.D.N.Y. Mar. 16, 2012)  (treating agreements between same parties executed on same day as a single integrated agreement), *aff'd by Eastman Kodak Co. v. Asia Optical Co., Inc*., 2013 WL 1811086, at *1 (2d Cir. May 1, 2013).

[6]    Two months after Mr. Kitazawa gave this testimony, Ricoh sought to substantively change it with an errata sheet.  (Ex. 30 [Kitazawa Errata] at 4 (changing "I agree" to "I think so" under the guise that the original answer was "mistranslated, " notwithstanding that Ricoh's interpreter never objected at the deposition).)  As discussed above, Ricoh cannot avoid summary judgment simply by substantively altering the sworn admissions of its witnesses.  *See* note 4, supra.

implied agreement one must have a meeting of the minds as in any contract. . . ."); *see also*

*Medinol, Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 598 (S.D.N.Y. 2004) (internal

citations and quotations omitted) (noting that "courts have found implied licenses only in narrow

circumstances"; declining to find implied license to manufacture where existing agreement

clearly set forth other provisions relating to authorization to manufacture).

### 2.    Ricoh's Estoppel Defense is Contrary to the Undisputed Record.

Ricoh next argues that even if Pentax does not have a royalty-free implied license, Kodak

is "estopped" from collecting royalties on Pentax's digital camera sales because Kodak allegedly

led Pentax to believe that Kodak would never assert its patents against Pentax's digital cameras.

This is again directly contrary to the undisputed record evidence.

 Equitable estoppel requires proof that "the patentee, through statements or conduct, gave

***an affirmative grant of consent or permission*** to make, use, or sell to the alleged infringer."

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001) (citing

*Wang Labs. Inc. v. Mitsubishi Elec. Am. Inc.*, 103 F.3d 1571, 1581) (emphasis added).  "The first

element requires the patentee to communicate that 'the accused infringer will not be disturbed by

the plaintiff patentee in the activities in which the former is currently engaged.'"  *Winbond Elecs.*

*Corp.* 262 F.3d at 1374 (internal citations and quotations omitted).  The undisputed record

evidence demonstrates that Kodak ***never*** affirmatively granted consent or permission for Pentax

to use Kodak's digital camera patents.

The very statements Ricoh relies on to support its estoppel theory – the statements by Mr.

Kojima and Mr. Kimeda described above – explicitly contemplate that Kodak might well assert

its patents against Pentax.  (Ex. 24 [Kojima Decl] (Mr. Kojima would try to obtain favorable

treatment for Pentax "***in the event that Kodak were ever to assert its digital camera patents***

***against Pentax***"); Ex. 26 [Tsuruta Decl.] (Mr. Kimeda allegedly said Kodak would grant

"favorable treatment [for] Pentax … *in the event that Kodak were ever to assert its digital camera patents against Pentax*") (emphasis added).)  Indeed, Mr. Tsuruta, the Pentax employee to whom these statements were allegedly made, confirmed that he understood that Kodak "might assert its patents against Pentax."  (Ex. 4 [Tsuruta Dep., Vol. 1] at 87:2-5.)  Similarly, Pentax's senior general manager for the development of digital cameras acknowledged in 2010 that he had been "afraid that Kodak may sue [Pentax] regarding digital image processing."  (Ex. 5 [RICOH60000453].)

Moreover, Ricoh's witnesses, including its 30(b)(6) witness on Pentax's communications with Kodak, could not identify a single instance in which Kodak suggested in any way that it would not assert its patents:

(i) Ricoh's corporate designee could not say whether Kodak ever said it would not assert its digital camera patents against Pentax (Ex. 27 [Kitazawa Dep., Vol. 1] at 73:10-20);

(ii) Ricoh's corporate designee could not say whether "preferential treatment" meant that Kodak would not sue Pentax for patent infringement (Ex. 12 [Kitazawa Dep., Vol. 2] at 112:19-113:13); or

(iii)  Ricoh's corporate designee could not identify any occasion on which Kodak said it would not sue Pentax for patent infringement (Ex. 12 [Kitazawa Dep., Vol. 2] at 170:13-171:2);

(iv)  Ricoh's witnesses could not identify a single instance in which anyone from Kodak ever promised anyone from Pentax that Kodak would not sue Pentax for patent infringement  (Ex. 3 [Kawano Dep., Vol. 1] at 86:1-7.)

Ricoh's estoppel argument therefore fails as a matter of law.  *See Winbond Elecs. Corp.,* 262 F.3d at 1374; *see also CIT Group/Equip. Financing,*, 2013 WL 1285269, at * 2-3 (rejecting equitable estoppel defense in breach of contract case on the ground that defendant's purported reliance on plaintiff's conduct was not reasonable in light of express contractual language contradicting defendant's argument).

