REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>              Plaintiff,<br><br>     v.<br><br>RICOH COMPANY, LTD.,<br><br>              Defendant. | Case No. 1:12-cv-03109 (DLC) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF EASTMAN KODAK COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT RICOH COMPANY, LTD. BREACHED THE PARTIES' PATENT LICENSE AGREEMENT**

Pursuant to L.R. 56.1, Eastman Kodak Company ("Kodak") respectfully submits the following Statement of Undisputed Material Facts in support of its Motion For Partial Summary Judgment that Ricoh Company, Ltd. ("Ricoh") breached the parties' May 1, 2002 Patent License Agreement ("PLA").

**I.    The Parties' May 1, 2002 Patent License Agreement**.

    1.    Kodak and Ricoh entered into the PLA on May 1, 2002. (Ex. 1 [PLA] at § 3.1)[1]

    2.    Under the PLA, Ricoh obtained a non-exclusive license to Kodak's digital camera patent portfolio. (*Id.*)

    3.    In return, Ricoh agreed to pay royalties for its use of Kodak's patented digital camera technology. (*Id.*)

    4.    Section 4.2 of the PLA states as follows:

---

[1]    Exhibits 1-32 refer to exhibits to the Declaration of Marissa Lalli filed in support of Kodak's Motion for Partial Summary Judgment.

> Ricoh and Kodak mutually acknowledge that Kodak has acquired and will acquire numerous Kodak Patents during the term of the Agreement; that Ricoh currently sells and/or plans to sell a variety of models of Ricoh Branded Licensed Product and OEM Licensed Products during the term of the Agreement; and as a result of the foregoing the administrative burden and cost of determining what constitutes a Ricoh Branded Licensed Product and OEM Licensed Product would be great. Accordingly, for the mutual convenience of the parties, it is agreed that Ricoh shall pay to Kodak a commuted royalty of ▬▬▬ of the worldwide Net Sales of all Ricoh Branded Licensed Products. It is further agreed that Ricoh shall pay to Kodak a commuted royalty of ▬▬▬ of the worldwide Net Sales of all OEM Licensed Products.

(*Id.* at § 4.2.)

5. Section 4.4 of the PLA states as follows:

> If Ricoh acquires a business after the Effective Date of this Agreement which business was not previously licensed by Kodak under Kodak's Patents and for which said business had not paid royalties on Licensed Products sold by said acquired business, then Ricoh shall, with its next royalty payment following the acquisition, remit to Kodak a payment equal to ▬▬▬ multiplied by the worldwide Net Sales for the acquired business' Licensed Products for the period beginning on the Effective Date and ending on the acquisition date in addition to paying the royalty due under Paragraph 4.2 for sales by such acquired business after the acquisition date

(*Id.* at § 4.4.)

6. Multiple senior Ricoh employees reviewed and approved the requirements of Section 4.4 before Ricoh executed the agreement. (Ex. 6 [Saji Dep., Vol. 1] at 75:14-76:5, 51:10-52:7, 54:23-55:4 (PLA was carefully reviewed prior to signing and approved by at least three people at Ricoh, including the general manager of the image capturing device division, the general manager of the legal and intellectual property division, and the president of the personal multimedia division).)

7. In a 2007 amendment to the PLA, Kodak and Ricoh reaffirmed the requirements of Section 4.4.  (Ex. 7 [Second Amendment to PLA] at § 7(a) (reaffirming Section 4.4).

## II. Ricoh Acquired Pentax in 2011.

8. On October 1, 2011, Ricoh acquired Pentax's digital imaging division, which made and sold digital cameras. (June 25, 2012 Answer to Compl., Dkt. 18, ¶ 29.)

9. Pentax sold digital cameras throughout the entire term of the PLA—from May 1, 2002, when the PLA was executed, through April 30, 2012, when the PLA expired. (Ex. 8 [Eguchi Dep., Vol. 1] at 61:23-62:13.)

## III. Pentax Sold Digital Cameras, as That Term Is Defined by the PLA, from 2002 through 2012.

10. The PLA defines "Digital Camera" as follows:

> "Digital Camera" shall mean a portable, self-contained device utilizing an Area Image Sensor having at least 300,000 pixels, as well as electronics and optical elements that captures still or motion images of visible radiation and (a) records a digital signal representing such images on a Removable Digital Storage Media or (b) stores at least two such images in internal memory.

(Ex. 1 [PLA] at § 1.2.)

