UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> RICOH COMPANY, LTD., <br><br> Defendant. | Case No. 1:12-cv-03109 (DLC) |

**REPLY IN SUPPORT OF EASTMAN KODAK COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT RICOH COMPANY, LTD. <u>BREACHED THE PARTIES' PATENT LICENSE AGREEMENT</u>**

Robert J. Gunther, Jr.
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com

*Attorneys for Eastman Kodak Company*

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................1

II.  ARGUMENT.......................................................................................................................2

    A.  As a Matter of Law, Kodak's Breach of Contract Claims Are Not Barred by Patent Infringement Defenses................................................................................2

    B.  Ricoh's Implied License Defense Fails as a Matter of Law .........................................5

    C.  Ricoh's Patent Misuse Defense Fails as a Matter of Law ............................................7

    D.  DSLRs Sold with Lenses Are "Digital Cameras.".........................................................9

III.  CONCLUSION..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
 960 F.2d 1020 (Fed. Cir. 1992)..................................................................................................4

*Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*,
 305 F.3d 82 (2d Cir. 2002)........................................................................................................4

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
 605 F.3d 1305 (Fed. Cir. 2010)..............................................................................................6, 7

*Discovision Associates v. Toshiba Corp.*,
 No. 08v3693(HB), 2009 WL 1373915 (S.D.N.Y. May 18, 2009) ...........................................3

*ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*,
 541 F.3d 1373 (Fed. Cir. 2008).................................................................................................3

*Hemstreet v. Comp. Entry Sys. Corp.*,
 972 F.2d 1290 (Fed. Cir. 1992).................................................................................................4

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*,
 424 F.3d 195 (2d Cir. 2005)......................................................................................................3

*Margo v. Weiss*,
 213 F.3d 55 (2d Cir. 2000)........................................................................................................6

*Morris v. Zimmer*,
 No. 10 CV 4146 (VB), 2011 WL 5533339 (S.D.N.Y. Nov. 10, 2011) ....................................2

*Odetics, Inc. v. Storage Tech Corp.*,
 185 F.3d 1259 (Fed. Cir. 1999).................................................................................................2

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
 691 F. Supp. 2d 448 (S.D.N.Y. 2010).......................................................................................4

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
 553 U.S. 617 (2008)..................................................................................................................3

*Radio Sys. Corp. v. Lalor*,
 709 F.3d 1124 (Fed. Cir. 2013)..............................................................................................6, 7

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*,
 696 F. Supp. 2d 428 (S.D.N.Y. 2010).......................................................................................3

*Virginia Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997)......................................................................................... 9

*Wang Labs., Inc. v. Mitsubishi Elecs. Am.*,
    103 F.3d 1571 (Fed. Cir. 1997)................................................................................... 5, 7

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*,
    262 F.3d 1363 (Fed. Cir. 2001)..................................................................................... 5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969)....................................................................................................... 7

**STATE CASES**

*Fade v. Pugliani/Fade*,
    8 A.D.3d 612, 779 N.Y.S.2d 568 (2d Dep't 2004)....................................................... 2

**OTHER AUTHORITIES**

Oxford American Desk Dictionary..................................................................................... 9, 10

I.   **INTRODUCTION**

In an attempt to create the illusion of factual disputes, Ricoh's opposition attaches over 175 exhibits, submits two expert declarations, and alleges more than one hundred purported "Additional Facts Relevant to Summary Judgment." But Ricoh cannot overcome, and its voluminous filing cannot change, the following undisputed facts, which alone warrant summary judgment that Ricoh has breached the PLA:

- Ricoh signed the PLA in May 2002 only after nearly three full years of negotiations and approval by at least three senior Ricoh executives. (Ex. 6 [Saji Dep. Vol. 1] at 54:16-19, 75:14-76:5, 51:10-52:7, 54:23-55:4; Ex. 1 [PLA].)

