UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EASTMAN KODAK COMPANY,

               Plaintiff,

     v.

RICOH COMPANY, LTD.,

               Defendant.

Case No. 12-CV-03109 (DLC)

## PLAINTIFF EASTMAN KODAK COMPANY'S
## OPPOSITION TO RICOH'S MOTIONS IN LIMINE

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212)230-8888

Michael J. Summersgill
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02105
Tel: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Eastman Kodak Company

# TABLE OF CONTENTS

**Page**

I.      Opposition to Ricoh Motion in Limine No. A.1: Preclude Kodak from
        Introducing Evidence Relating to Ricoh's Violation of the PLA ........................1

II.     Opposition to Ricoh Motion in Limine No. A.2: Preclude Evidence or
        Argument Regarding Harm to Kodak Due to Ricoh's Nonpayment of Royalties .............3

III.    Opposition to Ricoh's Motion in Limine No. A.3: Preclude Evidence Regarding
        "Kodak's Prior Relationship with Pentax" ........................................4

IV.     Opposition to Ricoh Motion in Limine No. A.4:  Preclude Kodak from
        Mentioning Pentax's and Ricoh's Failure to Pay Royalties Under the PLA ....................6

V.      Opposition To Ricoh Motion in Limine No. A.5: Preclude Evidence Or Argument
        Regarding Kodak's History And Reputation In The Photography Industry.......................7

VI.     Opposition to Ricoh's Motion in Limine No. A.6: Preclude Evidence of "Kodak's
        Investments in Research and Development, Inventions, and Patent Portfolio" .................8

VII.    Opposition to Ricoh's Motion in Limine No. A.7: Preclude Evidence of
        "Kodak's Global Licensing Campaign" ..............................................10

VIII.   Opposition To Ricoh's Motion In Limine "B": "Third Party Documents
        Purporting To Show Pentax 'Kit' Configurations" ...........................................10

IX.     Opposition To Ricoh's Motion In Limine "C": Preclude Mr. Thomas's Second
        Supplemental Expert Report ..................................................................13

X.      Opposition to Ricoh's Motion in Limine "D":  Preclude "Testimony by John
        Valenza …to the Extent it Exceeds the Scope of the 30(b)(6) Topics on Which
        He Was Designated"...........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) ........................................................16

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
    2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009)........................................... passim

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
    138 F. Supp. 2d 357 (E.D.N.Y. 2001) .................................................................7

*Caruolo v. John Crane, Inc.*
    226 F.3d 46 (2d Cir. 2000)................................................................................11

*Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*,
    257 F. Supp. 2d 751 (S.D.N.Y. 2003).............................................................3, 6

*E.E.O.C. v. Indiana Bell Tel. Co.*,
    256 F.3d 516 (7th Cir. 2001) ...............................................................................7

*Floyd v. City of New York*,
    2013 WL 1955683 (S.D.N.Y. May 13, 2013) ....................................................12

*Howard v. Walker*,
    406 F.3d 114 (2d Cir. 2005)..........................................................................11, 13

*In re Gabapentin Patent Litig.*,
    2011 WL 1807448 (D.N.J. May 12, 2011) .......................................................4, 9

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    2013 WL 4830965 (S.D.N.Y. Sept. 10, 2013)...................................................12

*Lennon v. Seaman*,
    2002 WL 109525 (S.D.N.Y. Jan. 28, 2002) .......................................................8

*Pescatore v. Pan Am. World Airways, Inc.*,
    97 F.3d 1 (2nd Cir. 1996) ....................................................................................2

*Reardon v. Manson*,
    806 F.2d 39 (2d Cir. 1986)................................................................................13

*Stored Value Solutions, Inc. v. Card Activation Technologies, Inc.*
    2010 WL 3834457 (D. Del. Sept. 27, 2010) .....................................................14

*The Prytania Park Hotel et al v. Gen. Star Indem. Co.*,
    1997 WL 66774 (E.D. La. Feb. 14, 1997) ..........................................................8

*Thomas v. Garcia*,
  2013 WL 3773861 (E.D. Cal. July 17, 2013) .........................................................11

*U.S. v. Daly*,
  842 F.2d 1380 (2nd Cir. 1988).................................................................................7, 10

*U.S. v. Dukagjini*,
  326 F.3d 45 (2d Cir. 2002).........................................................................................11

*U.S. v. Olsen*,
  704 F.3d 1172 (9th Cir. 2013) ..................................................................................11

*Ultratech, Inc. v. Tamarack Scientific Co.*,
  2005 WL 856408 (N.D. Cal. Apr. 14, 2005) ...........................................................14

**RULES**

Fed. R. Evid. 401 ..............................................................................................................7

**OTHER AUTHORITIES**

Merriam-Webster's Collegiate Dictionary ........................................................................3

I.    **Opposition to Ricoh Motion in Limine No. A.1: Preclude Kodak from Introducing Evidence Relating to Ricoh's Violation of the PLA**

Ricoh's attempt to preclude Kodak not only from introducing any evidence regarding, but apparently even ***referencing the underlying fact of***, the Court's summary judgment decision is contrary to relevant precedent and should be rejected.

