## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

EASTMAN KODAK COMPANY,

       Plaintiff,

v.

       Civil Action No. 12-CV-3109

RICOH COMPANY, LTD.,

       Defendants.

## RICOH'S OPPOSITION TO KODAK'S PRETRIAL MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    KODAK'S REQUEST FOR A FINDING THAT CAMERAS SOLD TO PENTAX BY LICENSED OEMS MUST BE INCLUDED IN THE ROYALTY BASE IN THIS CASE SHOULD BE DENIED.................................................1

A.    Patent Exhaustion Applies in This Case ...............................................2

1.    Patent Exhaustion Is an Available Defense to Kodak's Breach of Contract Claim ............................................................................2

(a)    *MPEG* Makes Clear That Patent Exhaustion Is an Available Defense Here..................................................................2

(b)    Kodak Has Not Cited a Single Case Finding that Patent Exhaustion *Cannot* Be a Defense to a Breach of Contract Claim.................................................................4

(c)    This Court Has Not Yet Decided Whether Patent Exhaustion May Be a Defense to a Breach of Contract Claim.................................................................6

2.    Whether OEMs Paid Royalties To Kodak Is Irrelevant to the Patent Exhaustion Defense ................................................8

B.    Kodak Has Not Shown That It Is Entitled to a Pretrial Finding that OEMs Have Not Paid Royalties to Kodak ...................................................9

II.   AS THIS COURT HAS ALREADY RULED, KODAK HAS NOT CARRIED ITS BURDEN TO SHOW THAT PENTAX DSLR CAMERA BODIES SOLD WITH DETACHED, INTERCHANGEABLE LENSES ARE "SELF-CONTAINED" AS A MATTER OF LAW...................................................11

1.    "Self-Contained" Under the PLA Has Not Been Reduced to a Question of Whether DSLR Bodies are Sold in the Same Box as DSLR Lenses ............................................................11

2.    Even Under an "Ordinary" Definition, Pentax DSLR Cameras Packaged with a Detached, Interchangeable Lens Are Not "Self-Contained" ................................................12

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582,*
    305 F.3d 82 (2d Cir. 2002)....................................................................................................15

*Discovision Associates v. Toshiba Corp.,*
    No. 08v3693 (HB), 2009 WL 1373915 (S.D.N.Y. May 18, 2009) ........................................6

*ExcelStor Technology Inc. v. Papst Licensing GMBH,*
    541 F.3d 1373 (Fed. Cir. 2008).........................................................................................5, 6

*MPEG LA, LLC v. Audiovox Electronics Corp.,*
    933 N.Y.S.2d 815 (2011) .......................................................................................2, 3, 4, 5, 6, 7

*Quanta Computer, Inc. v. LG Electronics,*
    553 U.S. 617 (2008)......................................................................................................5, 7, 8, 9

*Tessera, Inc. v. Int'l Trade Comm'n,*
    646 F.3d 1357 (Fed. Cir. 2011)......................................................................................3, 8, 9

In its Memorandum of Law ("MOL"), Kodak requests that this Court make two pretrial findings as a matter of law.  Neither of Kodak's requests should be granted.

## I.   KODAK'S REQUEST FOR A FINDING THAT CAMERAS SOLD TO PENTAX BY LICENSED OEMS MUST BE INCLUDED IN THE ROYALTY BASE IN THIS CASE SHOULD BE DENIED

In its MOL, Kodak requests the Court to find that (i) there is no disputed issue of fact regarding whether OEMs paid royalties to Kodak on certain cameras sold to Pentax and (ii) therefore, as a matter of law, such cameras cannot be excluded from the royalty base in this case.  (MOL at 1-2, 4-9.)  Kodak's request should be denied on multiple grounds.

First, Kodak is wrong on the law.  Contrary to Kodak's assertions, patent exhaustion may be a defense to a breach of contract claim, and that defense is available to Ricoh here.  Moreover, whether patent exhaustion has been established is **_not_** contingent on whether Kodak received royalties from OEMs that sold cameras to Pentax; it is contingent on whether those OEMs made the first "authorized sale" of those cameras.  Kodak does not dispute that the OEMs made the first "authorized sale" of cameras sold to Pentax.  Therefore, as a matter of law, cameras sold to Pentax by licensed OEMs must be **_excluded_** from the royalty base in this case (*i.e.*, the opposite of what Kodak requests in its MOL).

