UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| RICOH COMPANY, LTD., | ) <br> ) Case No. 12-CV-03109 (DLC) |
| Defendant. | ) <br> ) <br> ) <br> ) |

**PLAINTIFF EASTMAN KODAK COMPANY'S OPPOSITION TO RICOH'S DAUBERT MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF VINCENT A. THOMAS**

Robert J. Gunther, Jr.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212)230-8888

Michael J. Summersgill
Jordan L. Hirsch
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, Massachusetts 02105
Tel: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Eastman Kodak Company

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

    A.    Patent Exhaustion Is Not A Defense To Ricoh's Breach of The PLA............................ 2

    B.    Mr. Thomas's Conclusions Are Consistent With The Undisputed Evidence
          That Kodak Has Not Been Paid Royalties On The Digital Cameras For Which
          It Is Seeking Damages. ........................................................................................ 7

    C.    Mr. Thomas Is Qualified To Offer His Conclusions On Damages. .............................. 10

III.  CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Discovision Assoc. v. Toshiba Corp.,*
   2009 WL 1373915 (S.D.N.Y. May 18, 2009) .......................................................4

*ExcelStor Tech. Inc. v. Papst Licensing GMBH & Co. KG,*
   541 F.3d 1373 (Fed. Cir. 2008) ...........................................................................4

*First Fed. Sav. Bank (of Delaware) v. Nomura Sec. Int'l, Inc.,*
   1995 WL 217539 (S.D.N.Y. Apr. 12, 1995) .......................................................6

*Micro Chemical, Inc. v. Lextron, Inc.,*
   317 F.3d 1387 (Fed. Cir. 2003) ...........................................................................9

*Quanta Computer, Inc. v. LG Elecs., Inc.,*
   553 U.S. 617 (2008) .........................................................................................3, 4

*Tessera, Inc. v. Int'l Trade Comm'n,*
   646 F.3d 1357 (Fed. Cir. 2011) ........................................................................6, 7

*Travellers Int'l, A.G. v. Trans World Airlines,*
   41 F.3d 1570 (2d Cir. 1994) ................................................................................6

*Wechsler v. Hunt Health Sys., Ltd.,*
   381 F. Supp. 2d 135 (S.D.N.Y. 2003) ...............................................................10

**STATE CASES**

*Apfel v. Prudential-Bache Sec. Inc.,*
   81 N.Y.2d 470 (1993) ..........................................................................................5

*Holt v. Feigenbaum,*
   52 N.Y.2d 291 (1981) ..........................................................................................5

*MPEG LA, LLC v Audiovox Elecs. Corp.,*
   33 Misc. 3d 802 (N.Y. Sup. Ct. 2011) ..........................................................1, 4, 5

**RULES**

Fed. R. Civ. P. 8(c)(1) ...............................................................................................6

## I.    INTRODUCTION

Ricoh Company, Ltd.'s ("Ricoh's") attempt to exclude the testimony of Eastman Kodak Company's ("Kodak's") damages expert—Mr. Vincent Thomas—is entirely without merit.

***First***, Ricoh's assertion that Mr. Thomas's conclusions are inconsistent with the doctrine of patent exhaustion is based on a fundamental misstatement of the law.  Ricoh has not (and cannot) cite to a single case in which patent exhaustion was a successful defense to a claim for breach of contract damages.  Indeed, the only case that Ricoh cites on this issue—*MPEG LA, LLC v Audiovox Elecs. Corp.*—explicitly ***rejected*** patent exhaustion as a breach of contract defense:

> [T]he Court … denies [Defendant] partial Summary Judgment, as [Defendant] has not demonstrated as a matter of law that patent exhaustion is a defense to the license Agreement between the parties herein.

*MPEG LA, LLC v Audiovox Elecs. Corp.*, 33 Misc. 3d 802, 826 (N.Y. Sup. Ct. 2011).  Consistent with this, and despite Ricoh's claims to the contrary, the overwhelming authority—including decisions by the United States Supreme Court, the Federal Circuit, and courts in this District— have similarly and repeatedly rejected patent exhaustion as a defense to breach of contract.

