# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br><br>RICOH COMPANY, LTD.,<br><br>    Defendants. | Civil Action No. 12-CV-3109 |

## RICOH'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

                                                                                                                          **Page**

A.    Prejudicial Evidence, Testimony, and Argument Unrelated to the Calculation of Royalties Should Be Excluded ......................................................... 1

        1.    Ricoh's "Violation" of the PLA ................................................................... 3

        2.    Kodak's "Harm" Due to Any Nonpayment of Royalties ............................. 4

        3.    Kodak's Prior Relationship with Pentax ...................................................... 5

        4.    Pentax's and Ricoh's Failure To Pay Royalties Under the PLA ................. 6

        5.    Kodak's History and Reputation in the Photography Industry ................... 6

        6.    Kodak's Investments in Research and Development, Inventions, and Patent Portfolio ..................................................................................... 7

        7.    Kodak's Global Licensing Campaign .......................................................... 9

B.    Third Party Documents Purporting To Show Pentax "Kit" Configurations Should Be Excluded from Evidence ..................................................................... 10

C.    Kodak's Untimely Expert Disclosures Should Be Excluded from Evidence ........ 12

D.    Testimony by John Valenza Should Be Excluded to the Extent It Exceeds the Scope of the 30(b)(6) Topics on Which He Was Designated .......................... 14

## TABLE OF AUTHORITIES

**Page**

### Cases

*Chamilia, LLC v. Pandora Jewelry, LLC*,
  No. 04-CV-6017, 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007)............10

*Freund v. Washington Square Press, Inc.*,
  343 N.Y.S.2d 401 (1973) *modified*, 34 N.Y.2d 379, 314 N.E.2d 419 (1974) ...........2

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007)................................................................2, 3

*Novak v. Tucows, Inc.*,
  No. 06-CV-1909, 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007)...........10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006).............................................................13

*Oscar Gruss & Son, Inc. v. Hollander*,
  337 F.3d 186 (2d Cir. 2003)..................................................................2

*Pescatore v. Pan Am. World Airways, Inc.*,
  97 F.3d 1 (2d Cir. 1996)........................................................................1

*Red Dot Bldgs. v. Jacobs Tech., Inc.*,
  2012 WL 2061904 (E.D. La. June 7, 2012)..........................................13

*Sprint/United Mgmt. Co. v. Mendelsohn*,
  552 U.S. 379 (2008)...............................................................................1

### Statutes/Rules

Fed. R. Civ. P. 26............................................................................................12

Fed. R. Civ. P. 26(a) .......................................................................................12

Fed. R. Civ. P. 26(e) .......................................................................................12

Fed. R. Civ. P. 26(a)(2)...................................................................................12

Fed. R. Civ. P. 37(c)(1)(C) .............................................................................13

Fed. R. Evide. 401...........................................................................................1

Fed. R. Evid. 402 ...................................................................................3, 6, 9, 10

Fed. R. Evid. 403 ...............................................................................2, 3, 6, 7, 8, 9

For the reasons stated below, Kodak should be precluded from introducing unduly prejudicial evidence, testimony, and/or argument wholly unrelated to the calculation of royalties under the PLA (the only issue left to be decided by the jury in this case).  Specifically, Kodak should be precluded from offering testimony and evidence regarding:  (1) Ricoh's "violation" of the PLA; (2) Kodak's "harm" by any nonpayment of royalties by Ricoh; (3) Kodak's prior relationship with Pentax; (4) Pentax's and Ricoh's failure to pay royalties under the PLA; (5) Kodak's history and reputation in the photography industry; (6) Kodak's investments in R&D, inventions, and patent portfolio; and (7) Kodak's global licensing campaign.

For the reasons below, Kodak should also be precluded from introducing (8) irrelevant print-outs from third-party websites that cannot be authenticated; (9) expert opinions that were untimely disclosed by Kodak; and (10) testimony from its witness John Valens that exceeds the scope of the 30(b)(6) topics on which he was designated for deposition.