### 3.  Ricoh's Patent Misuse Claim Fails as a Matter of Law.

Ricoh next attempts to excuse its failure to comply with the plain requirements of Section 4.4 by arguing that Kodak's claims are barred by the doctrine of "patent misuse."  This is again wrong as a matter of law.

Ricoh argues that patent misuse bars Kodak from collecting royalties on Pentax digital camera sales unless Kodak proves that each and every Pentax digital camera infringes a Kodak patent.  But the Supreme Court has expressly rejected this argument.  The Court held that it is *not* patent misuse to require royalty payments on the total sales of products without a showing of infringement where the parties agree to the payments for their mutual convenience.  *See Zenith,* 395 U.S. at 138 ("If convenience of the parties rather than patent power dictates the total-sales royalty provision, there [is] no misuse of the patents and no forbidden conditions attached to the license"); *see also Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996) (same).

This is exactly what happened here.  The parties expressly agreed that in light of the burden of calculating royalties on (or determining infringement of) each and every Digital Camera, for mutual convenience, Ricoh could use a flat rate to calculate royalties due on Ricoh's sales and the sales of any unlicensed company that Ricoh acquired:

> . . . [A]s a result of the foregoing the administrative burden and cost of determining what constitutes a Ricoh Branded Licensed Product and OEM Licensed Product would be great.  Accordingly, ***for the mutual convenience of the parties, it is agreed that Ricoh shall pay to Kodak a commuted royalty*** of ███████████████████████ of the worldwide Net Sales . . .

*See* PLA § 4.2 (emphasis added); *see also Eastman Kodak Co.,* 2012 WL 917393, at * 8-9 (rejecting patent misuse defense on summary judgment for breach of contract where agreement at issue explicitly provided that the worldwide commuted royalty provision was for the parties' "mutual convenience" to reduce the "administrative burden and cost of determining" what

constituted a "Licensed Product"); *aff'd by Eastman Kodak Co. v. Asia Optical Co., Inc.*, 2013 WL 1811086 (2d Cir. May 1, 2013).

In any event, to show patent misuse, Ricoh would have to prove that Kodak attempted to impermissibly expand the scope of its patents by, for example, insisting on royalties after all of its patents had expired or insisting that Ricoh sell licensed, royalty-bearing products whenever it sold an unlicensed product (often referring to as patent "tying"). *See Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (stating that "the most common form of patent misuse" involves "requiring the purchase of an unpatented product as a condition for obtaining a license to the patent"). Ricoh has not alleged and cannot allege that all of Kodak's more than one thousand patents expired during the term of the PLA. Moreover, there is not a shred of evidence (or even an allegation) that Kodak attempted to condition a license on Ricoh's agreement to sell licensed products with unlicensed products. As discussed above, the Pentax digital cameras sold during the period of the agreement meet the definition of Digital Camera under the plain terms of the PLA. Indeed, Ricoh does not dispute this for more than one hundred of the 127 digital camera models sold during the relevant period. (Ex. 9 [Ricoh Resp. to Int. Nos. 9, 18] at Ex. A.) Pentax's digital cameras are therefore properly royalty-bearing under the PLA.

### 4. Ricoh's Laches Claim Fails as a Matter of Law.

Ricoh next argues that Kodak's claim is barred by the doctrine of laches because Kodak did not file a patent infringement suit against Pentax within six years of learning that Pentax sold digital cameras. This argument is wrong as a matter of law.

First, this is an action for breach of contract and laches is not an available defense to a claim of breach of contract. *See Fade,* 779 N.Y.S.2d at 570 ("laches is not applicable to an action at law, and thus may not bar ... causes of action alleging breach of contract and fraud to

the extent they seek money damages."); *see also U.S. v. Gordon*, 78 F.3d 781, 786 (2d Cir. 1996)

(laches does not bar claims for damages); *M. Lowenstein & Sons, Inc. v. Austin*, 430 F. Supp.

844, 846 (S.D.N.Y. 1977) (laches is not a bar to contract and fraud claims).

Second, undisputed evidence establishes that Kodak filed this case promptly after

learning of Ricoh's breach.  Ricoh argues that more than six years have passed since Kodak

knew that Pentax sold digital cameras.  But Kodak does not assert patent infringement in this

case.  Kodak's claim is that Ricoh breached the PLA by failing to pay royalties after its

acquisition of Pentax in October 2011.  Kodak filed its complaint in this case just six months

later, on April 19, 2012.  New York has set the statute of limitations for a breach of contract

action at six years.  Laches therefore does not apply.  S*ee In re Eastman Kodak Co.*, 479 B.R.

280, 296 (Bankr. S.D.N.Y. 2012) (*citing Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys.,

Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993) ("[T]he period of delay is measured from when the

claimant had actual notice of the claim or would have reasonably been expected to inquire about

the subject matter… The mere passage of time does not constitute laches. ***When a limitation on

the period for bringing suit has been set by statute, laches will generally not be invoked to

shorten the statutory period***.") (emphasis added); *see Ferring B.V. v. Allergan, Inc.*, --F. Supp.