11. Each model of "point and shoot" digital cameras sold by Pentax during the term of the PLA meets the PLA's definition of a "Digital Camera." (Ex. 9 [Ricoh Resp. to Int. No. 9, 18] at Ex. A (admitting that 105 "point and shoot" digital cameras sold by Pentax during the term of the PLA meet the definition of "Digital Camera"); Ex. 10 [Ricoh's Resp. to First Set of RFAs] at Nos. 11, 12 ("Ricoh admits that certain digital cameras sold by Pentax from at least 1997 to October 1, 2011 fall within the definition of Digital Cameras in the PLA as amended…. Ricoh admits that certain digital cameras sold by Pentax since October 1, 2011 fall within the definition of Digital Cameras in the PLA as amended")); s*ee also* (Ex. 11 [Kawano Dep., Vol 2] 233:1-13 (all Pentax cameras contain an image sensor of greater than 300,000 pixels); *id.* at 233:17-19 ("Q. They all include electronics that allow the cameras to capture images, correct? A. That's

correct."); *id.* at 237:14-16 (all Pentax digital cameras can store multiple images); Ex. 3 [Kawano Dep., Vol 1] at 31:3-6, 26:24-25 (Pentax cameras are portable).)

12. Each of Pentax's digital single lens reflex cameras ("DSLRs") sold during the term of the PLA meets the PLA's definition of a "Digital Camera." (Ex. 3 [Kawano Dep. Vol. 1] at 31:3-6 ("Q. So, Mr. Kawano, all Pentax SLR cameras are portable, correct?  A. That's correct, if you're talking about general SLRs."); *id.* at 27:3-17 (Pentax DSLRs are capable of being carried); *id.* at 21:3-7, 21-24 (when used with lens, battery, and memory, Pentax DSLR is complete picture taking device); Ex. 11 [Kawano Dep., Vol. 2] 235:1-4 (Pentax intends for DSLRs to be used with a lens); *id.* at 235:10-20 (DSLR with lens attached allows user to take a photograph and contains an optical element that allows a user to capture an image.); (Ex. 11 [Kawano Dep., Vol. 2] 233:1-13 (all Pentax cameras contain an image sensor of greater than 300,000 pixels); *id.* at 233:17-19 (All Pentax cameras include electronics that allow the cameras to capture images.); *id.* at 237:14-16 (all Pentax digital cameras can store multiple images).)

**IV.   Pentax Never Took a License to Kodak's Digital Camera Patent Portfolio.**

13. Pentax and Kodak never signed a written patent license agreement covering Kodak's portfolio of digital camera patents.  (Ex. 3 [Kawano Dep., Vol. 1] at 65:1-6 ("Q. But we can both agree that between 2002 and 2011, Pentax never entered a written license agreement for Kodak's digital camera patents, right?  A. There's no written patent agreement.").)

14. Pentax and Kodak never had any discussions or negotiations regarding the terms of a license to Kodak's portfolio of digital camera patents.   (Ex. 4 [Tsuruta Dep., Vol. 1] at 59:18-21 ("Q. So there were no negotiations, as far as you're aware of, between Kodak and Pentax with respect to a license to Kodak's patents, right? A. That's correct."); Ex. 3 [Kawano

Dep., Vol. 1] 54:11-14 ("Q. Well, did it get down to negotiations concerning patent royalties with Kodak? A I don't think there were any negotiations.").)

15. Pentax and Kodak never agreed that any specific Pentax products would be covered by a license to Kodak's portfolio of digital camera patents. (Ex. 3 [Kawano Dep., Vol. 1] at 68:18-22 ("Q. Okay. So Kodak and Pentax never discussed what products would be covered by a license to Kodak's patents, correct? A. That's correct in regard to there was no discussion of the products or the patents, yes."); Ex. 27 [Kitazawa Dep., Vol. 1] 60:24-61:2.)

16. Pentax and Kodak never agreed that Pentax had the rights to use any specific Kodak digital camera patents. (Ex. 3 [Kawano Dep., Vol. 1] at 68:23-69:2 ("There was no specific discussion of specific patents"); Ex. 27 [Kitazawa Dep., Vol. 1] 60:1-5.)

17. Pentax and Kodak never agreed to a royalty rate that would cover a license to Kodak's digital camera patents. (Ex. 3 [Kawano Dep., Vol. 1] 54:11-14; *id.* at 57:11-22; Ex. 4 [Tsuruta Dep., Vol. 1] at 89:20-22 ("Q. You and Mr. Kojima didn't reach agreement as to a particular royalty rate, correct? A. That's correct."); Ex. 27 [Kitazawa Dep., Vol. 1] 70:10-14; Ex. 12 [Kitazawa Dep., Vol. 2] 108:12-109:1)

18. Kodak never told Pentax that Pentax had permission to use Kodak's digital camera patents. (Ex. 3 [Kawano Dep., Vol 1] at 83:18-84:6 ("Q. …My question is, no one from Kodak specifically told Pentax that it had permission to use Kodak's digital camera patents, correct? A. I have no—I have no understanding of that being received in written form. Q. And do you have any understanding of that being received in any other form? A. No, I don't know.").)