- Ricoh unequivocally agreed in Section 4.4 of the PLA to pay royalties if it acquired a business that was not previously licensed and had not paid royalties on its sales of digital cameras: "If Ricoh acquires a business after the Effective Date of this Agreement *which business was not previously licensed by Kodak under Kodak's Patents and for which said business had not paid royalties on Licensed Products* sold by said acquired business, then Ricoh shall, with its next royalty payment following the acquisition, remit to Kodak a payment equal to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ multiplied by the worldwide Net Sales for the acquired business' Licensed Products . . . ." (Ex. 1 [PLA] at § 4.4.)[1]

- On October 1, 2011, Ricoh acquired Pentax's digital imaging business. (June 25, 2012 Answer to Compl., Dkt. 18, ¶ 29.)

- Throughout the term of the PLA, Pentax sold more than a billion dollars' worth of digital cameras, all of which—other than DSLRs—Ricoh concedes meet the PLA's definition of "Digital Camera" (and thus constitute "Licensed Products" under the PLA). (Ricoh Stmt. of Facts ¶¶ 11, 38.)

- Pentax never entered an express patent license agreement for Kodak's digital camera patents and never paid any royalties to Kodak on its sales of digital cameras. (Ex. 2 [Taniguchi Dep., Vol. 2] at 202:2-9 (Pentax had "no licensing relationship whatsoever with Kodak"); Ex. 20 [RICOH10265506] (same); Ex. 23 [Urano Dep. Vol. 1] at 115:22-25.)

- Ricoh refuses to pay royalties to Kodak on *any* of Pentax's digital camera sales. (Ricoh Stmt. of Facts ¶ 40.)

Recognizing its liability under the plain terms of the PLA, Ricoh relies on a series of attorney arguments to assert that it should not be bound by the terms it agreed to in 2002. Each

---

[1] All emphases added unless otherwise indicated.

of these arguments fails as a matter of law.

## II.     ARGUMENT

### A.     As a Matter of Law, Kodak's Breach of Contract Claims Are Not Barred by Patent Infringement Defenses.

Ricoh's argument that Kodak's claims are barred by laches (or any other patent infringement defense) is wrong as a matter of law. Ricoh originally argued that Kodak's breach of contract claims were directly barred by laches. But as even Ricoh now acknowledges (Opp. at 7), laches **cannot bar an action for damages for breach of contract**. *See Fade v. Pugliani/Fade*, 8 A.D.3d 612, 779 N.Y.S.2d 568, 570 (2d Dep't 2004) ("[L]aches is not applicable to an action at law, and thus may not bar ... causes of action alleging breach of contract and fraud to the extent they seek money damages."); *Morris v. Zimmer*, No. 10 CV 4146 (VB), 2011 WL 5533339, at *8 (S.D.N.Y. Nov. 10, 2011) (same).

Ricoh attempts an end-run around this law by arguing that Kodak would allegedly be barred from bringing **infringement** claims against Pentax and, as a result, is barred from recovering **breach of contract** damages from Ricoh. (Opp. at 7-8.) Despite its best efforts to re-label its defense, at bottom, Ricoh is still arguing that Kodak's **contract claims** are barred by laches. Ricoh cannot avoid the well-settled law that laches does not bar contract claims by simply re-labeling its argument. *See Fade,* 779 N.Y.S.2d at 570.[2]

Ricoh's obligations under the PLA are straightforward: if Ricoh acquires an unlicensed company that has sold digital cameras but has not paid royalties to Kodak—as it did here—Ricoh must pay royalties to Kodak on those sales. (Ex. 1 [PLA] at § 4.4.) Ricoh cannot rewrite the PLA to make Kodak's right to royalties under Section 4.4 subject to Kodak's ability to first

---

[2] *Odetics, Inc. v. Storage Tech Corp.*, 185 F.3d 1259, 1263 (Fed. Cir. 1999), relied upon by Ricoh (Opp. at 7, n.3), concerned the application of laches in the patent infringement context and is therefore inapposite.

defeat whatever patent infringement defenses—including laches—Ricoh's attorneys may assert.[3]