The Court's summary judgment decision, and its underlying rulings (*e.g.*, that Pentax's point-and-shoot digital cameras are Digital Cameras under the agreement; that Ricoh breached the PLA by failing to pay royalties on those sales; and that Digital Single Lens Reflex cameras ("DSLRs") are "portable"), are essential background information for the jury to understand the task it will be asked to undertake with respect to the calculation of damages.

Indeed, a court in this District has previously held, in evaluating this precise issue— whether a prior finding of liability for breach of contract was admissible in the damages trial in the same matter—that such evidence was "probative" in light of the jury's "need…to understand why it [was] being asked to only determine" issues relating to damages:

> The Court's prior rulings, ***including its ruling on Aristocrat's breach*** of the Indenture, are ***probative of the present procedural posture of the case, which the jury will need to be aware of to understand why it is being asked only to determine whether the Bondholders unreasonably failed to mitigate their consequential damages***.  While many of the issues addressed in the Court's prior rulings - including the Court's rulings on the securities fraud claims and the amount of general damages, see supra - are not probative of the issues for trial, the Court declines, at this early time, to issue a blanket prohibition against mentioning all of its rulings at trial. Therefore, ***Aristocrat's in limine request to preclude argument or evidence of the Court's prior ruling***s, other than in a statement of background facts to be read to the jury, is ***denied***.

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014 PKL, 2009 WL 3111766, at *11 (S.D.N.Y. Sept. 28, 2009) (emphasis added).

The risk of confusion if the jury were to be denied an explanation as to why its only task is to determine damages is considerable.  Failing to inform the jury that certain issues have

already been decided by the Court could invite the jurors to re-decide those issues themselves,

potentially resulting in an inaccurate damages verdict.

Allowing Kodak to reference the Court's prior determination of Ricoh's breach is not, as

Ricoh contends (Ricoh MILs at 2-4), unduly prejudicial.  Again, the *Aristocrat* court previously

addressed—and rejected—this precise argument.  In that case, the court found that references to

the court's prior finding of "breach" and "breach of contract" were not "pejorative,

inflammatory, or prejudicial on [their] face":

> The term "breached the Indenture" and variations of this phrase, such as
> "breach of contract," are factual references to the Court's prior ruling.
> Unlike other terms that this Circuit has found to be prejudicial, ***the term
> "breach" or "breach of contract/Indenture" is not pejorative,
> inflammatory, or prejudicial on its face, and will not be precluded in
> describing the Court's prior rulings***.

*Aristocrat*, 2009 WL 3111766, at *11 (emphasis added).

In reaching this decision, the court explicitly distinguished *Pescatore v. Pan Am. World

Airways, Inc.*, 97 F.3d 1 (2nd Cir. 1996), the sole case relied upon by Ricoh for the proposition

that "[a] prior finding of misconduct…is irrelevant to the damages phase of litigation."  (Ricoh

MILs at 1.)  The *Aristocrat* court noted that *Pescatore* concerned a situation in which the court

and plaintiff's counsel had repeatedly discussed the court's prior determination of the

defendant's "willful misconduct" – "a highly potent phrase that is not self-defining and invites

speculation."  *Id*. at 17; *Aristocrat*, 2009 WL 3111766, at *11.  In contrast to such a loaded

expression, the *Aristocrat* court held, "***the terms 'breach' or 'breach of contract/Indenture' are

not so 'highly potent' that they would invite speculation regarding their meaning***."  *Id*.

(denying motion in limine to preclude use of the term "breach" or "breach of contract/Indenture").[1]  The same analysis applies here.

Allowing Kodak to reference the Court's ruling also does not, as Ricoh suggests, permit Ricoh to introduce evidence suggesting that it did not willfully breach the agreement.  (Ricoh MILs at 4 ("Ricoh would be forced to counter such argument by introducing evidence related to, for example, the basis for and reasonableness of Ricoh's understanding that it had fulfilled its obligations under the PLA . . .").)  But whether Ricoh's breach was willful is not at issue in this case.  Moreover, as set forth in Kodak's Motion in Limine No. VI, Ricoh may not relitigate the Court's summary judgment decision.  *See, e.g., Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 257 F. Supp. 2d 751, 765 (S.D.N.Y. 2003) (granting motion in limine to exclude argument regarding defenses that court rejected on summary judgment).  Indeed, the fact that Ricoh suggests it may be justified in doing so underscores the importance of allowing Kodak to refer to the Court's summary judgment ruling so that the jury understands precisely what remains at issue in this case.  *See Aristocrat*, 2009 WL 3111766, at *11.