Second, even if Kodak were right on the law (which it is not), Kodak still would not be entitled to its requested relief.  Under Kodak's version of the law, before cameras that OEMs sold to Pentax can be excluded from the royalty base in this case, there must be a finding that Kodak did not already receive royalty payments on those cameras from the OEMs.  (MOL at 1, 6.)  But whether Kodak received royalty payments from OEMs on cameras sold to Pentax is a disputed issue of fact—indeed, the evidence suggests that Kodak has now resolved its claims for royalties on OEM sales to Pentax through Kodak's litigations **_against the relevant OEMs_**.  And

regardless, Kodak's admitted and continued failure to produce evidence relevant to this issue makes any finding of facts on this issue premature.

For all of these reasons, Kodak's arguments regarding cameras sold to Pentax by OEMs should be rejected.  Instead, for the reasons below and for the reasons stated in Ricoh's *Daubert* Motion (Dkt. 143), this Court should find that cameras sold to Pentax by OEMs must—as a matter of law—be excluded from the royalty base in this case.

### A.    Patent Exhaustion Applies in This Case

Kodak contends that the defense of patent exhaustion cannot apply with respect to digital cameras that Pentax purchased from OEMs "for two reasons."  (MOL at 5.)  First, Kodak summarily asserts that "it is well-established that patent exhaustion is not an available defense to a breach of contract claim."  (*Id.*)  That assertion is demonstrably false.  Second, Kodak argues that patent exhaustion should only apply if the OEMS "actually paid royalties to Kodak on the Digital Cameras that they sold to Pentax."  (MOL at 5-6.)  That assertion has been squarely rejected by the Federal Circuit.

### 1.    Patent Exhaustion Is an Available Defense to Kodak's Breach of Contract Claim

Kodak states that "it is well-established that patent exhaustion is not an available defense to a breach of contract claim."  (MOL at 5.)  But Kodak does not cite a single case that actually supports that proposition.  And Kodak simply ignores precedent that is directly to the contrary.

### (a)    *MPEG* Makes Clear That Patent Exhaustion Is an Available Defense Here

In its MOL, Kodak simply ignores *MPEG LA, LLC v. Audiovox Electronics Corp.*, 933 N.Y.S.2d 815 (2011), which found that patent exhaustion ***can*** be a defense to a breach of contract claim.  *Id.* at 822 (answering "in the affirmative" the question of "whether patent exhaustion can ever be a defense to a contract").  Indeed, in *MPEG*, the court found that patent

exhaustion is an available defense to a breach of contract claim if the contract at issue involves the "payment of royalties" by a licensee "in exchange for the ability to engage in commerce without infringing on the patent rights" of the patent holder. *Id.* at 822-23 (answering "in the affirmative" the question of "whether [patent exhaustion] would qualify as a defense in the case at bar").

*MPEG*'s analysis of these questions of law is principled and grounded in relevant precedent. *Id.* at 804, 806-07, 809-13, 815-19 (reviewing cases and analyzing at considerable length "the interplay between New York's contract law and federal doctrines governing the general field of patent law"). As the court in *MPEG* correctly explained, the patent exhaustion "doctrine is designed to prohibit patent holders from invoking patent law to control post-sale use of the patented item." *Id.* at 816, 822 (summarizing Supreme Court and Federal Circuit authority); *see also Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) (describing "the fundamental purpose of patent exhaustion" as "prohibit[ing] postsale restrictions on the use of a patented article"). Thus, where a contract is used by a patent holder to "reach[] out to control" patented articles after an initial "authorized sale," patent exhaustion must be available as a defense to a claim that the contract has been breached. *MPEG*, 933 N.Y.S. 2d at 822.