***Second***, Ricoh's claim that Mr. Thomas's damages conclusions should be excluded because they are contrary to the evidence is wrong on the facts and the law.  As even Ricoh's corporate designee and damages expert concede, there is no evidence that Pentax's licensed OEM suppliers have paid royalties on any of the digital cameras for which Kodak is seeking royalties.  (Ex. 2 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Kishi Dep.] at 42:4-8 (no evidence that Altek paid royalties); *id*. at 66:23-67:3 (no evidence that Asia Optical paid royalties); Ex. 3 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Becker Supp. Report] at Appendix E2 (chart showing Ricoh's damages expert could not verify that Altek or AO paid

royalties).)  Mr. Thomas excluded from his damages analysis all OEM Digital Cameras for which there was evidence that a royalty had been paid.  Mr. Thomas's conclusions are thus entirely consistent with the undisputed evidence.  In any event, even if Ricoh had a legitimate dispute with Mr. Thomas on the facts—and it does not—that would not be a valid reason to exclude his testimony.

**Finally**, Ricoh's argument that Mr. Thomas should be precluded from testifying because he is not an expert in Japanese transfer pricing or Japanese tax treaties, including Advance Pricing Agreements ("APAs"), is also wrong.  Transfer prices and APAs are not relevant to the royalty calculation required under the PLA.  Mr. Thomas is a certified professional accountant and financial consultant with more than twenty five years of experience.  (Ex. 1, Thomas CV.) He is plainly qualified to calculate and provide his conclusions regarding the damages resulting from Ricoh's breach of the PLA.  He does not need prior specific expertise in Japanese transfer pricing or Japanese tax treaties to assess the damages in this case.  Neither transfer pricing nor APAs are even mentioned in the PLA, and Ricoh's assertion that they are relevant is directly contrary to the plain language of the PLA.  Indeed, even Ricoh's damages expert could not say that his own damages calculation is consistent with the terms of Ricoh's APAs.  (Ex. 10 to Gunther Decl. In Support of Kodak's Oct. 7, 2013 Motions In Limine [Becker Dep] at 214:18-215:2.)

Accordingly, Kodak respectfully requests that the Court deny Ricoh's motion to exclude the testimony of Mr. Thomas.

## II.   ARGUMENT

### A.   Patent Exhaustion Is Not A Defense To Ricoh's Breach of The PLA.

Pentax purchased some of its point-and-shoot Digital Cameras from three OEMs that had licenses with Kodak:  Asia Optical Co., Inc. (referred to as "AO"), Altek Corporation, and Sanyo

Electric Company, Ltd.  In calculating damages due to Kodak, Mr. Thomas excluded sales of

Pentax Digital Cameras for which there is evidence that the licensed OEM supplier already paid

a royalty to Kodak.  (Ex. A to Pechenik Decl. In Support of Ricoh's Oct. 8, 2013 Daubert

Motion [Thomas Report] at 26 (Kodak not seeking double royalties).)  Ricoh argues that Mr.

Thomas's conclusions should be excluded because his damages calculation is allegedly contrary

to the doctrine of patent exhaustion.  The parties agree that these are legal issues that can be

resolved by the Court.  (*See* Kodak's Oct. 7, 2013 Pretrial Memorandum of Law at 4-9

(addressing Ricoh's exhaustion arguments regarding damages on OEM cameras).)  Ricoh's

argument is wrong as a matter of law.

As an initial matter, Ricoh is using its *Daubert* motion to take a second pass at an

argument that the Court has already addressed and rejected.  During the liability phase of the

case, Ricoh argued that it could not be liable for breach of contract because Kodak's patent rights

as to Pentax were allegedly exhausted.  (Dkt. 106 [Ricoh Summ. J. Br.] at 6-7 ("Kodak would be

barred from recovering royalties on such products from Pentax as a result of patent exhaustion . .

. and thus Kodak is barred from recovering royalties on those products from Ricoh under

paragraph 4.4 of the PLA.") (citation omitted).)  The Court specifically rejected this argument in

its summary judgment opinion:

> The patent exhaustion doctrine, however, does "not necessarily
> limit" a patentee's "other contract rights," and a conclusion that a
> patentee would not be entitled to "patent damages" as a result of
> patent exhaustion does not amount to a determination that contract
> damages are likewise unavailable.

(Dkt. 105 [Summ. J. Op.] at 33 (citing *Quanta Computer, Inc. v. LG Elecs., Inc.,* 553 U.S. 617,

637 n.7 (2008).)