    **A.**    **Prejudicial Evidence, Testimony, and Argument Unrelated to the Calculation of Royalties Should Be Excluded**

Trial courts have broad discretion to exclude evidence that is not relevant or that is unfairly prejudicial, confusing, misleading, or likely to waste time.  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008); Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").  Where a trial is held on the sole question of compensation, only evidence relevant to that issue may be admitted.  *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 16 (2d Cir. 1996) (holding that the district court abused its discretion by admitting at trial reference to the prior finding of misconduct made by the liability jury because such evidence is irrelevant to the damages phase of litigation).  This is true even where a single jury could have heard issues related to both liability and damages under other circumstances.  *Id.* ("[I]f the liability jury had

1

decided this plaintiff's damages, it 'would have known every detail of the defendants' misconduct.' But that knowledge would have been an effect–not an advantage–of a unitary trial.").

Where a contract sets the scope of payment, damages are limited by those contractual terms. *Freund v. Washington Square Press, Inc.*, 343 N.Y.S.2d 401, 405 (1973) *modified*, 34 N.Y.2d 379, 314 N.E.2d 419 (1974) (limiting damages to the value of royalties promised under the contract). In other words, a party that is injured by breach of contract "is entitled to be placed in the same position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract."). Accordingly, nothing but the contractual terms regarding payment is relevant to determining damages in a breach of contract case. *Merrill Lynch*, 500 F.3d at 185; *Oscar Gruss*, 337 F.3d at 196; *Freund*, 343 N.Y.S.2d at 405.

Here, the only issue to be decided by the jury is the amount of royalties owed to Kodak under the PLA. Thus, the only evidence that is relevant is evidence that relates to the calculation of ▇ of Net Sales on Pentax Licensed Products plus interest. By definition, any evidence unrelated to that calculation has no bearing on the sole issue to be resolved by the jury, and such evidence should be excluded from trial.

Moreover, the introduction of evidence or argument unrelated to the calculation of royalties (which is the only determination that the jury must make here) would only serve to inflame or mislead the jury, unfairly prejudice a party, confuse the issues, and/or waste time—all of which are impermissible under Federal Rule of Evidence 403. Rule 403 Advisory

2

Committee's Note (explaining that circumstances warranting exclusion under Rule 403 "range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme"). Such irrelevant and unfairly prejudicial evidence and argument includes, for example, Kodak's anticipated testimony regarding its history, reputation, and innovations (which does not relate to the calculation of royalties under the PLA and would presumably be used only to project a positive image of Kodak to the jury) and Kodak's anticipated characterization of Ricoh as a bad actor (which likewise does not relate to the calculation of royalties under the PLA and would presumably be used only to project a negative image of Ricoh to the jury). As described further below, this sort of irrelevant and unfairly prejudicial evidence should be excluded from trial under Federal Rules of Evidence 402 and 403.

1. Ricoh's "Violation" of the PLA

Kodak has indicated that it intends to introduce evidence, testimony, and/or argument related to Ricoh's "violation" of the PLA (or "breach" of its agreement with Kodak) by "failing" to pay royalties on the products at issue in this case. Any such evidence and argument should be excluded.

Ricoh's liability under the PLA has already been decided, and Ricoh is willing to stipulate that Kodak has not received royalties from Pentax or Ricoh on the products at issue. Thus, the jury need not decide anything—or hear any evidence—regarding liability. The jury's role is solely to determine the amount of royalties due to Kodak based on Net Sales under the PLA.

The only possible purpose of Kodak's expected references to liability is to portray Ricoh as a bad actor for "failing" to meet its contractual obligations or "violating" a contractual agreement. But argument that Ricoh is a bad actor would impermissibly prejudice the jury

3

against Ricoh and would create the misleading impression that the jury's role is to punish Ricoh rather than to simply calculate royalties owed under the PLA (which is all even Kodak claims to be entitled to).

Moreover, to the extent Kodak is permitted to offer such bad-actor argument, Ricoh would be forced to counter such argument by introducing evidence related to, for example, the basis for and reasonableness of Ricoh's understanding that it had fulfilled its obligations under the PLA and the basis for Pentax's understanding that it was licensed by Kodak.  But there is no need for a mini-trial on these issues here, as the Court has already resolved the breach of contract issue and related affirmative defenses.  The jury need only hear evidence regarding which products are subject to a royalty obligation, the associated Net Sales, the resulting royalty, and interest.  Nothing about Ricoh's prior conduct is relevant to that calculation, and permitting Kodak to characterize that conduct would be unfairly prejudicial.  Thus, any evidence, testimony, argument, or references related to the "violation" or "breach" of the PLA or the "failure" to pay royalties should be excluded from trial.