2d. -- 2013 WL 1144878, at *9 (S.D.N.Y. Mar. 19, 2013) (six-year statute of limitations for

breach of contract cases).

But even if Ricoh could apply the doctrine of laches to this case—and it cannot—Ricoh

has offered no evidence that Kodak had specific knowledge of Pentax's alleged infringement and

unreasonably delayed pursuing that claim.  Kodak's witnesses have consistently testified that

Kodak had limited bandwidth to pursue potential licensees.  (Ex. 31 [Pagano Dep., Vol. 1] at

111:1-113:20 (Kodak had a "small focused team" with "limited bandwidth" and "never ended up

making a decision one way or the other relative to Pentax"); Ex. 32 [Crocker Dep.] at 166:21-

167:19 ("licensing team had limited resources"; "we just didn't have the resources, time to go

after everyone").)  It is well-settled that a patentee need not pursue claims against all potential

infringers at once.  *See, e.g., Hemstreet v. Comp. Entry Sys. Corp.*, 972 F.2d 1290 (Fed. Cir.

1992) (finding no laches where delay was due to fact that patent holder was "busy enforcing [its]

patent rights elsewhere").

> ### 5.    Pentax's Digital Cameras Meet the Definition of "Digital Camera" Set Forth in the PLA.

Finally, Ricoh's attorneys have argued that a subset of Pentax's digital cameras do not

meet the definition of "Digital Camera."

Ricoh does not dispute that 105 models of digital cameras sold by Pentax during the term

of the PLA – Pentax's point and shoot cameras – meet the definition of "Digital Camera." (Ex. 9

[Ricoh Resp. to Int. Nos. 9, 18] at Ex. A (admitting that all but 22 of the 127 digital camera

models Ricoh sold during the relevant period meet the definition of "Digital Camera"); Ex. 10

[Ricoh's Resp. to First Set of RFAs] at Nos. 11, 12 ("Ricoh admits that certain digital cameras

sold by Pentax from at least 1997 to October 1, 2011 fall within the definition of Digital Cameras

in PLA as amended…. Ricoh admits that certain digital cameras sold by Pentax since October 1,

2011 fall within the definition of Digital Cameras in the PLA as amended").)

Ricoh's attorneys have, however, argued  that one type of Pentax digital camera --

"Digital Single Lens Reflex" or "DSLR" cameras sold in a kit with a lens--does not meet the

definition of "Digital Camera."  Specifically, Ricoh's attorneys have argued that these DSLR

digital cameras do not meet the definition of "Digital Camera" because they are neither

"portable" nor "self-contained."   (Ex. 25 [Ricoh's Amended and Second Supp. Resp. to Kodak

Interrogatory No. 3] at 12, n. 1 ("The parties dispute whether Pentax cameras are both self-contained and portable …").)  Ricoh's argument is again contrary to the undisputed facts.

Ricoh's corporate designee on Pentax's digital cameras conceded that the Pentax DSLRs are in fact "portable."  (Ex. 3 [Kawano Dep., Vol. 1] at 31:3-6 ("Q. So, Mr. Kawano, all Pentax SLR cameras are portable, correct?  A. That's correct, if you're talking about general SLRs."); *id.* at 27:7-17 (Pentax DSLRs are capable of being carried).)  He further conceded that, when sold and used with a lens as intended, a DSLR is a "complete picture taking device."  (Ex. 11 [Kawano Dep., Vol. 2] at 235:1-4 (Pentax intends for DSLRs to be used with a lens), *id.* at 235:10-20 (DSLR with lens attached allows user to take a photograph and contains an optical element that allows a user to capture an image); Ex. 3 [Kawano Dep., Vol. 1] at 21:3-7, 21:21-24 (when used with lens, battery, and memory, Pentax DSLR is complete picture taking device).)  The undisputed facts thus establish that Pentax's DSLRs sold with a lens meet the definition of Digital Camera.

## IV.    CONCLUSION

This is a straightforward breach of contract action.  Ricoh expressly agreed in Section 4.4 of the PLA that if Ricoh acquired an unlicensed company that had not paid royalties to Kodak on its sales of digital cameras, Ricoh was responsible for royalties due on those products.  It is undisputed that Pentax sold digital cameras from 2002 through 2012; that Ricoh acquired Pentax; that Pentax had never executed a license agreement with Kodak; and that Pentax had never paid royalties to Kodak on its digital camera sales.  Kodak therefore respectfully requests that the Court grant summary judgment that Ricoh has breached the parties' agreement.

Dated:  May 22, 2013
New York, New York          */s/ Robert J. Gunther, Jr.*

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR LLP

- 23 -

**REDACTED**

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (admitted *pro hac vice*)
Jordan L. Hirsch (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com

*Attorneys for Eastman Kodak Company*