19. When Ricoh acquired Pentax in 2011, Pentax did not say anything about having a license to Kodak's digital camera patents. (Ex. 14 [Saji Dep., Vol. 2] at 159:5-8, *id.* at 163:16-20.)

20. ███████████████████████████████████████████████████
███████████████████████████████████████

21. The Manager of Pentax's Intellectual Property Group, Kazuya Taniguchi, the individual responsible for Pentax's licensing activities, stated that Pentax had "no licensing relationship whatsoever with Kodak":

> Since our company (IS Division) currently has no licensing relationship whatsoever with Kodak, we are not paying any patent fees. I think that we would have to negotiate and have no choice but to pay some amount if Kodak approached us with a license, but at this point in time, our policy is not to initiate any license discussions.

(Ex. 20 [RICOH10265506]; Ex. 2 [Taniguchi Dep., Vol. 2] at 202:2-9.)

22. ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████

**V.   Kodak Did Not Grant Pentax An Implied License to Kodak's Digital Camera Patent Portfolio**

23. Ricoh has asserted that Section 4.4 of the PLA does not apply to Ricoh's acquisition of Pentax because Pentax had an implied license to Kodak's digital camera patent portfolio. (*See, e.g.*, Dkt. 18, Answer and Counterclaims at ¶¶ 66-67.)

24. Ricoh asserts that Pentax's implied license arose when two Kodak employees, Mr. Kojima and Mr. Kimeda, allegedly made offers to Pentax to "negotiate within Kodak" in an

attempt to obtain "favorable treatment" for Pentax "in the event that Kodak were ever to assert its digital camera patents against Pentax." (Ex. 26 [Tsuruta Decl.]; Ex. 4 [Tsuruta Dep., Vol. 1] at 58:2-5; *id.* at 58:21-24; Ex. 13 [Tsuruta Dep., Vol. 2] at 119:11-15 (all Mr. Kojima and Mr. Kimeda said was that they would "try" to get preferential treatment).)

25.   Mr. Kojima and Mr. Kimeda allegedly made these statements during conversations with Pentax that lasted only five to ten minutes each. (Ex. 13 [Tsuruta Dep., Vol. 2] 147:18-22; *id.* at 149:6-10.)

26.   Mr. Kojima allegedly told Pentax that there was "no guarantee" that he could even obtain preferential treatment for Pentax. (Ex. 13 [Tsuruta Dep., Vol. 2] at 119:16-18 ("Q. And he specifically said that there was no guarantee that his efforts would be successful, right? A. Yes.").)

27.   Mr. Kojima and Mr. Kimeda never told Pentax that "preferential treatment" meant that Pentax would receive a license or any rights to its patents. (Ex. 27 [Kitazawa Dep., Vol. 1] at 77:14-24 ("preferential treatment" never defined), Ex. 12 [Kitazawa Dep., Vol. 2] at 109:10-14 (no discussion or agreement concerning what "favorable treatment" meant); *id.* at 112:19-113:13 (could not say whether "preferential treatment" meant that Kodak would not sue Pentax for patent infringement).)

28.   Pentax did not know whether either Mr. Kimeda or Mr. Kojima had the authority to grant Pentax a license. (Ex. 13 [Tsuruta Dep., Vol. 2] at 110:24-111:7 (did not know who at Kodak was required to approve a license; was not certain whether Mr. Kojima had the authority to grant a license); *id.* at 158:23-159:14 (conceding that Pentax did not know whether Mr. Kimeda had the authority to grant a license and did not investigate); Ex. 12 [Kitazawa Dep., Vol. 2] at 105:9-12 (same).)

29.     Mr. Kojima's alleged statement to Ricoh was made in the context of discussions about Kodak's ImageLink program.  (Ex. 4 [Tsuruta Dep., Vol. 1] at 73:13-18; Ex. 12 [Kitazawa Dep., Vol. 2] at 102:25-103:7.)

30.     The final ImageLink agreement between Kodak and Pentax, executed in September 2005, states:

> [N]othing [in] this Agreement shall be construed to grant or imply to grant any rights under any other Kodak patents, including but not limited to those covering Consumer Digital Cameras or other digital camera products.

(Ex. 28 [ImageLink Agreement, RICOH10241968] at § 8.5.)

31.     The September 2005 ImageLink agreement states that Pentax "acknowledges that it has not been induced to enter into this Agreement by any representations or statements, oral or written, not expressly contained in this Agreement."  (*Id.* at § 13.15.)