The declaration of Ricoh's expert Carl Silverman—who has no personal knowledge of any of the facts or events at issue in this case—does not change this result.  (*See* Ex. 33 [Silverman Rough Tr.] at 54:10431-434; 55:10436-440; 57:10454-457.)  As an initial matter, Mr. Silverman's opinions with respect to the proper interpretation of Section 4.4 are extrinsic evidence that can only be considered if the agreement is found to be ambiguous.  *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 207-08 (2d Cir. 2005) (allegations of a custom and practice cannot vary the terms of an unambiguous contract). Ricoh's only argument that Section 4.4 is ambiguous appears to be that the parties have offered competing interpretations of the provision (Opp. at 7-8).  But that is insufficient as a matter of law.  *See U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440 (S.D.N.Y. 2010) (internal citation omitted) (contract language "not ambiguous merely because the parties urge different interpretations").

Moreover, Mr. Silverman's opinions about purported "licensing customs and practices" are in fact unsupported legal conclusions with respect to the proper interpretation of the PLA. (*See* Silverman Decl. ¶ 3(ii) (offering opinion on "[h]ow the specific acquired business provision in the Kodak Ricoh PLA should be interpreted"); ¶¶ 19(i), 85  (opining on when Paragraph 4.4 "should apply"); ¶ 82 (opining on "the proper reading" of the PLA); Ex. 33 [Silverman Rough

---

[3] Ricoh contends that Kodak has somehow "conceded that paragraph 4.4 applies only where" Kodak could overcome all patent infringement defenses because Kodak is not seeking royalties from Ricoh on  products for which a licensed OEM has already paid royalties.  (Opp. at 6.)  This is incorrect.  Section 4.4 of the PLA explicitly provides that royalties are not due on an acquired business's digital camera sales ***where royalties have already been paid***, as in the case of certain licensed OEM products.  Consistent with that provision, Kodak is not seeking royalties on products for which royalties have already been paid.  That does not mean, however, that Kodak can recover royalties from Ricoh only after defeating its arguments with respect to patent infringement.  Ricoh's citation to *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008) is similarly inapposite.  Patent exhaustion is not a defense to a claim that a licensee owes royalties under a patent license agreement.  *See ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1377 (Fed. Cir. 2008) ("Patent exhaustion prohibits patentees from enforcing patent rights in certain circumstances, but it does not forbid multiple licenses on a single product or even multiple royalties."); *Discovision Associates v. Toshiba Corp.*, No. 08v3693(HB), 2009 WL 1373915, at *9 (S.D.N.Y. May 18, 2009) ("[E]xhaustion of patent rights through a sale is not necessarily determinative of who bears contractual liability for royalties as a result of that sale . . . .").

Tr.] at 49:10357-365.)  It is well settled that contract interpretation is an issue of law for the Court, not experts, to decide.  *See Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582,* 305 F.3d 82, 85 (2d Cir. 2002) ("proper interpretation of an unambiguous contract is a question of law for the court"); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 458 (S.D.N.Y. 2010) (experts "not permitted to testify about issues of law").

In any event, Mr. Silverman's arguments are contradicted by the plain language of the PLA.  Under Mr. Silverman's logic, each product sold by an acquired business would be subject to a claim-by-claim comparison of that product to Kodak's patents and, if Ricoh could show that the product did not infringe, no royalties would be due.  But in Section 4.2 of the PLA, Ricoh specifically agreed that no such comparisons were necessary.  Section 4.2 provides that, in light of the "numerous Kodak patents" and "variety of models" of Ricoh products, for the "mutual convenience of the parties," Ricoh would pay a ▮ commuted royalty on all sales of covered digital cameras. (Ex. 1 [PLA] at § 4.2.)  Accordingly, the PLA confirms that Kodak's right to royalties is not subject to its ability to first overcome any patent infringement defenses Ricoh's attorneys may assert.  *See Rockland Exposition, Inc. v. Alliance of Automotive Svc. Providers of New Jersey*, N. 08-cv-7069, 2009 WL 1154094, at * 9 (S.D.N.Y. Mar. 19, 2009) ("Where, as here, a contract is unambiguous, it is enforced according to its terms.").[4]