Ricoh's attempt to preclude Kodak from referencing the Court's prior determination of Ricoh's "breach" (or "violation") of the PLA should be denied.

## II.    Opposition to Ricoh Motion in Limine No. A.2: Preclude Evidence or Argument Regarding Harm to Kodak Due to Ricoh's Nonpayment of Royalties

Ricoh seeks an order precluding Kodak from presenting evidence or argument regarding the "harm" to Kodak resulting from Ricoh's failure to pay royalties.  (Ricoh MILs at 4.)   Ricoh asserts that "[a]ny 'harm' suffered by Kodak must be quantified solely with reference to the calculation of royalties and interest pursuant to the PLA."  *Id.*

---

[1]      The plain meaning of "breach" is an "infraction or ***violation*** of a law, obligation, tie, or standard."  (Ex. 1, [Merriam-Webster's Collegiate Dictionary] at p. 140 (emphasis added).)  References to the "violation" of the PLA are therefore permissible for the same reasons as references to the prior determination of breach.

Kodak agrees (and its damages expert will testify) that the amount of damages should be determined solely according to the formula for calculating royalties provided in the PLA.  Kodak merely seeks to put this damages calculation into context by introducing limited background evidence regarding its investments in research and development and how Ricoh's breach injured Kodak by taking the benefit of those investments without providing any compensation to Kodak.  As discussed in more detail in Kodak's Opposition to Ricoh's Motion in Limine No. A.6 (*see infra*), such research and development expenditures are relevant background information that will give the jury context for the damages calculations it will be asked to undertake.  *See In re Gabapentin Patent Litig.*, MDL No. 1384,  2011 WL 1807448, at * 12, 15 (D.N.J. May 12, 2011) (denying motion to preclude evidence of research and development spending where party offering evidence contended the evidence was relevant, among other things, to "the description of their business"); *see also Aristocrat*, 2009 WL 3111766, at *11 (evidence admissible where "the jury will need to be aware of [it] to understand why it is being asked only to determine" damages).

Kodak therefore respectfully requests that Ricoh's motion in limine No. A.2 be denied.

**III.     Opposition to Ricoh Motion in Limine No. A3: Preclude Evidence Regarding "Kodak's Prior Relationship with Pentax"**

Ricoh's third motion in limine is captioned as a motion to preclude evidence or argument regarding "Kodak's prior relationship with Pentax" (Ricoh MILs at 5), but what Ricoh actually seeks to preclude is ***any reference*** to the fact that Pentax was not a Kodak licensee – something that the Court has already decided on summary judgment.  (Dkt. 105 [Opinion and Order on Summary Judgment] at 28 ("In sum, Kodak has demonstrated that Pentax was 'not previously licensed' under Kodak patents….").)

Ricoh incorrectly argues that the lack of a license between Kodak and Pentax is "irrelevant to the sole issue to be decided at trial (the calculation of royalties under the PLA)." (Ricoh MILs at 5.)   But it is undisputed that the jury will be asked to calculate royalties due under Section 4.4 of the PLA, which ***explicitly puts an acquired company's licensing status at issue.***   Section 4.4 provides:

> If Ricoh acquires a business after the Effective Date of this Agreement ***which business was not previously licensed by Kodak under Kodak's Patents*** and for which said business had not paid royalties on Licensed Products sold by said acquired business, then Ricoh shall, with its next royalty payment following the acquisition, remit to Kodak a payment equal to [a certain percentage] multiplied by the worldwide Net Sales for the acquired business' Licensed Products for the period beginning on the Effective Date and ending on the acquisition date in addition to paying the royalty due under Paragraph 4.2 for sales by such acquired business after the acquisition date.

(Dkt. 70-1 [PLA] at § 4.4 (emphasis added).)   The jury needs to understand that Pentax did not have a license so that it understands why it is being asked to calculate damages Ricoh owes on Pentax sales of Digital Cameras.   *See Aristocrat*, 2009 WL 3111766, at *11 (findings of liability on summary judgment admissible in damages trial where summary judgment ruling would help jury understand its role in damages trial).   Indeed, if the jury were not informed of the Court's determination on this issue, it could well be confused as to Pentax's licensing status and improperly reduce the damages accordingly.   This motion in limine should therefore be denied for the same reasons as Ricoh's Motion in Limine No. A.1.