The court in *MPEG* thus looked to the specific "terms and consideration" described in the contract at issue to determine whether this fundamental rationale for the application of the doctrine of patent exhaustion was called into play. *Id.* at 822-23. The court found that the defendant's payment of royalties was an obligation incurred in return for a license to the plaintiff's patents—*i.e.*, the patent holder's contractual right to royalties was a direct result of the patent holder's patent rights. *Id.* Accordingly, the court concluded that patent exhaustion must

3

operate as a defense to a claim that the contract was breached in order to prevent the patent holder from using the contract to extend its rights beyond an initial authorized sale of a patented product. *Id.* at 822.

As in *MPEG*, the agreement that is the subject of the breach of contract claim in this case is the Kodak-Ricoh Patent License Agreement ("PLA"). The purpose for executing the contract at issue was to grant Ricoh a license under Kodak's digital camera patents so that Ricoh (and certain businesses acquired by Ricoh) could sell digital cameras without liability for infringement. (Ex. A, at 1.) And Article III of the PLA makes clear that Ricoh's agreement to pay royalties is in return for a license to make and sell products under Kodak's patents. (*Id.* at 6.) Thus, as in *MPEG*, the patent license agreement at issue here is a contract that reflects the exercise of a patent holder's patent rights. And so, as in *MPEG*, patent exhaustion must be available as a defense to Kodak's claim that the PLA was breached.[1] *MPEG*, 933 N.Y.S.2d at 822.

> (b)     <u>Kodak Has Not Cited a Single Case Finding that Patent Exhaustion *Cannot* Be a Defense to a Breach of Contract Claim</u>

---

[1] That the PLA provides for royalties "regardless of the manufacturer or assembler" of the digital camera (MOL at 4) does not alter this conclusion. In *MPEG*, the licensee agreed to pay a royalty on "***each***" product without qualification—*i.e.*, "no matter who manufactured" (*id.*) or assembled or sold the product previously. *MPEG*, 933 N.Y.S.2d at 822. But that did not prevent the *MPEG* court from finding that patent exhaustion was available as a defense to the extent the licensee could establish a prior authorized sale of the same product. *Id.* Indeed, Kodak's argument—that the PLA requires a royalty payment "as a matter of straightforward contract interpretation" and thus patent exhaustion cannot "excuse" compliance (MOL at 4)—is entirely circular. If there were no provision requiring payment of royalties and no breach of that provision, there would be no cause of action and no need to consider a patent exhaustion defense. But, as already demonstrated, a patent exhaustion defense has been found to be viable whenever a patent holder would otherwise extend its patent rights beyond an initial authorized sale. Such is the case here.

Although Kodak asserts that "[c]ourts have repeatedly held . . . that patent exhaustion is not an available defense to a breach of contract claim" (MOL at 1), Kodak does not cite a single case with such a holding.  Indeed, none of the three cases cited by Kodak (without analysis) stands for the proposition that "it is well-established that patent exhaustion is not an available defense to a breach of contract claim" (*id.* at 5).

For example, Kodak cites the Supreme Court's decision in *Quanta Computer, Inc. v. LG Electronics*, 553 U.S. 617, 637 n.7 (2008).  But the footnote cited indicates that the Supreme Court explicitly ***left open*** the question of whether patent exhaustion is an available defense to a breach of contract claim.  *Id.*  That is, contrary to Kodak's assertion, the Supreme Court purposefully did ***not*** "establish" anything about whether or under what circumstances patent exhaustion may be a defense to a contract claim.  *Id.*; *see also MPEG*, 933 N.Y.S.2d at 822 (noting that "*Quanta*, in the kind of footnote that appellate courts love and constitute the bain of the trial court's existence, declines to opine on whether the defense of patent exhaustion can be used in a lawsuit . . . for breach of the parties' contract").