Consistent with this conclusion, and as set forth in Kodak's Pretrial Memorandum of

Law, the United States Supreme Court, the Federal Circuit, and courts in this District have all

consistently held that patent exhaustion is ***not*** a defense to breach of contract and does not prohibit a party from entering multiple licenses covering the same products.  *See ExcelStor Tech. Inc. v. Papst Licensing GMBH & Co. KG,* 541 F.3d 1373,1377 (Fed. Cir. 2008) ("Patent exhaustion . . . does not forbid multiple licenses on a single product or even multiple royalties."); *Quanta Computer, Inc.,* 553 U.S. at 637 n.7 (patent exhaustion doctrine does "not necessarily limit" a patentee's "other contract rights"); *Discovision Assoc. v. Toshiba Corp.*, No. 08v3693 (HB), 2009 WL 1373915, at *9 (S.D.N.Y. May 18, 2009) ("[E]xhaustion of patent rights through a sale is not necessarily determinative of who bears contractual liability for royalties as a result of that sale.").

Ricoh's attempt to overcome this settled authority with the *MPEG LA LLC v. Audiovox Elecs. Corp.* case is misplaced.  MPEG involved a breach of contract suit in which MPEG LA accused Audiovox of failing to pay royalties on sales of DVD players that were built using components purchased from other MPEG LA licensees.  *See MPEG LA LLC*, 33 Misc. 3d at 815-16.  *MPEG **did not***—as Ricoh suggests—hold that patent exhaustion is a defense to breach of contract.  Instead, *MPEG* found that multiple licenses covering the same product are permitted:

> Based on . . . the statement in *ExcelStor* that the doctrine of patent exhaustion does not forbid either multiple licenses or even multiple royalties, this Court is convinced that ***the doctrine of patent exhaustion . . . does not prevent a party, which happens to be patent holder, from suing its licensee for breach of the parties' contract.***

*Id.* at 822 (emphasis added).  The *MPEG* court then ***rejected*** the defendant's claim—like Ricoh's claim here—that patent exhaustion barred the plaintiff's breach of contract claims:

> [T]he Court … denies [defendant] partial Summary Judgment, as [defendant] has not demonstrated as a matter of law that patent exhaustion is a defense to the license Agreement between the parties herein.

*Id.* at 826.

Disregarding all of this, Ricoh points to dicta in the *MPEG* court's opinion suggesting that patent exhaustion could potentially be relevant to a breach of contract claim where it results in a failure of consideration.  (Ricoh *Daubert* Br. at 7.)  Specifically, the *MPEG* court noted that, if at the time a licensee contracts to pay royalties on the sale of certain products under a licensor's patents, the patent holder's patent rights as to all of the products have already been exhausted (meaning the licensee already had the right under the patents to sell all of its products), exhaustion could potentially result in a failure of consideration.  *MPEG LA LLC*, 33 Misc. 3d at 822-23.

Those circumstances are indisputably not present here.  The AO and Altek licenses had not even been entered at the time Kodak and Ricoh entered the PLA in May 2002 and thus could not have resulted in a failure of consideration for the Ricoh PLA.  (Ex. D to Pechenik Decl. In Suppport of Ricoh's Oct. 8, 2013 *Daubert* Motion, [Altek PLA] at 1 (Altek entered PLA with Kodak on July 1, 2004; Ex. E to Pechenik Decl. In Suppport of Ricoh's Oct. 8, 2013 *Daubert* Motion, [AO PLA] at 1 (AO entered PLA with Kodak on April 9, 2004).)  Moreover, the Ricoh license is not limited to selling cameras supplied by licensed OEMs.  Instead, Ricoh received a license to sell all of its covered Digital Cameras regardless of the manufacturer.  (Dkt. 70-1 [PLA] at § 3.1(a), (b) (granting license to make and sell Digital Cameras).)  That license included rights under the Kodak patents that Ricoh indisputably did not already have:  the right to make, have made, and sell all of its Digital Camera products regardless of the manufacturer.  (*Id.*)  As a result, there was no failure of consideration.  *Apfel v. Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 476 (1993) (finding no failure of consideration where "defendant received something of value" upon entering a contract); *Holt v. Feigenbaum*, 52 N.Y.2d 291, 299 (1981)

("a valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other") (internal citations and quotation omitted).

Indeed, when it entered the PLA, Ricoh specifically agreed to pay royalties to Kodak on all covered Digital Cameras ***no matter who manufactured the cameras***:

> Ricoh agrees that it will be legally and financially responsible, including the payment of royalties pursuant to Article IV, for all Ricoh Branded Licensed Products and OEM Licensed Products licensed hereunder ***regardless of the manufacturer or assembler for the same***.