        2.     <u>Kodak's "Harm" Due to Any Nonpayment of Royalties</u>

Kodak has indicated that Dr. Shih and Mr. Valenza are expected to testify regarding "the harm Ricoh's underpayment of royalties has caused to Kodak."  Any such testimony, beyond the fact that Kodak has not received royalties from Pentax or Ricoh on the products at issue—a fact to which Ricoh is willing to stipulate—should be excluded from trial under Federal Rules of Evidence 402 and 403 as irrelevant, unduly prejudicial, misleading, and likely to cause confusion.

Any "harm" suffered by Kodak must be quantified solely with reference to the calculation of royalties and interest pursuant to the PLA.  Any emphasis by Kodak on supposed "harms" will serve only to play on the sympathy of the jury (thereby increasing the risk that the

4

jury will make factual determinations regarding "Licensed Products" and "Net Sales" based on emotion rather than evidence) and/or confuse the jury into thinking that some measure of damages beyond the royalty calculation set forth in the PLA should be awarded to compensate Kodak for the alleged "harms." Accordingly, no evidence regarding generalized "harms" to Kodak should be admitted at trial.

### 3. Kodak's Prior Relationship with Pentax

Kodak may attempt to introduce evidence and testimony relating to Pentax's lack of a written license with Kodak during the term of the PLA. Ricoh continues to believe that Pentax's prior relationship with Kodak resulted in an implied license to Kodak's patent portfolio. But in light of the Court's order on summary judgment, the prior relationship between Pentax and Kodak is irrelevant to the upcoming trial. Given that Ricoh is willing to stipulate to the fact that royalties were not paid by Pentax or Ricoh on any of the Pentax products at issue in this case, the relationship between Pentax and Kodak is irrelevant to the sole issue to be decided at trial (the calculation of royalties under the PLA).

Moreover, any suggestion by Kodak that Pentax engaged in bad acts by not paying royalties to Kodak or that Pentax was unreasonable in its belief that it would not be sued for infringement by Kodak would paint an incomplete, misleading, and prejudicial picture of Pentax. To the extent that Kodak introduces such evidence, Ricoh would need to complete that picture by offering testimony related to the positive business relationship between Pentax and Kodak, the basis for Pentax's understanding that it was licensed by Kodak, and the basis for Hoya's understanding that Kodak would not pursue Pentax for patent infringement. But a mini-trial on such issues would be an unnecessary waste of time here, where the jury's sole function is to calculate royalties under the PLA. Accordingly, Kodak should be precluded from presenting evidence regarding its relationship with Pentax under Federal Rules of Evidence 402 and 403.

4. <u>Pentax's and Ricoh's Failure To Pay Royalties Under the PLA</u>

At trial, it appears that Kodak will attempt to emphasize the "failure" of Ricoh and Pentax to pay royalties on Pentax products. For example, Kodak has designated deposition testimony on this issue for presentation at trial. (Declaration of Graham Pechenik filed herewith ("Pechenik Decl.") Ex. 2, 115:9-25 ("Okay. Let me just back up for a second. You would agree with me that Pentax never paid Kodak any royalties, right?"); Ex. 3, 167:3-6 ("And you would agree with me that since October 1, 2011, Pentax Ricoh has not paid Kodak any royalties for sales under Section 4.4, correct?")). Given that Ricoh is willing to stipulate that royalties have not been paid to Kodak by Ricoh or Pentax on the products at issue in this case, any additional or repeated mention of a "failure" by Pentax or Ricoh to pay royalties to Kodak is irrelevant and should be precluded under Rule 402. Moreover, as described above, any attempt to paint Ricoh or Pentax as a bad actor due to a "failure" to pay royalties should be precluded as unduly prejudicial under Rule 403.

5. <u>Kodak's History and Reputation in the Photography Industry</u>

Kodak also seems poised to introduce evidence of its reputation in the photography industry as well as its history of invention and innovation. By way of example, at various times in this case, Kodak has referenced that it has had a "long history of innovation in photography and image processing"; that Kodak's founder "invented photographic plates in 1879, roll-up film in 1883, and the hand-held camera in 1888"; and that "Kodak engineers also designed and built the camera that Neil Amstrong used on the first walk on the moon." (Kodak Motion For Partial Summary Judgment "MSJ" (Dkt. No. 68) at 4; Complaint "Compl." (Dkt. No. 1) at 2.) Kodak has also stated that it invented the first digital camera (Compl. at 3) and has included in its list of trial exhibits a "Picture of First Kodak Digital Camera" (Pechenik Decl. Ex. 1). Kodak has

6

additionally identified Dr. Willy Shih as a trial witnesses who "is expected to testify regarding Kodak."