32.     Mr. Kimeda's alleged statement to Ricoh occurred in the context of discussions about Pentax's purchase of CCD sensors from Kodak.  (Ex. 13 [Tsuruta Dep., Vol. 2] at 142:11-19; Ex. 12 [Kitazawa Dep., Vol. 2] at 103:8-14 (February 2004 conversation with Mr. Kimeda took place in connection with CCD relationship).)

33.     The CCD agreement states that Pentax did not obtain any rights to Kodak's patents.  (Ex. 12 [Kitazawa Dep., Vol. 2] at 157:6-8; *id.* at 159:2-9; Ex. 29 [CCD Letter of Intent, RICOH10239928] at § 11 ("neither party … acquires any intellectual property rights") Ex. 12 [Kitazawa Dep., Vol. 2] at 159:2-9 ("Q. Sir, after the February 2004 discussion with Mr. Kimeda, Pentax and Kodak agreed that under the CCD agreement neither party acquires any intellectual property rights, correct?  A. Even though I'm not a patent expert, if I were to answer that, I agree.").)

### VI. Kodak Never Suggested That It Would Not Assert Its Patents Against Pentax

34. Pentax understood that Kodak "might assert its patents against Pentax." (Ex. 4 [Tsuruta Dep., Vol. 1] at 87:2-5; Ex. 13 [Tsuruta Dep., Vol. 2] 149:18-22.)

35. Pentax's senior general manager for the development of digital cameras acknowledged in 2010 that he had been "afraid that Kodak may sue [Pentax] regarding digital image processing." (Ex. 5 [RICOH60000453].)

36. Ricoh has not identified any occasion on which Kodak said it would not sue Pentax for patent infringement ( Ex. 3 [Kawano Dep., Vol. 1] at 86:1-7 ("Q. You can't identify a single instance in which anyone from Kodak ever promised Pentax that Kodak would not sue Pentax for patent infringement, correct? [Objection] A. I don't know."); Ex. 12 [Kitazawa Dep., Vol. 2] at 170:13-171:2; *id* at 172:17-22; Ex. 27 [Kitazawa Dep., Vol. 1] at 73:10-20.)

37. Kodak's witnesses testified that Kodak's digital camera licensing team had limited resources. (Ex. 31 [Pagano Dep., Vol. 1] at 111:1-113:20 (Kodak had a "small focused team" with "limited bandwidth" and "never ended up making a decision one way or the other relative to Pentax"); Ex. 32 [Crocker Dep.] at 166:21-167:19 ("licensing team had limited resources … we just didn't have the resources, time to go after everyone").)

### VII. Neither Pentax Nor Ricoh Paid Any Royalties to Kodak on Pentax's Digital Camera Sales.

38. Pentax made billions of dollars from the sales of digital cameras from 2002 through the expiration of the PLA in April, 2012. (Ex. 8 [Eguchi Dep., Vol. 1] at 64.11-14 ("Q. Since 2002, you would agree that Pentax has sold billions of U.S. dollars['] worth of digital cameras, correct? A. Yes.").)

**REDACTED**

39.     Pentax did not pay any royalties to Kodak on its sales of digital cameras.  (Ex. 23 [Urano Dep.] at 115:22-25 ("Q. Okay. Let me just back up for a second. You would agree with me that Pentax never paid Kodak any royalties, right? A. Yes.").)

40.     After acquiring Pentax, Ricoh did not pay any royalties to Kodak on Pentax's digital camera sales (from either before or after the acquisition).  (Ex. 10 [Ricoh's Resp. to Kodak's First Set of RFAs] at Nos. 13, 14.)

Dated:  May 22, 2013
       New York, New York           */s/ Robert J. Gunther, Jr.*

                                    Robert J. Gunther, Jr.
                                    WILMER CUTLER PICKERING HALE & DORR LLP
                                    7 World Trade Center
                                    250 Greenwich Street
                                    New York, NY 10007
                                    Tel: (212) 230-8800
                                    Fax: (212) 230-8888
                                    robert.gunther@wilmerhale.com

                                    Michael J. Summersgill (admitted *pro hac vice*)
                                    Jordan L. Hirsch (admitted *pro hac vice*)
                                    WILMER CUTLER PICKERING HALE & DORR LLP
                                    60 State Street
                                    Boston, Massachusetts 02109
                                    Tel: (617) 526-6000
                                    Fax: (617) 526-5000
                                    michael.summersgill@wilmerhale.com
                                    jordan.hirsch@wilmerhale.com

                                    *Attorneys for Eastman Kodak Company*