---

[4] Even if Ricoh were correct that laches could apply to Kodak's claims—and the law makes clear that it does not—Ricoh has not come close to establishing the necessary elements of that defense.  A laches defense requires a defendant to prove that: (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant."  *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992).  Ricoh has not even made a *prima facie* case that Kodak had sufficient knowledge of Pentax's digital cameras to assert an infringement claim.  Instead, it alleges only that a Kodak employee received a sample Pentax digital camera and promotional materials and other Kodak employees received emails regarding the release of certain Pentax cameras.  (Opp. at 3.)  Moreover, as discussed in Kodak's Opening Brief (at 21-22), the undisputed facts confirm that Kodak had limited resources to negotiate licenses and those resources were devoted to pursuing other targets.  *See Aukerman,* 960 F.2d at 1033 (recognizing "other litigation" as an example of excusable delay); *see also Hemstreet v. Comp. Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992) (finding no laches where delay was due to fact that patent holder was "busy enforcing [its] patent rights elsewhere").

### B.     Ricoh's Implied License Defense Fails as a Matter of Law.

Ricoh next argues that, although Pentax indisputably never had an express license from Kodak, Pentax allegedly obtained a *royalty-free implied license* by reason of equitable estoppel because Kodak supposedly implied that Pentax was authorized to use Kodak's digital camera patent portfolio.  (Opp. at 9-12.)  This argument fails on both the undisputed facts and the law.

Ricoh originally argued that Pentax obtained an implied license based on statements allegedly made by two Kodak employees during two conversations with Pentax's General Manager.[5]  As discussed in Kodak's opening brief, however, those two statements—which were made during conversations that lasted no more than five to ten minutes—were plainly insufficient, as a matter of law, to give rise to an implied license.  (Br. at 13-17.)

Ricoh now argues that Kodak's conduct more generally "implied consent" to Pentax's use of Kodak's digital camera patents, thereby giving rise to an "implied license by equitable estoppel." (Opp. at 9-12.)  But this argument is equally deficient.  It is well-settled that, under a theory of implied license by equitable estoppel, the patentee must give "an *affirmative* grant of consent or permission to make, use, or sell: i.e., a license." *See Wang Labs., Inc. v. Mitsubishi Elecs. Am.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) ("[I]mplied license looks for an affirmative grant of consent or permission to make, use, or sell: i.e., a license."); *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001) ("An implied license by equitable estoppel requires proof that: (1) the patentee, through statements or conduct, gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer . . . ").

The undisputed record evidence not only confirms that Kodak never gave the required

---

[5] Ricoh identified these two statements as the basis for its implied license defense following Kodak's motion to compel a response to its Interrogatory No. 3, which requested the identification of "any statements or conduct of Eastman Kodak Company ("Kodak") on which Ricoh Co., Ltd. ("Ricoh") is relying to support its defenses of implied license, authorization to sell, laches, or estoppel."  (Ex. 25 [Ricoh's Amended and Second Supp. Resp. to Kodak Int. No. 3] at 19.)

affirmative consent but also that Pentax was well aware that Kodak could assert its patents against Pentax at any time:

- The General Manager of the Imaging Systems Business Division—the Pentax employee to whom Kodak's alleged statements were allegedly made—admitted that he understood that Kodak "*might assert its patents* against Pentax." (Ex. 4 [Tsuruta Dep., Vol. 1] at 87:2-5.)

- Pentax's senior general manager for the development of digital cameras, and 30(b)(6) designee with respect to Pentax's communications with Kodak, acknowledged in 2010 that he had been "*afraid . . . that Kodak may sue* [Pentax] regarding digital image processing." (Ex. 5 [RICOH60000453].)

- The Manager of Pentax's Intellectual Property Group, the Pentax individual specifically responsible for understanding Pentax's patent rights, expressly admitted that Pentax had "*no licensing relationship whatsoever with Kodak*." (Ex. 20 [RICOH10265506].)