Ricoh's suggestion that, if Kodak were to reference the Court's prior determination that Pentax was not licensed, Ricoh should then be permitted to introduce evidence regarding "the positive business relationship between Pentax and Kodak, the basis for Pentax's understanding that it was licensed by Kodak, and the basis for Hoya's understanding that it would not pursue Pentax for patent infringement" (Ricoh MILs at 5) fails for the same reasons as its analogous

5

arguments in Motion A.1.  These issues have already been decided on summary judgment, and Ricoh may not relitigate them in front of the jury.  *See, e.g., Cary Oil Co., Inc.*, 257 F. Supp. 2d at 765 (granting motion in limine to exclude argument regarding defenses that court rejected on summary judgment); *see generally* Kodak's MIL No. VI.

Accordingly, Kodak respectfully requests that Ricoh's motion to preclude Kodak from referencing that Pentax was not a Kodak licensee be denied.

### IV.    Opposition to Ricoh Motion in Limine No. A.4:  Preclude Kodak from Mentioning Pentax's and Ricoh's Failure to Pay Royalties Under the PLA

Ricoh argues that Kodak should be precluded from offering evidence at trial that neither Pentax nor Ricoh has paid Kodak royalties on the sales of the Pentax products at issue.  (Ricoh MILs at 6.)   This is plainly incorrect for the following reasons.

*First*, this is a damages case and the fact that Ricoh and Pentax have not paid royalties due under the PLA is indisputably relevant to the damages calculation. The jury needs to understand that no royalties have been paid on the cameras at issue in order to calculate the total royalties due.  The jury also needs to understand when the payments were due, and the fact that they were not paid, in order to calculate the interest owed to Kodak on the past due payments.

*Second,* Ricoh's failure to pay royalties under the PLA—like its breach of the PLA—is essential information for the jury.  For the same reasons set forth in Kodak's opposition to Ricoh's Motion in Limine A.1 (to preclude Kodak from mentioning the Court's prior determination that Ricoh breached the PLA), the fact that the Court has already determined that Ricoh breached the PLA by failing to pay royalties on Pentax sales is critical for the jury to understand why they are only being asked to calculate damages.  *See Aristocrat*, 2009 WL 3111766, at *11 (prior finding of breach of contract was "probative of the present procedural

posture of the case, which the jury will need to be aware of to understand why it is being asked only to determine" damages).

Accordingly, Kodak respectfully requests that Ricoh's motion to preclude Kodak from referencing Ricoh's and Pentax's failure to pay royalties under the agreement be denied.

## V.     Opposition To Ricoh Motion in Limine No. A.5: Preclude Evidence Or Argument Regarding Kodak's History And Reputation In The Photography Industry

Ricoh seeks an order precluding Kodak from presenting evidence on its background including its "history and reputation in the photography industry" and its "history of invention and innovation." (Ricoh MILs at 6.)   Ricoh's motion should be denied.

*First*, it is well settled that this type of background information is "universally" admissible.  Kodak should be permitted to introduce itself to the jury, and an important part of Kodak's background is its history of innovation in photography.  *See* Fed. R. Evid. 401 advisory committee's note ("Evidence which is essentially background in nature … is ***universally offered and admitted*** as an aid to understanding.") (emphasis added); *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 368 (E.D.N.Y. 2001) ("The Federal Rules … assume leeway in the introduction of … background evidence.").  Moreover, Kodak's history of innovation is directly relevant to the parties' dispute.  Kodak's innovations resulted in the digital camera patent portfolio that Ricoh licensed in the PLA.  *See E.E.O.C. v. Indiana Bell Tel. Co.*, 256 F.3d 516, 533 (7th Cir. 2001) (internal citation omitted) ("Evidence is relevant if its exclusion would leave a chronological and conceptual void in the story.").

*Second,* there is no reason to believe that allowing Kodak to introduce itself and its history of innovation, will confuse the damages issues in dispute.  To the contrary, it will give the jury the context to understand Ricoh's agreement to pay royalties in return for a license to Kodak's digital camera patent portfolio.  *See U.S. v. Daly*, 842 F.2d 1380, 1388 (2nd Cir. 1988)

7

("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."); *Lennon v. Seaman*, 99 CIV. 2664 (LBS), 2002 WL 109525, at *4 (S.D.N.Y. Jan. 28, 2002) (if evidence bears on "issues, such as the nature of the parties' relationship or the background of the controversy," it is admissible).