Kodak also cites *ExcelStor Technology Inc. v. Papst Licensing GMBH*, 541 F.3d 1373, 1377 (Fed. Cir. 2008), which addressed a jurisdictional issue.  But in that case, the Federal Circuit simply noted two unremarkable characteristics of the patent exhaustion doctrine that apply regardless whether the doctrine is asserted as a defense to an infringement action or as a defense to a breach of contract action.  First, patent exhaustion is not an independent "cause of action"—it is only a defense.  *Id.* at 1376.  And second, "[p]atent exhaustion prohibits patentees from enforcing patent rights ***in certain circumstances***, but it does not ***forbid*** multiple licenses on a single product or even multiple royalties").  *Id.* at 1377 (emphasis added).  In other words, whether there are multiple licenses or multiple royalties ***is not necessarily*** determinative of

whether patent exhaustion prohibits patentees from enforcing their rights—it depends on the circumstances.  Indeed, it is *ExcelStor* that reiterated the guiding principle used to determine the circumstances in which patent exhaustion *is* available as a defense—namely, circumstances in which the patent holder has "invoked the patent laws to control the post-sale use of the [patented product]" (whether by contract or by bringing an infringement suit).  *Id.* at 1376.  The *MPEG* court's finding that patent exhaustion can be a defense to a breach of contract action is directly tied to this very principle.

Finally, Kodak cites *Discovision Associates v. Toshiba Corp.*, No. 08v3693 (HB), 2009 WL 1373915, at *9 (S.D.N.Y. May 18, 2009) (unpublished).  But as Kodak acknowledges in its brief parenthetical (MOL at 5), in that case, the court found only that "exhaustion of patent rights through a sale is *not necessarily determinative* of who bears contractual liability for royalties as a result of that sale."  *Id.* at *9 (emphasis added).  And the specific circumstances of that case precluded a finding of summary judgment one way or the other, because factual issues remained regarding which of two licensees was the first to exercise its rights under the plaintiff's patents. *Id.*

Thus, none of the three cases cited by Kodak supports Kodak's assertion that patent exhaustion can never be a defense to a breach of contract claim.

(c)      This Court Has Not Yet Decided Whether Patent Exhaustion May Be a Defense to a Breach of Contract Claim

Finally, Kodak asserts that "in its summary judgment decision, the Court specifically recognized that patent exhaustion does not limit breach of contract damages."  (MOL at 5.)  On this point, Kodak again overreaches.

In its order on summary judgment, this Court addressed Ricoh's argument that Kodak's concession that it was not entitled to a double royalty should be considered as evidence relevant

to the interpretation of Section 4.4 of the Patent License Agreement.  Dkt. 105, at 32.  As the Court described it, Ricoh had argued that Section 4.4 should be interpreted to require Kodak to prove that it could have succeeded in a suit for patent infringement against an acquired business before it was permitted to collect royalties on sales made by the acquired business.  *Id.* The Court rejected Ricoh's argument, stating that Kodak's concession regarding double royalties "will not be construed as an admission that its burden to show a breach of the PLA requires it show as well that it could prevail in any patent infringement action against Pentax or any other company acquired by Ricoh."  *Id.*

Thus, issues related to patent exhaustion were considered in the narrow context of whether Kodak's admissions on those issues could be used in connection with contract interpretation.  The summary judgment order does *not* decide whether patent exhaustion could ever be used as a defense to a breach of contract claim or whether patent exhaustion is available as a defense in this case.  (*See generally id.* at 33-34.)

Indeed, the language that Kodak quotes from the summary judgment order (MOL at 5) makes this clear.  The Court notes that "[t]he patent exhaustion doctrine, however, does *not necessarily* limit a patentee's other contract rights"—leaving the general question of whether the doctrine applies to breach of contract claims open, just as the Supreme Court did in *Quanta*.  And then the Court states that, as a general matter, "a conclusion that a patentee would not be entitled to patent damages as a result of patent exhaustion *does not amount to a determination* that contract damages are likewise unavailable."  This is undoubtedly the case and entirely consistent with *MPEG*:  in a breach of contract case (i) the terms of the contract at issue must be analyzed to determine if patent exhaustion should be available as a defense in light of the doctrine's underlying purpose *and* (ii) patent exhaustion itself must be established; the

latter alone is not sufficient.  But the order on summary judgment did not reach the merits of either of those questions.