(Dkt. No. 70-1 [PLA] at § 3.8 (emphasis added).)  This includes being responsible for royalty payments on Digital Cameras that Ricoh, or an acquired business like Pentax, purchased from a licensed OEM that had not itself paid royalties.  Having received precisely what it bargained for, Ricoh cannot now claim a failure of consideration because some of Pentax's digital cameras were manufactured by Kodak licensees.  *First Fed. Sav. Bank (of Delaware) v. Nomura Sec. Int'l, Inc.*, 93 CIV. 2519 (LAP), 1995 WL 217539, at *5 (S.D.N.Y. Apr. 12, 1995) ("Failure of consideration exists whenever one who has promised to give some performance fails [ ] to receive in some material respect the agreed exchange for that performance. . . . By its definition, then, the failure of consideration defense depends upon what constitutes the 'agreed exchange.'") (internal citations and quotations omitted).

In any event, failure of consideration is an affirmative defense that Ricoh never pled or otherwise asserted before filing its *Daubert* motion; it has thus waived any such defense.  *See* Fed. R. Civ. P. 8(c)(1) (listing "failure of consideration" as an affirmative defense); *Travellers Int'l, A.G. v. Trans World Airlines*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver.")

Ricoh's citation to *Tessera, Inc. v. International Trade Commission* does not change this result. *Tessera* merely confirms the unremarkable proposition that patent exhaustion is a defense to **patent infringement claims**. It says nothing about patent exhaustion as a defense to breach of contract. In *Tessera*, a patent owner brought a patent infringement suit in the International Trade Commission against its licensees' customers. *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1360, 1363 (Fed. Cir. 2011). The Federal Circuit held that even though a licensee had not paid royalties as required by its license agreement, the patent owner could still not bring **an infringement claim** against the licensee's customers. *Id.* at 1370-71 ("[T]his court affirms the Commission's determination that Tessera's patent rights are exhausted as to all products accused of infringing the '106 patent purchased from Tessera's licensees.") *Tessera* did not hold that a plaintiff could not seek breach of contract damages from a licensee's customers where, as here, those customers themselves had already agreed to pay royalties for particular sales.

**B.     Mr. Thomas's Conclusions Are Consistent With The Undisputed Evidence That Kodak Has Not Been Paid Royalties On The Digital Cameras For Which It Is Seeking Damages.**

Ricoh next argues that Mr. Thomas's conclusions regarding OEM-supplied Digital Cameras should be excluded because his damages calculation purportedly would result in Kodak collecting double royalties. This argument is contradicted by the undisputed factual record.

Ricoh concedes that there is **no evidence** that Kodak was paid royalties on any Digital Cameras for which Kodak is now seeking damages. With respect to AO and Altek, Ricoh's corporate designee could not identify *a single Digital Camera* that AO or Altek had sold to Pentax for which either paid royalties:

> Q.     As you sit here right now, sir, you don't know for sure of a single digital camera that Altek made for Pentax for which it also paid royalties to Kodak, correct?
>
> A.     I do not know a single one for sure.

***

> Q.     As you sit here today, sir, you don't know for sure of a single digital camera that AOF made for Pentax for which it also paid royalties to Kodak, correct?
>
> A.     Yes, I cannot identify which model or models.

(Ex. 2 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Kishi Dep.] at 42:4-8; 66:23-67:3.)  Ricoh's damages expert similarly conceded that he had no evidence that AO or Altek had paid royalties on any of the Digital Cameras provided to Pentax.  (Ex. 3 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Becker Supp. Report] at Appendix E2 (Ricoh's damages expert could not verify royalty payments on any Digital Cameras that Pentax purchased from Altek or AO).)

     With respect to Sanyo, the only evidence—according to even Ricoh's damages expert—is that Sanyo paid royalties on █████████ of the ████████ Digital Cameras that it sold to Pentax.  (Ex. 4 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Becker Dep.] at 109:5-16 (only evidence is that Sanyo paid royalties on ████████ of the ████████ Digital Cameras it sold to Pentax); *see also* Ex. 2 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Kishi Dep.] at 33:21-34:1 (corporate designee does not know whether Sanyo paid royalties to Kodak on a single camera that it sold to Pentax).)  Mr. Thomas excluded these ████████ Digital Cameras from his damages calculation.  (Ex. 19 to Pechenik Decl. In Support of Ricoh's Oct. 8, 2013 Motions In Limine [Thomas Second Supp. Report] at Updated Appendix I (showing ████████[1] Sanyo Digital Cameras excluded from Mr. Thomas's damages calculation).)