Any testimony or evidence offered by Kodak regarding its history, reputation, or past achievement in the photography industry (or any other industry) is wholly irrelevant to the calculation of royalties under the PLA. No Kodak product, or any Kodak innovation or any Kodak contribution to the photographic industry, is at issue here. Nor is Kodak's reputation at issue. The jury need not learn anything about Kodak—it must simply calculate royalties under the PLA. Because irrelevant evidence is inadmissible, Kodak should be precluded from presenting evidence of its history and reputation to the jury pursuant to Rule 402.

Furthermore, the presentation to the jury of such evidence in this phase of the litigation would only serve to waste time, confuse the remaining issues in dispute, and bias the jury in favor of Kodak. As such, Kodak should be precluded from presenting this evidence pursuant to Federal Rule of Evidence Rule 403.

Moreover, to the extent that Kodak is permitted to introduce favorable themes about Kodak's history and reputation, Ricoh will have no choice but to complete the Kodak story, introducing evidence regarding Kodak's ultimate failure in the photography industry, the sale of its patent portfolio, and its resulting bankruptcy. For if Kodak wishes to put its image and reputation before the jury, the jury should hear both sides, not just Kodak's favorable treatment. But since the evidence and argument Kodak seeks to introduce is irrelevant in the first place, it should simply be excluded.

    6. <u>Kodak's Investments in Research and Development, Inventions, and Patent Portfolio</u>

Similarly, Kodak appears likely to introduce evidence of its investment in the research and development of digital imaging technology and its improvements to the state of the art in

7

digital imaging technology.  (Compl. at 3, Pechenik Decl. Ex. 1.)  Kodak may also attempt to introduce evidence of its ownership of patents in the field of digital imaging technology:  in its pleadings, Kodak references that it has received "more than 1,000 patents" for its inventions.  (Compl. at 3; MSJ at 4.)  And again, Kodak has identified Dr. Shih as a trial witnesses who "is expected to testify regarding Kodak" generally.

But here again, any testimony or evidence offered by Kodak regarding its inventions and ownership of patents is wholly irrelevant to the calculation of royalties under the PLA.  The calculation of those royalties is in no way dependent on the number of patents awarded to Kodak employees, the scope of those patents, or any investments by Kodak in digital camera technology.  Indeed, Kodak has repeatedly taken the position that its patent portfolio is irrelevant to any question regarding the inclusion or exclusion of sales for purposes of calculating royalties under the PLA.  (*See* Kodak Summary Judgment Reply Br. (Dkt. No. 123))  The only relevant fact that should be presented to the jury is that the PLA is a patent license agreement pursuant to which the jury must calculate certain royalties.

Moreover, the presentation to the jury of evidence regarding Kodak's patents and innovations would only waste time, confuse the actual issues in dispute, and improperly sway the jury.  In particular, discussion of the breadth of Kodak's former patent portfolio could inappropriately influence the jury's determination of which particular products are covered by the PLA, even though Kodak has always contended that the patents need not be referenced to make such a determination.  Kodak should thus be precluded from presenting this evidence pursuant to Federal Rule of Evidence Rule 403.

And finally, to the extent that Kodak is permitted to introduce favorable evidence regarding its innovation, Ricoh will again need to introduce evidence and testimony to tell the

rest of the story (i.e., Kodak's failure in the photography industry, its transformation into a patent assertion entity, its licensing tactics with regard to its patent portfolio, its sale of its patent portfolio, and its ultimate bankruptcy). Kodak should be precluded from introducing evidence, testimony, or argument regarding its patents, research and development, or other innovations in order to avoid a mini-trial on these and related issues, which are wholly irrelevant to the jury's narrow task of calculating royalties.

### 7. Kodak's Global Licensing Campaign

Kodak may also attempt to introduce evidence of third parties' views regarding Kodak's patent portfolio. In its complaint, Kodak states that "[r]ecognizing the value of Kodak's inventions, most competitors in the digital space have taken licenses to Kodak's digital imaging patents." (Compl. at 3.) Kodak also refers to Ricoh as having "joined the list of licensees to Kodak's digital imaging patents." (*Id*. at 4.) And Kodak has identified Dr. Shih as a witness who will discuss Kodak generally at trial.