- The alleged statements by Kodak employees relied upon by Ricoh explicitly contemplate that Kodak might well assert its patents against Pentax. (Ex. 24 [Kojima Decl.] (Mr. Kojima would try to obtain favorable treatment for Pentax "*in the event that Kodak were ever to assert its digital camera patents against Pentax*."); Ex. 26 [Tsuruta Decl.] (Mr. Kimeda allegedly said Kodak would grant "favorable treatment [for] Pentax . . . *in the event that Kodak were ever to assert its digital camera patents against Pentax.*").)

- The two agreements that Ricoh identifies as being at the heart of Pentax's "good business relationship" and "alliance" with Kodak—the parties' ImageLink Agreement and CCD Agreement—explicitly provide that Pentax receives *no intellectual property rights* from Kodak. (Ex. 28 [ImageLink Agreement] at § 8.5; Ex. 29 [CCD Letter of Intent] at § 11.)

Indeed, Ricoh's witnesses, including its 30(b)(6) witness on Pentax's communications with Kodak, could not identify a single instance in which Kodak suggested that Pentax had permission to use Kodak's patents. (*See, e.g.*, Ex. 3 [Kawano Dep. Vol. 1] at 83:18-84:1.)[6]

In the absence of any affirmative consent, Ricoh argues, relying primarily on *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130-31 (Fed. Cir. 2013) and *Aspex Eyewear, Inc. v. Clariti*

---

[6] Ricoh attempts to defend its substantive changes to its witnesses' sworn testimony (e.g., changing the testimony "no agreement" to "no written agreement") by arguing that, after Ricoh had altered the witnesses' testimony under the guise of a translation issue, it was Kodak's burden to attempt to change it back. (Opp. at n.6.) But Ricoh had its own paid interpreter at the depositions of its witnesses and that interpreter did not raise these objections at the time. In fact, Ricoh's erratas do not even identify the translator who supposedly identified these alleged errors after the depositions. In any event, although Ricoh's errata changes may arguably be considered they do not erase the witnesses' prior testimony, and the Court may consider the nature of the changes on summary judgment. *See Margo v. Weiss*, 213 F.3d 55, 61 (2d Cir. 2000) ("There is no reason to distinguish . . . between an attempt to conjure up a triable issue of fact through the proffer of a late affidavit and an attempt to achieve the same end through the submission of delayed errata sheets …None will defeat a motion for summary judgment.").

*Eyewear, Inc.*, 605 F.3d 1305 (Fed. Cir. 2010), that mere silence can create an implied license by equitable estoppel. (Opp. at 11.) As an initial matter, these cases ***do not even address implied license by equitable estoppel.*** Rather, they are directed to the separate and distinct doctrine of equitable estoppel, which has a different legal standard.[7] In any event, in both *Radio Sys. Corp.* and *Aspex Eyewear, Inc.*, the patentee explicitly accused the defendant of infringing specific patent(s) and then did not pursue its infringement claims for several years—circumstances plainly distinguishable from those presented here, where Kodak had not previously accused Pentax of infringement. *See Radio Sys. Corp.*, 709 F.3d at 1131; *Aspex Eyewear, Inc.*, 605 F.3d at 1311-13. Indeed, in *Radio Sys. Corp.*, the court found that a patentee's silence was insufficient to create an estoppel where (as is the case here) the silence was not preceded by an explicit infringement allegation. *See Radio Sys. Corp.*, 709 F.3d at 1131 (no equitable estoppel where patentee did not accuse defendant of infringing the patent until six months before filing suit). Accordingly, Ricoh's implied license defense fails as a matter of law.

      **C.    Ricoh's Patent Misuse Defense Fails as a Matter of Law.**

Ricoh next argues that Kodak's claims are barred by the doctrine of patent misuse because Ricoh was allegedly coerced into adopting a worldwide royalty provision. (Opp. at 16.) This too is wrong as a matter of law.