This does not mean, however, that Ricoh should be permitted to introduce evidence of Kodak's purported "ultimate failure in the photography industry, the sale of its patent portfolio, and its resulting bankruptcy."   (Ricoh MILs at 7.)  One does not follow the other.  Kodak's purported "ultimate failure . . . and its resulting bankruptcy" occurred **ten years after the parties entered the PLA** (and only four months before it expired) and thus is wholly irrelevant to this dispute.  Moreover, Kodak's bankruptcy and patent sale are precisely the type of facts that are likely to confuse the jury.  The jury, for instance, could be confused into believing that Kodak is no longer entitled to royalties under the PLA or that Kodak has no right to enforce the PLA against Ricoh because it filed for bankruptcy and no longer owns the digital camera patents. *See The Prytania Park Hotel et al v. Gen. Star Indem. Co.*, No. Civ.A. 94-3743, 1997 WL 66774, at *2 (E.D. La. Feb. 14, 1997) ("[E]vidence of the bankruptcy is inadmissible because the danger of unfair prejudice substantially outweighs any limited probative value the evidence might provide.").  Permitting Kodak to introduce itself—including its background of innovation—does not warrant Ricoh introducing evidence of indisputably irrelevant and unfairly prejudicial facts regarding Kodak.

## VI.   Opposition to Ricoh's Motion in Limine No. A. 6: Preclude Evidence of "Kodak's Investments in Research and Development, Inventions, and Patent Portfolio"

Ricoh also seeks to preclude Kodak from introducing evidence "of its investment in the research and development of digital imaging technology" and "its improvements to the state of

the art in digital imaging technology." (Ricoh MILs at 6-7.) This motion is closely related to Ricoh's MIL A.5 and should be denied for the same reasons.

**First**, it is well-settled that Kodak may rely on background evidence to introduce itself to the jury. *See* Kodak's Opp. to MIL A.5, *supra*. Courts have specifically found that a party's research and development expenditures, in particular, can be relevant background information. *See In re Gabapentin Patent Litig.*, 2011 WL 1807448, at * 12, 15 (denying motion to preclude evidence of research and development spending where party offering evidence contended the evidence was relevant, among other things, to "the description of their business").

Moreover, there is no reason to believe that this background evidence would confuse the issues in dispute, as Ricoh contends. (Ricoh MILs at 8.) Indeed, the court in *Gabapentin* explicitly acknowledged that any concerns about jury confusion surrounding research and development expenses could be addressed by specific jury instructions on damages:

> To the extent Defendants are concerned that the jury will be confused by this evidence and will seek to award Plaintiffs their costs in developing Neurontin, ***that concern will no doubt be cured by appropriate jury instructions as to how damages should be determined*** and the definition of a reasonable royalty.

*Gabapentin,* 2011 WL 1807448, at * 12 (emphasis added).

Finally, Ricoh's suggestion that it would be forced to counter any evidence regarding Kodak's contributions to the field of digital imaging and its investments in research and development with irrelevant evidence regarding Kodak's bankruptcy or the sale of its patent portfolio should be denied for the same reasons set forth in Kodak's Opposition to Ricoh's Motion in Limine No. A.5: such evidence is unfairly prejudicial and, in contrast to Kodak's background evidence, has no bearing on any issue to be decided.

VII.   **Opposition to Ricoh Motion in Limine No. A. 7: Preclude Evidence of "Kodak's Global Licensing Campaign"**

Ricoh seeks to preclude Kodak from introducing any evidence regarding its "licensing activities."  (Ricoh MILs at 9.)  As Kodak explained to Ricoh in discussions preceding the filing of this motion, Kodak does not intend to identify any of its third-party licensees (other than the three OEMs who supplied digital cameras to Pentax, whose licenses Ricoh has put at issue in this case) or attempt to submit evidence regarding their views of Kodak's portfolio.  Kodak merely intends to introduce the fact that it made the decision to license its patents and that Ricoh was one of its licensees.  Ricoh has cited no case law for the proposition that Kodak should not be permitted to present this basic background information.  In fact, the case law is to the contrary. *See Daly*, 842 F.2d at 1388 ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.").

VIII.   **Opposition To Ricoh Motion In Limine "B": "Third Party Documents Purporting To Show Pentax 'Kit' Configurations"**

Ricoh's attempt to exclude documents that directly contradict its assertion that DSLR "kits" do not include lenses is wrong on the facts and the law.  Ricoh incorrectly argues that Kodak will seek to affirmatively admit into evidence third party internet documents confirming that DSLR kits include lenses.  To the contrary, Kodak will use these documents for two different purposes—both of which are expressly permitted under the Federal Rules of Evidence.