2.    <u>Whether OEMs Paid Royalties To Kodak Is Irrelevant to the Patent Exhaustion Defense</u>

The second reason that Kodak says the doctrine of patent exhaustion cannot apply here is because the OEMS have not "***actually paid royalties***" to Kodak on the cameras they sold to Pentax.  (MOL at 5-6 (emphasis in original).)  This line of argument has been squarely rejected by the Federal Circuit in *Tessera, Inc. v. International Trade Commission*, 646 F.3d 1357 (Fed. Cir. 2011), a case which Kodak nowhere addresses in its MOL, though Ricoh has repeatedly brought it to Kodak's attention (*e.g.*, Dkt. No. 51, at 4:23-5:02, 8:02-21).

In *Quanta*, the Supreme Court held that patent exhaustion is triggered by the first sale of a patented product that is authorized by the patent holder.  553 U.S. at 625 ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item.").  And in *Tessera*, the Federal Circuit  made it clear that the failure of a licensee to pay royalties on that first authorized sale is irrelevant to the application of the patent exhaustion doctrine.  646 F.3d at 1369-70.

Indeed, in *Tessera*, the Federal Circuit explicitly held that whether a licensee "renege[s] or fall[s] behind on [its] royalty payments does ***not*** convert a once authorized sale into a non-authorized sale." *Id.* at 1370 (emphasis added).  The Federal Circuit found that a contrary conclusion (which Kodak argues for here) would be an "absurd result" that would be "wholly inconsistent with the fundamental purpose of patent exhaustion—to prohibit postsale restrictions on the use of a patented article." *Id.*

Thus, whether the OEMs have "actually paid royalties" to Kodak is entirely irrelevant to this case.  The critical fact is that pursuant to their respective patent license agreements with

8

Kodak, the OEMs made the first authorized sale of digital cameras later resold by Pentax. Pentax. *Quanta*, 553 U.S. at 625; *Tessera*, 646 F.3d at 1369, 1370. And Kodak concedes that this critical fact is undisputed. (*E.g.*, MOL at 4 ("[Pentax] purchased some of its point-and-shoot shoot Digital Cameras from three OEMs that had a license with Kodak . . .").)

Accordingly, it should be found—as a matter of law—that cameras sold by licensed OEMs to Pentax must be ***excluded*** from the royalty base in this case. Because not only is patent exhaustion a defense to the breach of contract claim here, but the critical fact necessary to establish exhaustion (that licensed OEMs made the first authorized sale of the digital cameras later resold by Pentax) is undisputed.

### B.    Kodak Has Not Shown That It Is Entitled to a Pretrial Finding that OEMs Have Not Paid Royalties to Kodak

Even under Kodak's version of the law (which is erroneous), Kodak would not be entitled to the relief it seeks in its MOL. Kodak contends that the law requires that cameras sold to Pentax by a licensed OEM must be included in the royalty base so long as no royalty has already been paid by the OEM. (MOL at 1, 5.) Kodak then argues that "it is undisputed that there is no evidence that royalties were paid on any of the digital cameras for which Kodak is seeking damages." (*Id.* at 6.) But that is not the case.

To the contrary, the evidence suggests that Kodak has received or will soon receive royalties from both Asia Optical and Altek. Before initiating this case, Kodak brought a lawsuit seeking "royalties on ***all*** of [Asia Optical's] sales of digital cameras as an OEM." (Ex. B, at 10 (emphasis added).) Such royalties would necessarily include royalties on cameras that Asia Optical sold to Pentax. And Kodak's claim for such royalties appears to have already been resolved by a judgment in favor of Kodak in July 2012. (Ex. C.)

Likewise, before initiating this case, Kodak brought a lawsuit seeking "royalties on **all** of [Altek's] sales of digital cameras as an OEM." (Ex. D, at 11 (emphasis added).) Again, such royalties would necessarily include royalties on cameras that Altek sold to Pentax. Such royalties would also include royalties on cameras that Altek sold to Sanyo and that Sanyo later sold to Pentax; indeed, in its litigation with Altek, Kodak explicitly sought royalties on all of Altek's "sales to Sanyo." (*Id.*) And Kodak's claim for all of these royalties appear to have been resolved pursuant to a pending settlement. (Ex. I.)