---

[1]     There is a small discrepancy in the number of Digital Cameras on which Sanyo paid royalties in Mr. Thomas's and Dr. Becker's damages reports.  Dr. Becker "verified" royalty payments on ████████ Sanyo Digital Cameras.  (Ex. 3 to Kodak's Oct. 7, 2013 Pretrial Memorandum of Law [Becker Supp. Report] at Appendix E, Table E2.)  Mr. Thomas identified royalty payments on 3,505,940 Sanyo Digital Cameras.  (Ex. 19 to Pechenik Decl. In Support of Ricoh's Oct. 8, 2013 Motions In Limine [Thomas Second Supp. Report] at Updated Appendix I.)  The discrepancy appears to be the result of a typographical error in Dr. Becker's Report related to Sanyo's royalty payments in Q4 2003.  Dr. Becker asserts that Pentax purchased ████████ Digital Cameras from Sanyo that quarter (Table E1), and that Sanyo paid royalties to Kodak on all ████████ Digital Cameras (Table E2).  However, as set forth in Mr. Thomas's report, Sanyo actually only reported and paid royalties to Kodak on ████████ Pentax Digital Cameras in Q4 2003.  (*Id.*)

Kodak's litigations against AO and Altek do not change this analysis.  Kodak'sjudgment against AO is for AO's sales to FujiFilm Corporation only, not AO's sales to Pentax.  *Eastman Kodak Co. v. Asia Optical Co., Inc.*, 11-cv-6036 (S.D.N.Y.) at Dkt. 79 ("Kodak moved for partial summary judgment on the issue of whether the licensing agreement between the parties requires AO to pay Kodak royalties on AO's digital camera sales to Fujifilm ("Fuji").  Kodak's motion is granted.")  In any event, contrary to Ricoh's assertion that the claims against AO have been settled (Ricoh *Daubert* Br. at 10), the case has not been settled and AO has not paid Kodak anything in connection with that suit.  *Eastman Kodak Co. v. Asia Optical Co., Inc.*, 11-cv-6036 (S.D.N.Y.) at Dkt. 126 (Kodak's pending motion seeking turnover order for the full amount of the Judgment against AO).  Kodak's litigation with Altek is similarly not yet resolved; Kodak has not received any payment from Altek, and Kodak is in any event not seeking to collect payment from Altek for its sales to Pentax.  *Eastman Kodak Co. v. Altek Corp.*, 12-cv-246 (S.D.N.Y.) at Dkt. 131 (Order reopening case because "the parties indicate that a settlement agreement has not yet been reached").[2]

Mr. Thomas's report is thus entirely consistent with the undisputed factual evidence that Kodak has received no royalty payments on the digital cameras for which it is seeking damages. In any event, even if Ricoh had a legitimate dispute with Mr. Thomas on the facts—and it does not—that would not be a valid reason to exclude his testimony.  *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("[w]hen, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony").

---

[2]     Kodak has requested permission from Altek to disclose the parties' draft settlement agreement to Ricoh.

### C.      Mr. Thomas Is Qualified To Offer His Conclusions On Damages.

Ricoh's argument that Mr. Thomas should be precluded from testifying because he is not

qualified—based on Ricoh's assertion that he is not an expert in Japanese transfer pricing or

Japanese tax treaties, including Advance Pricing Agreements ("APAs")—borders on the

frivolous.

*First*, Mr. Thomas holds an MBA from Indiana University, is certified in financial

forensics, is accredited in business valuation, is a certified public accountant, and has more than

twenty-five years of experience.  (*See* Ex. 1, Thomas CV.)  He is plainly qualified to calculate

and offer an expert conclusion on damages.  There is no requirement that he have specific

expertise in Japanese transfer pricing or Japanese tax treaties to assess damages.  *See Wechsler v.*

*Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 143 (S.D.N.Y. 2003) ("Rule 702 does not require

such specificity among the backgrounds of proposed expert witnesses.").