For all of the reasons described above, any testimony or evidence offered by Kodak regarding its licensing activities is wholly irrelevant to the calculation of royalties under the PLA. The willingness or unwillingness of any party to take a patent license from Kodak has no relationship to that calculation. Nor does the purported value of Kodak's portfolio. The royalty rate to be applied by the jury has been set by the PLA. The introduction of contract terms and royalty rates negotiated between Kodak and third parties will only confuse the jury and will certainly waste the jury's time. Evidence and argument regarding Kodak's licensing activities should be precluded from trial under Rule 402 and Rule 403.

### B. Third Party Documents Purporting To Show Pentax "Kit" Configurations Should Be Excluded from Evidence

Kodak has included on its trial exhibit list 6 print-outs from websites of third-party camera retailers and distributors and 5 print-outs of camera reviews posted on websites by third-party individuals. (Pechenik Decl. Ex. 24.) Kodak cannot authenticate these documents, and they should not be admitted into evidence on that basis alone. Moreover, these documents are irrelevant to the calculation of royalties in this case, and they are otherwise confusing and unfairly prejudicial. For all of these reasons, Kodak's Exhibits 23, 24, 25, 27, 29, 30, 31, 34, 109, 110, and 111 should be excluded from evidence and Kodak's witnesses should not be permitted to reference them at trial. (Pechenik Decl. Exs. 5-16.)

As an initial matter, Kodak cannot authenticate any of these documents, which Kodak appears to have printed from various websites. *E.g.*, *Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017, 2007 WL 2781246, at *6 n.4 (S.D.N.Y. Sept. 24, 2007) (noting that archived web-pages "suffer[] from fatal problems of authentication"); *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) (striking printouts of web-pages for lack of authentication). No one who will appear at trial will be able to testify regarding what the selected pictures or text appearing on third-party websites such as photo.tech-details.com and pentaxwebstore.com were intended to represent or describe, and Ricoh will not have the opportunity to question the individuals who created the content for those websites or posted the reviews selected by Kodak (to determine, for example, the information on which those reviews were based). For this reason alone, the printouts from third-party websites that appear on Kodak's exhibit list should not be admitted into evidence or otherwise shown to the jury.

Moreover, those printouts have nothing to do with the parties' dispute regarding the calculation of royalties under the PLA. Kodak is not seeking royalties on DSLR bodies sold by

Pentax "as camera bodies alone." (Pechenik Decl. Ex. 17 at 16 ("I *excluded* from my analysis the SLR Digital Cameras that Pentax sold as camera bodies alone.  In other words, the only SLR Digital Cameras that I included in my analysis were SLR Digital Cameras that were sold with lenses."))  Kodak contends, however, that Pentax's use of the word "kit" in a product name (without the words "lens," "zoom," "z00m" or a reference to a specific Pentax interchangeable lens) appearing on Pentax's internal financial spreadsheet necessarily indicates that the product is "sold with a lens."  Ricoh disputes that any such conclusion can be drawn from the use of the word "kit" in a product name.

These printouts from third-party websites are not relevant to Kodak's (erroneous) assertion.[1]  What third-parties, including on-line reviewers, call "kits" is in no way probative of the meaning of *Pentax's* internal nomenclature.  Furthermore, Kodak has no way to demonstrate that these web-page printouts have any bearing on how *Pentax* packages or sells its cameras:  at most, these websites show how a third-party retailer may or may not have packaged and sold a camera or how a third-party consumer may or may not have purchased a camera, but nothing can be either verified or discredited because Kodak is not bringing anyone with first-hand knowledge about these postings to trial.  Indeed, one of the websites, photo.tech-details.com, does not even seem to sell any product that it purportedly describes.