The PLA explicitly states that the worldwide commuted royalty is for the convenience of the parties. (Ex. 1 [PLA] § 4.2.) The Supreme Court has held that, where a worldwide royalty provision is for the convenience of the parties, such a provision is not patent misuse. *See Zenith*

---

[7] *See Wang Labs.*,103 F.3d at 1581 (explaining the difference in standards between the doctrine of implied license by equitable estoppel and the doctrine of equitable estoppel) ("***The primary difference between the estoppel analysis in implied license cases and the analysis in equitable estoppel cases is that implied license looks for an affirmative grant of consent or permission to make, use, or sell: i.e. a license*** . . . Equitable estoppel, on the other hand, focuses on 'misleading' conduct suggesting that the patentee will not enforce patent rights."). Ricoh's opposition addresses exclusively "implied license by equitable estoppel." (Opp. at 9-16.) Even if Ricoh had intended to raise both arguments, however, Ricoh has not identified the requisite evidence of misleading conduct on the part of Kodak to maintain an equitable estoppel defense. As discussed above, the undisputed evidence shows that Pentax was well aware that Kodak could assert its patents at any time.

*Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 138 (1969). Faced with *Zenith's* unambiguous holding, Ricoh now argues that it was forced to agree to the worldwide royalty provision notwithstanding the PLA's "mutual convenience" language. (Opp. at 4, 17-19.) But the document on which Ricoh relies to make that argument shows that, in fact, Ricoh never even asked Kodak to modify the worldwide royalty provision. Specifically, although Ricoh did state that it was "dissatisfied" with the worldwide royalty provision (Ricoh Ex. 99 at RICOH10402626), Ricoh's proposal that followed in that same document proposed ***no changes to either the worldwide sales provision or the*** ▮ ***royalty rate.*** (*Id.* at 10402626-627.) Instead, Ricoh proposed to reduce the amount due for back royalties, to add an early termination clause, and to modify the separate "Software Distribution Agreement" that was being negotiated contemporaneously. (*Id.*) Indeed, Ricoh's own subsequent "final proposal" specifically included a ▮ commuted royalty on worldwide sales:

> [W]e believe that you have grasped our difficult circumstances of business and our position… To protect both Kodak's policy and Ricoh's business, Ricoh would like to propose the following final proposal… PLA: a. ▮ ***commuted, worldwide royalty rate*…**

(Ex. 34 [RICOH10121787].) Far from showing that Ricoh was coerced into accepting the worldwide royalty provision, the undisputed evidence shows that Ricoh itself included that provision in its own proposals.[8]

The PLA was negotiated between sophisticated parties over a three-year period. (Ex. 6 [Saji Dep. Vol. 1] 54:16-19; Ex. 1 [PLA].) It was specifically approved by at least three senior Ricoh officials prior to its execution. (*Id.* at 75:14-76:5, 51:10-52:7, 54:23-55:4.) The parties also negotiated two separate amendments to the PLA, during which Ricoh never sought to

---

[8] Ricoh argues that the PLA requires payment on total worldwide sales but that "Kodak's patents are not worldwide in scope." (Opp. at 16.) But the PLA explicitly gives Ricoh a ***worldwide license to all of Kodak's patents***, including the non-U.S. patents in its portfolio. (Ex. 1 [PLA] at §§ 1.7, 3.1.)

renegotiate the worldwide royalty provision.  (Ex. 35 [First Amendment]; Ex. 7 [Second Amendment]).)  The undisputed evidence—including Ricoh's own documents—confirms that Ricoh was not coerced into agreeing to the terms of the PLA.[9]

### D. DSLRs Sold with Lenses Are "Digital Cameras."

There is no dispute that Pentax's point-and-shoot cameras—which account for more than a billion dollars' worth of the revenues at issue—meet the definition of "digital camera."  (*See* Ricoh Stmt. of Facts ¶ 11.)  Ricoh contends, however, that Pentax's DSLRs are not "portable" or "self-contained" as required under the PLA.  This is contradicted by the testimony of Ricoh's corporate designee with respect to the Pentax digital cameras.  (Opp. at 20-23.)