*First*, Kodak will use the documents on cross examination in the event Ricoh's witnesses assert that DSLR kits do not include lenses.  Ricoh failed to argue—let alone produce any evidence—during discovery to support its claim that kits are sold without lenses.  The only evidence produced during discovery is that, in fact, kits do include lenses.  Ricoh's own press releases show that DSLR kits include lenses (*see, e,g.*, Ex. 13 to Kodak's Oct. 7, 2013 Mem. of

Law in Support of its MILs [KOD-RIC081778] ("each new color kit will ship with an 18-55mm lens")) and Ricoh's own expert admitted that he has no basis to dispute that kits include lenses. (*See, e.g.,* Ex. 10 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [Becker Dep.] at 353:15-19 (cannot dispute that 645D kit is sold with a lens).)   If Ricoh puts a witness on at trial to now say the exact opposite, Kodak should be permitted to cross examine that witness—including with third party statements, such as the kit documents that indicate that DSLR kits were sold with lenses.  *See U.S. v. Olsen,* 704 F.3d 1172, 1184 (9th Cir. 2013) (report authored by third parties can be used to cross-examine witness because "[e]vidence can be 'used to impeach' a witness even if the evidence is not itself admissible …. [A] written statement, for instance, that contradicts a witness's testimony but is inadmissible as hearsay could still be used as a prior inconsistent statement to cross-examine the witness" (citation and quotation marks omitted)); *Thomas v. Garcia*, 2013 WL 3773861, at *7 (E.D. Cal. July 17, 2013) (doctor's hearsay notes are not admissible but "may be used to cross examine").

> **Second**, Kodak's damages expert, Vince Thomas, may as a matter of law rely on third-party statements to support his opinion that kits include lenses.  The Second Circuit has repeatedly held that experts may rely on hearsay to form the bases of their opinions.  *See Caruolo v. John Crane, Inc.* 226 F.3d 46, 55 (2d Cir. 2000) (when expert's testimony is challenged, "it was reasonable" for expert to rely on hearsay to support his testimony); *U.S. v. Dukagjini,* 326 F.3d 45, 58 (2d Cir. 2002) ("we hold that an expert witness may rely on hearsay evidence while reliably applying expertise to that hearsay evidence"); *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005) ("A number of structural mechanisms ensure that an expert's reliance on hearsay furthers, rather than hinders, 'the truthfinding process.'") (internal citation omitted).  As recently as September 2013, another court in this District reached the same

conclusion.  *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2013 WL

4830965, at *8 (S.D.N.Y. Sept. 10, 2013) ("an expert may rely on hearsay sources that she used

in forming her opinion").

Accordingly, while Kodak will not seek to introduce third party internet documents

describing "kits" into evidence during Mr. Thomas's direct testimony, Mr. Thomas may

generally explain that his opinion regarding kits is supported by research that he conducted.  *See*

*Floyd v. City of New York*, 2013 WL 1955683, at *2 (S.D.N.Y. May 13, 2013) ("This argument

is entirely without merit as the Stewart Report very clearly uses the hearsay at issue with the

express purpose of forming the basis for its expert opinion, which is permissible, *see* Fed. R.

Evid. 702, 703; *U.S. v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003). . . .").

Ricoh's argument that the third party kit documents are "irrelevant" because they are not

internal Pentax documents does not change this result.  Ricoh claims that the kit documents do

not show what Pentax internally understood "kits" to include.  (Ricoh MILs at 11.)  But they are

clearly an indication of what the market understands Pentax digital camera "kits" to include.  At

most, therefore, Ricoh's arguments go to the weight of this evidence.  Ricoh can try to establish

with its own witnesses (or on cross examination of Mr. Thomas) that—despite the admissions of

its expert, its own press releases confirming that kits include lenses, and the kit documents at

issue—it used the term "kit" to refer to a product without a lens.  But that is not a reason to

preclude Kodak from using the kit documents on cross or to preclude Mr. Thomas from

explaining that his research confirmed his opinion that kits include lenses.[2]

## IX.     Opposition To Ricoh Motion In Limine "C": Preclude Mr. Thomas's Second Supplemental Expert Report

Ricoh's attempt to exclude Mr. Thomas's Second Supplemental Report is based on a

fundamental mischaracterization of the record.  Ricoh argues that Mr. Thomas's Supplemental

Report—in which Mr. Thomas sets forth documents that confirm that Pentax's DSLR kits

include lenses—should have been served before September 16, 2013.  But it was ***Ricoh's own***

***failure to produce the documents***—which were directly responsive to Kodak's discovery

requests and include Ricoh's own documents—that prevented Mr. Thomas from serving his

supplement earlier.

Ricoh failed to disclose any argument or evidence that kits are purportedly sold without

lenses until ***after*** the close of fact discovery and after Mr. Thomas submitted his opening expert

report.  Months before the close of fact discovery and beginning of expert discovery, Kodak

served discovery to learn whether Ricoh would contend that any Pentax DSLRs were sold

without lenses and thus fall outside the scope of the PLA.  In its Interrogatory No. 8, for instance,

Kodak asked Ricoh to fully explain any contention that DSLRs are not covered by the PLA.