This evidence demonstrates that Kodak has **already** resolved any issues related to unpaid royalties for cameras sold to Pentax by licensed OEMs through its claims against those OEMS. What is more, evidence regarding Kodak's claims for royalties from the relevant OEMs was **not** produced by Kodak in this case, even though Ricoh explicitly requested such evidence. (Ex. E.)[2] Kodak has still not confirmed that it will produce this evidence prior to trial. (Ex. F.) Kodak should not be permitted to contend that an issue is "undisputed" or that there is "no evidence" on an issue (MOL at 6), when it is **Kodak** that is in possession of the relevant evidence and it is **Kodak** that withheld the relevant evidence during discovery.

Especially in this context, Kodak's assertion that "Ricoh's 30(b)(6) witness could not identify a single Digital Camera that AO or Altek sold to Pentax for which it paid royalties to

---

[2]  Ricoh's Request for Production No. 43 calls for "[a]ll documents and things concerning any royalties, sums of money, or other consideration paid to or received by Kodak based on the sales of Digital Cameras, or components thereof, by Pentax's OEM manufacturers and their affiliates (Including Sanyo Electric Co., Ltd.; Asia Optical Co., Inc.; Altek Corporation; Premier Image Technology Corp.; and BenQ Corporation), Including any related accounting documents, documents concerning royalty audits and/or sales audits, royalty reports, and/or audit reports." (Ex. E, at 14.)  Ricoh's Request for Production No. 59 calls for "[a]ll documents and things concerning any of Kodak's claims or factual allegations in the Complaint, Including all documents and things used, reviewed, and/or relied upon in the preparation of the Complaint." (Id. at 18.)

Kodak" (MOL at 7) is particularly farcical.  Except through discovery in this case (which was requested by Ricoh but withheld by Kodak), it would be difficult for *Ricoh* (or its experts) to know what payments *third-party OEMs* made to *Kodak*.  Regardless, evidence has now come to light that royalties that Kodak claims are owed by the relevant OEMs are in the process of being satisfied through litigation *with the OEMs*.

At a minimum, therefore, there is a question of fact regarding the payment of royalties to Kodak by the relevant OEMs.  Accordingly, even if this issue were relevant to the defense of patent exhaustion (which it is not), Kodak's request that facts regarding this issue be determined pretrial should be denied.

## II.    AS THIS COURT HAS ALREADY RULED, KODAK HAS NOT CARRIED ITS BURDEN TO SHOW THAT PENTAX DSLR CAMERA BODIES SOLD WITH DETACHED, INTERCHANGEABLE LENSES ARE "SELF-CONTAINED" AS A MATTER OF LAW

Kodak attempts to re-argue the question of whether or not Pentax DSLR cameras are "self-contained"—an issue on which the Court expressly denied summary judgment.  Kodak fails to cite a single additional fact or legal authority in support of its position that this issue should be taken from the jury.  Accordingly, the Court should decline to adopt Kodak's unsupported conclusion that Pentax DSLR camera bodies sold with detached, interchangeable lenses are "self-contained" and instead permit the jury to decide this disputed factual issue.

1.    "Self-Contained" Under the PLA Has Not Been Reduced to a Question of Whether DSLR Bodies are Sold in the Same Box as DSLR Lenses

First, Kodak misreads the Court's summary judgment order to define "self-contained" under the PLA as a matter of law.  Contrary to Kodak's contentions, the Court considered the PLA's use of "self-contained" and "decline[d] to determine whether DSLR cameras are 'self-contained' within the meaning of the PLA."  (Dkt. No. 105, at 38)  That the Court found it "*impossible to resolve this dispute* without evidence of how DSLR camera bodies and lenses are

sold and, in particular, whether they are ever sold in the same box" or that the Court found that "the evidence cited by the parties in support of their respective positions does not provide clarity about what it means for a DSLR camera to be sold 'in a kit'" merely highlights flaws in Kodak's arguments on summary judgment after laying out the parties' respective positions.  (Dkt. No. 105, at 38) (emphasis added).  Respectfully, absent an express ruling by the Court for Kodak, the the Court's summary judgment order did not determine that Kodak's position, namely that two independent components that are capable of being attached to one another are collectively self-contained, is correct as a matter of law.  Had the Court intended to assign a controlling definition definition to the term "self-contained" under the PLA, which is one of the "main points of contention" between the parties (*id.* at 36), it would have explicitly said so.  Rather, the Court's order recognized the inappropriateness of resolution on summary judgment and deferred the matter for the jury.  It is Kodak that seeks to reargue issues, presenting nothing more than regurgitations of its already rejected arguments on summary judgment.