*Second*, as set forth in Kodak's Motion In Limine No. 4, there is no basis for Ricoh's

assertion that damages should be reduced using transfer pricing or APAs. (*See* Kodak's Oct. 7,

2013 Memorandum of Law in Support of Motions In Limine at 17-19.)  APAs are tax treaties that

require a company to retroactively adjust the recorded prices of certain products at the end of the year

to comply with profit targets set by governmental tax authorities.  (Ex. 10 to Gunther Decl. In

Support of Kodak's Oct. 7, 2013 Motions In Limine, [Becker Dep.] at 277:2-8.)  Ricoh asserts that

transfer prices and APAs are required to calculate Net Sales under the PLA.  But it is undisputed that

the PLA never provides for APA adjusted sales prices or transfer prices as a basis for calculating

royalties under the PLA.  (*Id*. at 178:1-17 (PLA does not refer to APAs or tax treaties.); Ex. 2

[Becker Dep.] 69:16-70:10 (PLA does not refer to "transfer pricing"); Dkt. 70-1 [PLA] at § 4.8.)[3]

---

[3]       As set forth in Kodak's Motion In Limine No. 4, Ricoh's only argument for using APAs to calculate
damages is directly contrary to terms of the PLA. (Kodak's Oct. 7, 2013 Memorandum of Law In Support of

**Third**, the only reason that Mr. Thomas had no opportunity to consider Ricoh's APA agreements and transfer pricing documents before he submitted his expert report is because Ricoh failed to properly produce the documents on which it bases its argument.  As set forth in Kodak's Motion In Limine No. 3, the only transfer pricing and APA-related documents that Ricoh relies on are in Japanese and were not translated until only two weeks ago.  (Kodak's Oct. 7, 2013 Memorandum of Law In Support of Motions In Limine at 12-15.)  Indeed, for the same reasons, even Ricoh's own damages expert admitted that he was not sure that his damages calculation is consistent with the terms of Ricoh's APAs:

> Q.    Can you as you sit here identify with 100 percent certainty, sir, the profit margin set by the advance pricing agreement for any year from 2002 to 2012?
>
> A.    No.  Just looking at the Japanese language document myself, no, I cannot do that.

(Ex. 10 to Gunther Decl. In Support of Kodak's Oct. 7, 2013 Motions In Limine [Becker Dep] at 214:18-215:2.)

**Finally**, Mr. Thomas explained at his deposition why Ricoh's damages expert's use of APA pricing information results in understating the revenues at issue:

> Q    Tell me again why you don't think it would be appropriate.
>
> A    Because in the way in which Dr. Becker has performed his calculation, he's not capturing total revenue.  He's also setting forth a calculation that is pegged to a profit number for which he's provided no analysis -- or at least from what I can understand, any basis as to why that applies in this situation.

(Ex. 3, [Thomas Dep.] at 113:5-13.)  That Ricoh disagrees with Mr. Thomas's assessment of its transfer pricing and APA evidence is not a basis to exclude his damages conclusions.

---

Motions In Limine at 17-19.)  Ricoh claims that when it sells a Digital Camera to one of its subsidiaries in a non arms-length sale, the pricing information in its APAs is a proxy for an "arms-length" price for purposes of calculating Net Sales under Paragraph 4.8 of the PLA.  But Paragraph 4.8 plainly says that for sales to subsidiaries, "Net Sales" means the price that would have been charged to a ***non-affiliated third party***, not the prices set in an APA. (Dkt. 70-1 [PLA] at § 4.8 ("Ricoh warranties that all Digital Cameras that were or will be, for the term of this agreement, sold or otherwise disposed of to Subsidiaries were or will be invoiced at prices substantially equal to ***the price of commercially available Digital Cameras sold to third parties*** in an arms length transaction …") (emphasis added).)

## III.   CONCLUSION

There is no basis to exclude Mr. Thomas's conclusions regarding damages.  Kodak respectfully requests that the Court deny Ricoh's *Daubert* motion.


Dated: October 14, 2013                     Respectfully submitted,

                                            */s/ Robert J. Gunther, Jr.*
                                            Robert J. Gunther, Jr.
                                            WILMER CUTLER PICKERING HALE & DORR LLP
                                            399 Park Avenue
                                            New York, NY 10022
                                            Tel: (212) 230-8800
                                            Fax: (212)230-8888

                                            Michael J. Summersgill
                                            Jordan L. Hirsch
                                            WILMER CUTLER PICKERING HALE & DORR LLP
                                            60 State Street
                                            Boston, Massachusetts 02105
                                            Tel: (617) 526-6000
                                            Fax: (617) 526-5000

                                            *Attorneys for Eastman Kodak Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RICOH COMPANY, LTD. | ) Civil Action No. 1:12-cv-03109 (DLC) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of October, 2013, I caused Plaintiff Eastman Kodak Company's Opposition to Ricoh's *Daubert* Motion to Exclude The Opinions And Testimony of Vincent A. Thomas and supporting papers to be served on all attorneys of record by email.

By: */s/ Robert J. Gunther, Jr.*