Thus, if these website printouts have any relevance at all, it is marginal at best and far outweighed by the unfair prejudice that will result if they are admitted into evidence at trial.  As

---

[1] Kodak's assertion is demonstrably false.  As just one example, Pentax Optio cameras—which the parties agree are point-and-shoot cameras that do not have interchangeable lenses, cannot be used in conjunction with interchangeable lenses, and are never packaged with interchangeable lenses—are noted on the spreadsheets as sold in both "kit" and non-"kit" configurations.  (*See* Pechenik Decl. Ex. 18)  Thus, inclusion of the word "kit" in a product name does not indicate whether a product "includes" or does not "include" a lens.

noted, Kodak could speculate at will about the printouts, but no one Kodak intends to bring to trial will have any actual knowledge regarding the source of the content in those printouts. Ricoh will obviously be prejudiced as a result. The use of the printouts under such circumstances will serve only to confuse and distract the jury. For all of these reasons—inability to authenticate, irrelevance, and undue prejudice—Kodak's Exhibits 23, 24, 25, 27, 29, 30, 31, 34, 109, 110, and 111 should be excluded from evidence and should not be referenced at trial.

### C.   Kodak's Untimely Expert Disclosures Should Be Excluded from Evidence

Kodak served Mr. Thomas' Second Supplement to his Report and twelve documents cited in the Second Supplement[2] on September 16, 2013, 81 days after the close of expert discovery. Mr. Thomas opined that the information cited in the Second Supplement "further confirm[ed] that, as set forth in my May 17 report, Pentax DSLR "kits" include lenses." (Pechenik Decl. Ex. 19.)

The disclosure of Mr. Thomas' Second Supplement (and the accompanying exhibits) was untimely. Accordingly, the opinions and information discussed therein should be stricken pursuant to Rule 37(c)(1)(C), which states: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26 requires parties to adhere to the deadlines set by the Court's scheduling orders with respect to expert reports. Under Rule 26(a)(2), a party must disclose its expert witnesses and a report of his/her opinion that includes "the facts or data considered by the witness in forming them" and "any exhibits that will be used to summarize or support them."

---

[2]   Namely, KOD-RIC081752, KOD-RIC081754, KOD-RIC081757, KOD-RIC081760, KOD-RIC081764, KOD-RIC081773, KOD-RIC081774, KOD-RIC081776, KOD-RIC081778, KOD-RIC081781, KOD-RIC081784, and KOD-RIC081788. (Pechenik Decl. Exs. 5-16.)

Where a party fails to show diligence in submitting a report, the court "plainly ha[s] the authority to exclude the untimely reports." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1368 (Fed. Cir. 2006).  Where a party provides no justification for its need to supplement an expert's opinions, supplemental opinions filed after the deadline for expert reports should be excluded.  *See, e.g.*, *Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 11-CV-1142, 2012 WL 2061904 (E.D. La. June 7, 2012).

This Court ordered that expert discovery be completed by June 28, 2013.  (Dkt. No. 24.)  Mr. Thomas' Second Supplement, dated September 16, 2013, was served over two months after that deadline without any justification for why the opinions offered and the information and exhibits relied on could not have been previously disclosed.

Mr. Thomas had ample notice that Kodak was asserting certain positions regarding the issue of "kit" sales before he served his initial Report on May 17, 2013.  Kodak identified its position on the definition of a "kit" in response to Ricoh's second set of interrogatories on April 11, 2013.  (Pechenik Decl. Ex. 20, at 8.)  And Kodak made similar assertions in response to Ricoh's third set of interrogatories on April 26, 2013.  (Pechenik Decl. Ex. 21, at 24.)  Indeed, in his original Expert Report and Disclosure submitted May 17, 2013, Mr. Thomas stated that he intended to exclude from his calculation of the royalty base those cameras sold as bodies alone and believed he was doing so when he included in the royalty base any product with a code that included the term "kit."  (Pechenik Decl. Ex. 17 at 16, n.52.)  Kodak took the opportunity to make a supplemental production to Ricoh in purported response to issues raised in Dr. Becker's rebuttal report on July 24, 2013, immediately prior to Mr. Thomas' deposition.  (Pechenik Decl. Ex. 23.)  And, perhaps most tellingly, Mr. Thomas' Second Supplement purports to offer new

13

opinions that "*confirm*" opinions originally included in Mr. Thomas' initial expert report (which was timely disclosed).

No new or previously unknown circumstance prompted Mr. Thomas to seek additional confirmation of his original opinions, and Mr. Thomas had every opportunity to supplement his opinions *before* Ricoh took his deposition.  There can thus be no viable justification for the untimely disclosure of the Second Supplemental Report and the untimely production of the documents cited therein *after* the close of expert discovery.  And there is no doubt that Ricoh has been prejudiced by the untimely disclosure, as the disclosure of the Second Supplemental Report and the documents discussed therein occurred *after* Ricoh had completed its deposition of Mr. Thomas.  Accordingly, both the opinions and documents cited in the Second Supplemental Report should be excluded from evidence at trial.