Ricoh argues that DSLRs are not portable because they are larger than point-and-shoot cameras and are not "pocket-sized."  (Opp. at 21, Fasano Decl. ¶¶ 64-83.)  Ricoh's contention that a two-pound camera that is sold with a carrying strap (*see* Fasano Decl. at ¶ 83) is somehow not "portable" not only defies logic but is also directly contrary to the testimony of Ricoh's own witnesses.  Ricoh's corporate designee explicitly testified that DSLRs are "portable" and can be carried from place to place.  (Ex. 3 [Kawano Dep., Vol. 1] at 31:3-6 ("Q. So, Mr. Kawano, all Pentax SLR cameras are portable, correct?  A. That's correct, if you're talking about general SLRs."); *id.* at 27:3-17 (Pentax DSLRs are capable of being carried); *id.* at 29:7-13 (Pentax SLRs portable).  Ricoh contends that these admissions were only under Kodak's counsel's definition of "portable"—i.e., that you can carry it with you.  (Opp. at 23.)  But that is the plain meaning of the term "portable."  (*See* Ex. 36 [Oxford American Desk Dictionary] ("portable: easily movable; convenient for carrying").)

Ricoh further argues that, because DSLR lenses and bodies can be sold separately,

---

[9] It is also well-settled that aggressive negotiations—which can often include threats of (or actual) litigation—do not, without more, constitute patent misuse.  *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868-870 (Fed. Cir. 1997) (patentee's threats of litigation did not constitute patent misuse).

- 9 -

DSLRs are not "self-contained." (Opp. at 20.) But Kodak is only seeking damages on DSLRs that are sold with a lens.[10] And Ricoh's corporate designee specifically conceded that a DSLR with a lens is a "*complete* device."

> Q. Let me ask a better question. We can both agree it would be a complete device with which you could take a picture?
> A. I don't understand what you mean by "complete."
> Q. You don't need any other components to take a picture.
> A. I think that's the case, if you mean it doesn't need any other components.

(Ex. 3 [Kawano Dep., Vol. 1] at 21:16-24; Ex. 11 [Kawano Dep., Vol. 2] at 235:10-20.)

Ricoh argues that this testimony is relevant only to another portion of the "Digital Camera" definition—the ability to take a picture. (Opp. at 22-23.) But this simply ignores the 30(b)(6) witness's admission that DSLRs are "*complete*"—i.e., self-contained digital cameras. (Ex. 36 [Oxford American Desk Dictionary] ("self-contained: . . .2 *complete* in itself").)

Finally, Ricoh argues that Kodak's PLA with ▌ somehow supports its argument that the DSLRs are not "Digital Cameras" under the Ricoh PLA. (Opp. at 21-22.) But even if the ▌ agreement, which contains different provisions and was negotiated between different parties, were relevant to this dispute (and it is not), the ▌ DSLR agreement *specifically defines a DSLR as a "Digital Camera*." (Ricoh Ex. 40 [▌ Agmt.]) Accordingly, the undisputed evidence establishes that DSLRs are "Digital Cameras" under the PLA.

### III. CONCLUSION

Ricoh unequivocally agreed to pay Kodak royalties if it acquired a business that was not previously licensed and had not paid royalties on its sales of digital cameras. It should be held to that agreement. Kodak respectfully requests that the Court grant summary judgment that Ricoh has breached the PLA.

---

[10] Ricoh argues that the fact that Kodak is not seeking damages on lenses or DSLR bodies sold separately somehow means that DSLR bodies and lenses, when sold together, do not meet the definition of "Digital Camera." (Opp. at 20.) But, as discussed above, even Ricoh's own witnesses concede that DSLR lenses and bodies combined constitute a "complete" device. (Ex. 3 [Kawano Dep., Vol. 1] at 21:7 -24.)

REDACTED

Dated: August 2, 2013
      New York, New York      /s/ Robert J. Gunther, Jr.

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (admitted *pro hac vice*)
Jordan L. Hirsch (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com

*Attorneys for Eastman Kodak Company*