(Ex. 4 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [Mar. 25, 2013 Kodak's

Third Set of Interrogatories] at Int. No. 8) ("State the complete basis for your contention that

digital Single Lens Reflex Cameras sold by Pentax do not fall within the definition of 'Digital

---

[2]      Ricoh's assertion that the kit documents should be excluded because Kodak "is not bringing [to trial] anyone with first-hand knowledge" of the documents is also flawed.  Mr. Thomas explained that he researched "kits" and does have firsthand knowledge of the documents.  Moreover, it is well established that a third party statement may be used by an expert and on cross examination even if the declarant is not at trial.  *See Reardon v. Manson*, 806 F.2d 39, 42 (2d Cir. 1986) (holding that reliance by experts on information provided by others does not violate Sixth Amendment rights if expert is available for cross examination); *Howard*, 406 F.3d at 127 (reliance on hearsay "does not, as a rule, violate a defendant's Confrontation Clause rights. … An expert may be permitted to rely on such information without interfering with a defendant's Sixth Amendment rights.  A defendant's rights under the Confrontation Clause are protected where the expert is available for questioning concerning the nature and reasonableness of his reliance.").

Cameras' used in Paragraph 1.2 of the PLA").)  In responding to these and other similar

requests, Ricoh never provided any argument or evidence that Pentax's DSLR kits are sold

without lenses.  (*See* Ex. 6 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [Apr.

25, 2013 Ricoh's Resp. to Third Set of Interrogatories] at No. 8.)  Indeed, Ricoh's corporate

witness on DSLR sales testified that Ricoh had no information indicating that "kits" should be

treated differently than other DSLRs:

> "Q…And with respect to all the 25 digital cameras listed on Exhibit 62, you don't know the differences between what is included, for example, in a kit or a lens kit?
>
> A. ***I do not know the differences***.

(Ex. 8 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [Ushida Dep.] at 68:24-69:5

(emphasis added).)  It was not until Ricoh served its rebuttal damages expert report on July 8,

2013—more than ***7 weeks after Mr. Thomas submitted his opening report***—that Ricoh argued

for the first time that "kits" do not include lenses.

 Ricoh cannot preclude Mr. Thomas from addressing an argument that Ricoh failed to

raise until after Mr. Thomas submitted his opening report.  *See Stored Value Solutions, Inc. v.

Card Activation Technologies, Inc*., 2010 WL 3834457, at *2 (D. Del. Sept. 27, 2010) ("the

specifics of one expert's response to another expert's critique of the first expert's initial report

cannot be anticipated with precision prior to receipt of the second expert's critiquing report").

To the contrary, it is well-established that an expert may respond to new arguments raised by an

opposing expert for the first time in a rebuttal report.  *See Ultratech, Inc. v. Tamarack Scientific

Co.*, 2005 WL 856408, at *3 (N.D. Cal. Apr. 14, 2005) ("This Court finds that Tamarack shows

good cause for submitting its rebuttal report of Dr. Horn later than the date provided by the

Scheduling Order in this case.  The good cause is Ultratech's belated introduction of its new

construction of the claim terms "learning" and "storing." Accordingly, Ultratech's motion to strike the Horn report and its requests for sanctions are denied.").

Ricoh's motion fails for an additional reason. The documents that Mr. Thomas cites in his supplement and that Ricoh contends should have been disclosed earlier *are Ricoh's own documents* (such as Ricoh product press releases) that Kodak asked for more than a year ago but that Ricoh never produced. (Ex. 13 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [KOD-RIC081778] ("each new color kit will ship with an 18-55mm lens").) On August 29, 2012, Kodak submitted document requests expressly seeking documents relating to Pentax's DSLRs. (Ex. 2, [Aug, 29, 2012 Kodak's First Set of Requests for Prod.] at RFP No. 14 (requesting "documents sufficient to show how each lens and/or other accessory is integrated into the digital camera" for each Pentax DSLR), RFP No. 13 (requesting "documents sufficient to show the structure, function, operation, and technical features of digital cameras, including Single Lens Reflex Cameras, that Pentax has sold since May 1, 2002").) Ricoh failed to produce a single document relating to DSLR kits—including any of the documents Mr. Thomas cites in his supplement. In fact, as late as August 8, 2013, Ricoh's damages expert conceded that he could not identify any documents to support Ricoh's kit argument. (Ex. 10 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [Becker Dep.] at 347:11-17 ("Q. So then as you sit here right now, sir, you can't identify documents that indicate that every single Pentax DSLR sold with just the word "kit" in the product name are sold without a lens, can you? A. No, I cannot identify documents. Correct.").)