> 2. Even Under an "Ordinary" Definition, Pentax DSLR Cameras Packaged with a Detached, Interchangeable Lens Are Not "Self-Contained"

Regardless, even assuming the Court intended to define "self-contained" as used in the PLA to mean "complete in itself" or "complete, or having all that is needed, in itself," Pentax DSLR cameras, even when sold with a detached, interchangeable lens, are not "self-contained." Kodak represents that it is "undisputed that Pentax DSLRs sold with a lens meet this definition" and that Ricoh's corporate witness, Kiyoshi Kawano, conceded this issue.  Ricoh's witnesses made no such concession.

Mr. Kawano's testimony stands for the uncontroversial position that connecting an interchangeable lens to a DSLR body permits a user to capture an image.  That a user may not have to add a third, fourth, or fifth component does not change the fact that two separate

components are required and that neither the DSLR camera body nor the lens is a "Digital Camera" under the PLA. Kodak's repeated attempts to insert the word "complete" into a witness' testimony are irrelevant to the ultimate question of whether or not Pentax DSLR camera bodies and interchangeable lenses are self-contained when used together and, consequently, are "Digital Cameras" under the PLA. "Complete" is simply not the magical word that Kodak would have it be, transforming separate products into a single self-contained device.

Kodak would have the Court and the jury conveniently skip past a critical stop in Kodak's burden: proving that DSLR camera bodies with interchangeable lenses attached are self-contained. Kodak's entire argument in this respect rests on a conflation of "attached," "connected," and "sold together," and an assumption that the product at issue is a DSLR camera body with an interchangeable lens attached. For example, Kodak argues that "Ricoh's corporate designee has conceded [that] when the DSLR camera body and lens are *connected to each other*, the camera is a complete picture taking device." (MOL at 10 (emphasis added).) Like Kodak's argument, this testimony starts from the posture that the DSLR already has a lens *attached*. None of the cited testimony refers to the way in which DSLR camera bodies are packaged or sold. Nor does it describe the camera body and lens as a single unit.

Importantly, Kodak does not argue that Pentax sold DSLR bodies with lenses attached, and Ricoh never conceded this fact. Quite the opposite: Ricoh is clear that *not a single Pentax DSLR camera body was ever sold with a lens attached*. (Dkt. No. 106, at 5 ("No Pentax DSLR system is sold with an interchangeable lens already attached to a DSLR camera body") (citation omitted).) It is for this reason that the Court did not decide the question of "*what it means* for a DSLR camera to be sold 'in a kit.'" (Dkt. No. 105 at 38-39.) Nor has Kodak shown any difference whatsoever between the DSLR camera bodies sold with lenses and those sold without.

13

Kodak's own expert, Kannan Ramchandran, opined only that DSLR camera bodies with lenses attached would meet Kodak's own definition of "self-contained" Digital Cameras under the PLA. (Ex. G, at 4 (". . .it is my opinion that all of the Pentax DSLR cameras sold between May 1, 2002 and April 30, 2012 also include—*when the lens is attached as intended*—the technical elements set forth in the 'Digital Camera' definition.") (emphasis added).) Nowhere in in his report did Dr. Ramchandran state that the way in which camera bodies are packaged has any effect on the nature of the product itself. Dr. Ramchandran's only reference to "kit" in his expert report notes that a lens is not attached to a camera body by Pentax, but instead by the user, even where the body and lens were bundled for purchase. (*Id.* at 22 ("I understand that Pentax frequently sold the K-x and other DSLR cameras as part of a kit that included a lens with the explicit intention that the *user would attach a lens to the camera body* before taking a photograph.") (emphasis added).) At his deposition, Dr. Ramchandran confirmed that his understanding of a "kit" is that the body and lens are separately packaged and not attached: "Q. And when you opened the K-x, am I correct that it came in a box, and within that box, the body was boxed individually and the lens was boxed individually? Correct? A. As I recall, it came in a kit, with the body and lens inside the kit in separate packages." (Ex. F 35:25-36:5; *see also id.* 36:10-37:10.) Dr. Ramchandran struggled to equate "sold together" with "attached" by suggesting that intended attachment somehow transforms the DSLR camera body and DSLR camera lens into a single "self-contained" device. (*Id.* at 94:22-95:2 ("when they're sold as a kit, kit, as one entity, then with a tacit knowledge that -- understanding that you plug -- *you – you* attach the lens to the camera, then it becomes exactly you know, what the consumer -- complete as a DSLR.") (emphasis added).) What Kodak's expert opines to be a "self-contained" DSLR camera is where a lens is *attached*. Again, Kodak does not argue that Pentax sold DSLR camera