### D. Testimony by John Valenza Should Be Excluded to the Extent It Exceeds the Scope of the 30(b)(6) Topics on Which He Was Designated

In resolution of a dispute between the parties regarding discovery related to original equipment manufacturers ("OEMs") of Pentax products, Kodak agreed to provide John Valenza as a corporate witness on the following topics:

> 33.  Sanyo's, Altek's, and Asia Optical's royalty payments to Kodak, under their digital camera license agreements with Kodak, based on their sale or disposal of OEM Licensed Products, including without limitation, such royalty payments to Kodak on products that Sanyo, Altek, and Asia Optical sold to Pentax as an OEM supplier of Pentax.
>
> 34.  Kodak's knowledge of Sanyo's, Altek's, and Asia Optical's OEM digital cameras sold to Pentax, including the names and model codes of the camera models, the volume of Pentax's purchases of each model, Pentax's purchase prices for each model, and the OEM's sales revenues for each model.
>
> 35.  All audit reports and royalty inspection reports of Sanyo, Altek, or Asia Optical relating to digital cameras.
>
> 38.  All internal investigations by Kodak-including its officers, directors, employees, agents, attorneys (inside and outside counsel), and consultants-into

whether Sanyo, Altek, or Asia Optical, acting as an OEM for Pentax, paid royalties to Kodak based on Sanyo's, Altek's, and Asia Optical's sales of digital cameras to Pentax, including but not limited to the identity or identities of the person(s) conducting the fact investigation, identity of all people contacted for information and their employers, the identity of all documents kept in ordinary course of business reviewed or generated as part of any such investigation, and the time periods during which any such investigation occurred.

39. All of Kodak's contacts, meetings, and communications with Sanyo, Altek, or Asia Optical concerning royalties paid to Kodak based on sales of digital cameras to Pentax, including but not limited to all Kodak efforts to obtain information from Sanyo, Altek, and Asia Optical about the portion of their royalty payments to Kodak attributable to OEM sales to Pentax.

40. Any representation by Sanyo, Altek, or Asia Optical that it paid royalties to Kodak based on OEM sales of digital cameras to Pentax.

41. The existence, locations, types, sources, and forms of documents identified above (Part A).

Mr. Valenza was ultimately deposed by counsel for Ricoh on these topics on June 5, 2013. But based on Kodak's witness disclosure, Kodak intends to have Mr. Valenza "testify regarding the harm Ricoh's underpayment of royalties has caused to Kodak, and the royalties that Kodak has received."[3] Such testimony appears to exceed the scope of the topics on which Mr. Valenza was offered for deposition.

Besides identifying Mr. Valenza as the person most knowledgeable on the limited topics identified above, Kodak did not identify Mr. Valenza as a person otherwise having knowledge relevant to this case. (*E.g.*, Pechenik Decl. Ex. 22 (Kodak's initial disclosures, served on September 21, 2012).) And Mr. Valenza was not made available for deposition on the issues on which Kodak appears to intend that Mr. Valenza testify at trial. Thus, Ricoh requests that Kodak be precluded from offering testimony from Mr. Valenza at trial beyond the topics on which he

---

[3] This testimony should be excluded for the reasons set forth in Section 2 above.

was deposed.  Alternatively, Ricoh requests that Mr. Valenza be made available for deposition prior to trial on any subjects on which Kodak intends to have him testify.

DATED:  October 7, 2013.

By: /s/ *David Eiseman*

David Eiseman*
Philip C. Sternhell*
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Ave. NW, Suite 825
Washington, DC 20004
(202) 538-8178
davideiseman@quinnemanuel.com
philipsternhell@quinnemanuel.com

Ryan S. Goldstein*
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
ryangoldstein@quinnemanuel.com

Melissa J. Baily
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
melissabaily@quinnemanuel.com

*Admitted pro hac vice*

*Counsel for Defendant Ricoh Company, Ltd.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT, on the 7th day of October, 2013, I caused the above document to be served on all attorneys of record via electronic mail.


DATED:  October 7, 2013

                                        /s/   *Graham M. Pechenik*
                                             Graham M. Pechenik