After Ricoh's damages expert argued in his report that kits do not include lenses, Kodak conducted its own search for Ricoh documents describing kits. The documents that Mr. Thomas cites in his supplement are the results of that search. The documents are directly responsive to

Kodak's document requests and include Ricoh's own documents.   For example, Mr. Thomas cites:

- A Ricoh press release dated November 23, 2011 stating that the K-R DSLR "kit" "will ship with an 18-55 mm lens."  (Ex. 13 to Kodak's Oct. 7, 2013 Mem. of Law in Support of its MILs [KOD-RIC081778]);

- A Ricoh press release from April 23, 2010 stating that the K-X DSLR "comes in a kit with an 18-55mm lens. . . ." (Ex. 3,  [KOD-RIC081781]);

- Pictures of the 645D DSLR "kit" sold with a lens from the "Pentax Webstore" – the website that Pentax uses to sell DSLRs.  (Ex. 4, [KOD-RIC081754]; *see also* Ex. 5, [KOD-RIC0081788-89] (K-5 DSLR "available exclusively through the PENTAX Web Store…")).

Kodak disclosed the documents—which were within Ricoh's own control—in Mr. Thomas's supplemental report as soon as it located them.  Ricoh should not be permitted to now benefit from its own failure to comply with its discovery obligations by precluding Kodak from relying on documents that Ricoh should have produced months earlier.  *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 08 CIV. 7508 SAS, 2013 WL 1155420, at *9, n. 91 (S.D.N.Y. Mar. 20, 2013) (permitting plaintiff to admit documents produced after the discovery deadline so long as plaintiffs could establish that documents "should have been produced" by defendant and "were directly responsive to document requests in this case and are relevant"; "defendants should not benefit from their failure to produce relevant documents that were within the scope of plaintiffs' document requests").

Ricoh did not produce a shred of evidence during discovery suggesting that kits do not include lenses.  Instead, its own expert conceded that he could not dispute that kits include lenses.  Now, at the same time that it is attempting to improperly introduce brand new arguments to distract the jury from these concessions (*see* Kodak's Motion in Limine No. II), Ricoh is trying to prevent Mr. Thomas from relying on evidence that definitively proves that kits include lenses and that Ricoh should have produced months ago.  It should not be permitted to do so.

16

Ricoh's motion in limine to exclude Mr. Thomas's Second Supplemental Report should therefore be denied.[3]

## X.   Opposition to Ricoh's Motion in Limine "D":  Preclude "Testimony by John Valenza …to the Extent it Exceeds the Scope of the 30(b)(6) Topics on Which He Was Designated"

As Kodak explained to Ricoh, Kodak intends to call John Valenza to testify regarding the fact that none of the licensed OEM suppliers has paid the royalties due on the Digital Camera sales for which Kodak is seeking damages.  Beyond this topic—which was the specific subject of Mr. Valenza's deposition—Kodak intends only to ask Mr. Valenza to testify with respect to Ricoh and Pentax's failure to pay royalties on those same sales (which is undisputed), as well as basic background information, including his own background and possibly some basic background on Kodak.  There is no basis to preclude Mr. Valenza's testimony on such information.  Ricoh questioned Mr. Valenza on his background at his deposition. (Ex. 6, [Valenza Dep.] at 7:17-8:6).  Ricoh has questioned multiple Kodak witnesses—and could have questioned Mr. Valenza as well—on Kodak's background.  (*See, e.g.,* Ex. 7, [Shih Dep.] at 59:24-60:7 (Kodak invented the digital camera); *id*. at 84:24-85:6 (testifying regarding Kodak background).)   And Kodak has repeatedly disclosed this basic background information to Ricoh since the beginning of the case.  (Dkt. 1 [Complaint] at ¶¶ 2-3 (discussing Kodak's history and background); Dkt. 68 [Kodak Summary Judgment Brief] at 4 (same)); *see also* Kodak's Opps. To Ricoh MILs 5.A and 6.A, *supra*.

Kodak therefore respectfully requests that Ricoh's motion to preclude Mr. Valenza from testifying beyond the scope of his Rule 30(b)(6) deposition be denied.

---

[3]      In his second supplemental report, Mr. Thomas also provided updated damages calculations unrelated to kits.  Ricoh does not move in its Motion in Limine to exclude these calculations or anything in Mr. Thomas's supplement other than the kit documents.

Dated: October 14, 2013

Respectfully submitted,

*/s/ Robert J. Gunther, Jr.*

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212)230-8888

Michael J. Summersgill
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02105
Tel: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Eastman Kodak Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>     Plaintiff,<br><br>   v.<br><br>RICOH COMPANY, LTD.<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:12-cv-03109 (DLC)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of October, 2013, I caused Plaintiff Eastman Kodak Company's Opposition to Ricoh's Motions in Limine to be served on all attorneys of record through the Court's ECF system.

By: _/s/ Robert J. Gunther, Jr._

19