camera bodies with lenses attached, and Ricoh never conceded this fact.  Kodak should not be permitted to re-argue its summary judgment motion before the Court at this late stage, especially where no new fact or legal authority supports its position .

Kodak's citation to testimony from Ricoh's expert, Edward Fasano, is similarly unavailing.  Like with Mr. Kawano, Mr. Fasano's testimony that a DSLR body **with the lens attached** can capture an image is neither surprising nor a concession.  Pentax's DSLR systems, like any others in the industry, are designed to capture still or motion pictures.  Nor is Mr. Fasano's shorthand definition for self-contained, quoted by Kodak, dispositive of this issue.  In the context of Mr. Fasano's testimony, it is quite clear that his view of self-contained requires a single device.  And throughout his expert report and deposition, Mr. Fasano is both adamant and consistent that a DSLR camera body and interchangeable lens are two separate components and therefore cannot be considered a "self-contained device" as expressly required by Section 1.2 of the PLA.

Finally, Kodak misconstrues the Court's summary judgment order in an improper attempt to limit the jury's role in interpreting the PLA.  Kodak first cites inapposite authority for the proposition that "proper interpretation of an unambiguous contract is a question of law for the court."  (MOL at 11 (citing *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d Cir. 2002)).)  But the Court made clear that the definition of "self-contained" contained" under the PLA is **not** unambiguous.  In *Adirondack*, the court merely held that use of the term "if" in an arbitration clause created an express condition in the contract.  *Adirondack*, 305 F.3d at 87-88.  The term "if" is plainly unambiguous.  Here, the Court expressly reserved judgment on interpretation of the PLA, as the term "self-contained" is subject to competing interpretations in the context of digital cameras.  (Dkt. No. 105 at 38-39 (further clarity is needed

15

needed on "*what it means* for a DSLR camera to be sold 'in a kit'") (emphasis added).)  Kodak

ignores this language in the Court's summary judgment order, instead citing only to the second

factual dispute—the question of which Pentax DSLR camera bodies were, indeed, sold in the

same box.  (MOL at 11.)

  For all of these reasons, Ricoh respectfully requests that the Court reject Ricoh's attempt

to re-argue its summary judgment motion on the issue of whether or not a DSLR camera body

sold with a detached, interchangeable lens is a "self-contained device" within the meaning of the

PLA.  The Court denied summary judgment on this issue, and Kodak has not come forward with

a single new fact or legal citation to support its position.  The jury, therefore, must be permitted

to decide the issue at trial.

DATED:  October 14, 2013.

By: _/s/ David Eiseman_

David Eiseman*
Philip C. Sternhell*
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Ave. NW, Suite 825
Washington, DC 20004
(202) 538-8178
davideiseman@quinnemanuel.com
philipsternhell@quinnemanuel.com

Ryan S. Goldstein*
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
ryangoldstein@quinnemanuel.com

Melissa J. Baily
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
melissabaily@quinnemanuel.com

*Admitted pro hac vice

Counsel for Defendant Ricoh Company, Ltd.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT, on the 14th day of October, 2013, I caused the above document to be served on all attorneys of record via electronic mail.


DATED:  October 14, 2013

/s/ *Philip C. Sternhell*

Philip C. Sternhell