UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EASTMAN KODAK COMPANY,

        Plaintiff,

v.

RICOH COMPANY, LTD.,

        Defendant

Case No. 1:12-cv-03109 (DLC)

**RICOH'S *DAUBERT* MOTION TO EXCLUDE THE
OPINIONS AND TESTIMONY OF VINCENT A. THOMAS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. FACTS ....................................................................................................................................1

    A. Licensed OEMs..........................................................................................................1

    B. Transfer Pricing .........................................................................................................3

III. ARGUMENT..........................................................................................................................4

    A. Legal Standards.........................................................................................................4

        1. Expert Testimony Should Be Excluded When It Is Irrelevant, Unreliable, Unhelpful, and/or Likely To Confuse the Jury ........................4

        2. Expert Testimony Should Be Precluded When It Is Outside of the Proffered Expert's Area of Expertise.............................................................5

    B. Mr. Thomas' Opinions Regarding the Royalty Base at Issue in This Case Should Be Excluded as a Matter of Law Because It Is Contrary to the Doctrine of Patent Exhaustion ........................................................................................6

        1. Kodak's Contractual Rights Are Subject to the Doctrine of Patent Exhaustion..................................................................................................6

        2. Patent Exhaustion Applies to Cameras Purchased by Pentax from a Licensed OEM ..........................................................................................8

        3. Mr. Thomas' Opinions Regarding the Payment of Royalties by OEMs to Kodak Should Be Excluded from Evidence................................9

        4. Mr. Thomas' Opinions Regarding the Number of Pentax Cameras on Which Ricoh Purportedly Owes Royalties Should Be Excluded from Evidence ...............................................................................................10

    C. Mr. Thomas' Opinions Regarding the Royalty Base at Issue in This Case Should Be Excluded as a Matter of Law Because It Is Contrary to Kodak's Repeated Concession That It Cannot Seek To Recover a Double Royalty ...........10

    D. Mr. Thomas' Opinions Regarding the Royalty Base at Issue in This Case Should Be Excluded Because Mr. Thomas Is Unqualified To Offer Those Opinions....................................................................................................................11

IV. CONCLUSION.....................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page**

### Cases

*Am. Med. Sys. v. Laser Peripherals, LLC*,
  712 F. Supp. 2d 885 (D. Minn. 2010) ............................................................................. 5, 10

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ............................................................................................ 4, 9

*Arista Records LLC v. Lime Grp. LLC*,
  No. 06-CV-5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ........................................... 6

*Bickerstaff v. Vassar Coll.*,
  196 F.3d 435 (2d Cir. 1999) ................................................................................................ 4

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .................................................................................................. 4, 5, 11

*Eagleston v. Guido*,
  41 F.3d 865 (2d Cir. 1994) .............................................................................................. 6, 12

*Hebert v. Lisle Corp*,
  99 F.3d 1109 (Fed. Cir. 1996) ............................................................................................. 5

*J.T. Colby & Co. v. Apple Inc.*,
  No. 11-CV-4060, 2013 WL 1903883 (S.D.N.Y. May 8, 2013) ........................................... 4

*Leverette v. Louisville Ladder Co.*,
  183 F.3d 339 (5th Cir. 1999) ............................................................................................... 5

*Lichtenstein v. Triarc Cos.*,
  No. 02-CV-2626, 2004 WL 1087263 (S.D.N.Y. May 14, 2004) ......................................... 5

*MPEG LA, LLC v. Audiovox Elecs. Corp.*,
  933 N.Y.S.2d 815 (Sup. Ct. 2011) .................................................................................. 7, 8

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) ...................................................................... 4, 5, 9, 10

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
  553 U.S. 617 (2008) ................................................................................................... 6, 8, 9

*In re Refco Inc. Sec. Litig.*,
  Nos. 07-MD-1902, 08-CV-3065, 08-CV-3086, 2012 WL 7007795
  (S.D.N.Y. Nov. 29, 2012) .................................................................................................. 5, 9

*Tessera, Inc. v. Int'l Trade Comm'n*,
  646 F.3d 1357 (Fed. Cir. 2011) ........................................................................................ 8, 9

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004) .................................................................................................. 5

*United States v. Williams*,
   506 F.3d 151 (2d Cir. 2007)..........................................................................................5, 11

**Statutes**

Fed. R. Evid. 702 ............................................................................................................ 4, 5, 6, 11

I.   **INTRODUCTION**

In this breach of contract case, Plaintiff Eastman Kodak Company ("Kodak") seeks royalties from Defendant Ricoh Company, Ltd. ("Ricoh") for sales of certain digital cameras by Pentax Corporation ("Pentax"). At trial, Kodak intends to call Mr. Vincent A. Thomas as an expert witness to opine on, among other things, the number of Pentax sales—and the associated amount of revenue—for which Ricoh purportedly owes royalties to Kodak. But the methodology used by Mr. Thomas to calculate that royalty base is fundamentally flawed and at odds with governing legal principles as well as Kodak's own admissions. Moreover, Mr. Thomas has conceded that he is unqualified to offer opinions related to the calculation of damages in this case, as he has no familiarity with damages issues related to transfer pricing. As such, Mr. Thomas' opinions regarding the royalty base are unreliable and irrelevant, and Kodak should be precluded from offering those opinions at trial.

II.   **FACTS**

   A.   **Licensed OEMs**

The Expert Report of Vincent A. Thomas summarizes certain opinions regarding the number of Pentax cameras on which Ricoh is purportedly obligated to pay royalties under its Patent License Agreement with Kodak. (Ex.[1] A.) In that report, Mr. Thomas acknowledges that Pentax purchased certain of its cameras from three original equipment manufacturers ("OEMs"): Altek Corporation, Asia Optical Co., and Sanyo Electric Co. (*Id.* at 26.) Mr. Thomas further references a table produced by Ricoh (*id.*), which lists ▮▮▮▮▮▮ cameras that Pentax purchased from those three OEMs during the time frame for which Kodak is seeking royalties from Ricoh (*id.* at App. J).

---

[1] "Ex." refers to the Exhibits attached to the accompanying Declaration of Graham Pechenik.

Mr. Thomas acknowledges that each of Altek, Asia Optical, and Sanyo had taken a license to Kodak's digital camera patents prior to selling those ▮▮▮▮ cameras to Pentax. (Ex. A at 26; *see also* Ex. C, at 184:23-185:4, 185:19-24, 186:10-21, 189:21-25.)  Indeed, the license agreements executed by each of the OEMs and Kodak authorize the OEMs to sell cameras to their customers, including Pentax.  (Exs. D, E, F.)  Those license agreements further require each OEM to pay royalties to Kodak on those sales.  (*Id.*)

Kodak has stated that it has no right to recover double royalties on a single camera. (*E.g.*, Ex. G, at 5:16-17.)  Mr. Thomas summarizes Kodak's position in this regard as follows: "I understand that Kodak agrees that Ricoh is not required to pay royalties on digital cameras where there is evidence that shows that another company already paid royalties on those specific cameras."  (Ex. A at 26.)  Mr. Thomas then goes on to summarize Kodak's position regarding the relevant burden of proof: "I also understand that Kodak's position is that Ricoh has the burden to show that another company paid royalties to Kodak on Pentax Digital Cameras."  (*Id.* at 26-27.)  For purposes of his analysis, Mr. Thomas simply adopts Kodak's positions on these points.[2]  (Ex. C, at 179:23-181:9.)

Assuming Kodak's positions on the law to be correct, Mr. Thomas opines that:

- "Asia Optical has not paid royalties to Kodak on the digital cameras that it sold to Pentax" (Ex. A at 28);

- "Altek has not paid royalties to Kodak on the digital cameras that it sold to Pentax," but "Kodak has a pending suit against Altek for failure to pay royalties on thousands of digital cameras pursuant to the license agreement between Kodak and Altek" (*id.* at 28-29)[3]; and

---

[2] Mr. Thomas does not purport to offer any opinions on the appropriate legal standards or burdens of proof to be applied in this case (e.g., Ex. C, at 31:12-22, 32:5-11, 36:7-11), and he would not be qualified to do so.

[3] Mr. Thomas is serving as Kodak's damages expert in litigation seeking royalties from each of Asia Optical and Altek under those OEMs' patent license agreements with Kodak. (Ex. C, at 184:23-185:8, 185:25-186:5.)

2

- "Sanyo did not pay royalties to Kodak on all of the digital cameras that it sold to Pentax," but Sanyo did pay royalties to Kodak on at least ▮▮▮▮▮ of those cameras (*id.* at 30-31).

Based on these opinions regarding which Pentax cameras had not already been the subject of a royalty payment made to Kodak by an OEM, Mr. Thomas concludes that Ricoh should pay royalties to Kodak on all of the cameras that Asia Optical sold to Pentax, all of the cameras that Altek sold to Pentax, and ▮▮▮▮▮ of the cameras that Sanyo sold to Pentax. (*Id.* at 26-31 & App. J.) In other words, Mr. Thomas determines the number of Pentax cameras on which he concludes Ricoh should pay royalties by (i) summing the number of Pentax cameras that Kodak contends fall within the scope of the PLA and (ii) deducting the number of cameras that Mr. Thomas contends were ***both*** sold to Pentax by an OEM ***and*** subject to a royalty payment by an OEM. (*Id.*)

     **B.**    **Transfer Pricing**

In response to Mr. Thomas' report, Ricoh submitted a rebuttal damages report from its expert Brian C. Becker. Among other things, Dr. Becker opined that Mr. Thomas' damages calculations are overstated because they fail to consider the effect of "transfer pricing" on the royalty base. Dr. Becker took transfer pricing into account in conducting his damages analysis by reviewing Pentax's related-party sales and Advance Pricing Agreements ("APAs") and determining the amount actually received by Pentax for digital camera sales after adjusting for payments between Pentax subsidiaries. (Ex. H, at 14-15.)

Mr. Thomas conceded at deposition that he has no expertise related to issues of transfer pricing: he testified that he could not recall "taking any courses where the specific issue of transfer pricing was taught," that he had never "performed analysis" of "the proper way of calculating transfer prices," that he never "taught courses on transfer pricing," that he never "authored articles regarding transfer pricing," that he could not recall ever having "spoken at

3

conferences regarding transfer pricing issues, and that he had never "testified specifically on transfer pricing issues." (Ex. C, at 14:22-15:2, 15:22-24, 16:11-23, 17:6-23.)  Mr. Thomas thus ignored the transfer pricing issue wholesale in the damages analysis he set forth in his report (and his supplements thereto).

## III.    ARGUMENT

### A.    Legal Standards

#### 1.    Expert Testimony Should Be Excluded When It Is Irrelevant, Unreliable, Unhelpful, and/or Likely To Confuse the Jury

"A district court must act as 'a gatekeeper to exclude invalid and unreliable expert testimony.'" *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 565 (S.D.N.Y. 2007) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999)).  In its role as gatekeeper, the Court "must determine whether the proposed testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Malletier*, 525 F. Supp. 2d at 565 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)); *see also J.T. Colby & Co. v. Apple Inc.*, No. 11-CV-4060, 2013 WL 1903883, at *19 (S.D.N.Y. May 8, 2013) (excluding plaintiffs' expert reports under Fed. R. Evid. 702 and 403).  If these two requirements—reliability and relevance—are not met, the proposed expert testimony is not admissible.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002); *Daubert*, 509 U.S. at 589-92.

"[I]n analyzing whether proffered expert testimony is relevant," the "court should look to the standards of Rule 401" and determine whether the proffered testimony "'ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Amorgianos*, 303 F.3d at 265 (quoting *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001)).  Testimony related to erroneous legal assumptions is, by definition, immaterial and irrelevant and

4

should be excluded under *Daubert* and Rule 702. *See, e.g.*, *Malletier*, 525 F. Supp. 2d at 572 (finding that damages testimony should be excluded where it "does not 'fit' with the substantive law"); *Lichtenstein v. Triarc Cos.*, No. 02-CV-2626, 2004 WL 1087263, at *13 (S.D.N.Y. May 14, 2004) (affirming district court's exclusion of expert testimony where the expert failed to align his methodology for comparing compensation values with the relevant legal standard); *In re Refco Inc. Sec. Litig.*, Nos. 07-MD-1902, 08-CV-3065, 08-CV-3086, 2012 WL 7007795, at *4 (S.D.N.Y. Nov. 29, 2012) (collecting cases where expert testimony was properly excluded for failing the *Daubert* relevance requirement); *accord Leverette v. Louisville Ladder Co.*, 183 F.3d 339 (5th Cir. 1999) (expert opinion properly excluded under *Daubert* for lack of relevance because it was inconsistent with applicable legal standards); *Hebert v. Lisle Corp*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but markedly incorrect law. Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories."); *Am. Med. Sys. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 901 (D. Minn. 2010) (expert's "opinions are inadmissible because they are based on incorrect legal standards").

    2.    Expert Testimony Should Be Precluded When It Is Outside of the Proffered Expert's Area of Expertise

Under Rule 702, a party seeking to rely on expert testimony bears the burden of showing that its witness is "qualified as an expert by knowledge, skill, experience, training, or education." *Daubert*, 509 U.S. at 593 n. 10; *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); Fed. R. Evid. 702. The court must then "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony," *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004), to "ensure that the expert will

5

actually be testifying 'on issues or subject matter[s] within his or her area of expertise,'" *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011). "Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *Eagleston v. Guido*, 41 F.3d 865, 874 (2d Cir. 1994) (affirming preclusion of expert testimony for failure to establish appropriate expertise).

      **B.**    **Mr. Thomas' Opinions Regarding the Royalty Base at Issue in This Case Should Be Excluded as a Matter of Law Because It Is Contrary to the Doctrine of Patent Exhaustion**

As described above, Mr. Thomas offers opinions regarding the total number of Pentax cameras on which Ricoh should purportedly pay a royalty to Kodak. Mr. Thomas does not exclude from that total those cameras purchased by Pentax from a licensed OEM. Instead, Mr. Thomas excludes from that total only those Pentax cameras for which Mr. Thomas contends that an OEM has paid a royalty to Kodak. (Ex. A at 27-31.) In this respect, Mr. Thomas' methodology is fundamentally flawed, as it is inconsistent with the legal doctrine of patent exhaustion, which constrains contract damages in this case. Mr. Thomas' methodology for determining the royalty base is thus unreliable, unhelpful, and irrelevant to the issues to be resolved by the jury. As such, Mr. Thomas should be precluded from offering opinions at trial regarding the number of Pentax cameras on which Ricoh should pay a royalty to Kodak.

      1.    <u>Kodak's Contractual Rights Are Subject to the Doctrine of Patent Exhaustion</u>

As this Court noted in its ruling on Kodak's motion for summary judgment (Dkt. No. 105, at 33), in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 637 n.7 (2008), the Supreme Court left open the question of whether patent exhaustion may be a defense to a breach

6

of contract claim.⁴  The only New York court to consider this question has determined that, under certain circumstances, the doctrine of patent exhaustion *does* limit contractual rights. *MPEG LA, LLC v. Audiovox Elecs. Corp.*, 933 N.Y.S.2d 815, 822-23 (Sup. Ct. 2011) (considering at length "[t]he interplay between contractual rights and the doctrine of patent exhaustion").

Specifically, in *MPEG*, the court found that patent exhaustion may be a defense to a breach of contract claim where the contract at issue provides for consideration (such as the payment of royalties) "in exchange for the ability to engage in commerce without infringing on the patent rights" of the patent holder. *Id.* at 823.  In other words, where the contract at issue is a patent license agreement, the doctrine of patent exhaustion must operate to prevent a patent holder from using that agreement to extend its rights beyond an initial authorized sale of a patented product.  *Id.* at 822.

As in *MPEG*, the agreement that is the subject of a breach of contract claim in this case is a patent license agreement.  Indeed, one of the two explicit purposes for executing the contract at issue was to grant Ricoh a license under Kodak's digital camera patents so that Ricoh (and certain businesses acquired by Ricoh) could sell digital cameras without liability for infringement.⁵  (Ex. I, at 1.)  Article III of the patent license agreement makes clear that Ricoh's agreement to pay royalties is in return for a license to make and sell products under Kodak's patents.  (*Id.* at 6.)

---

⁴  This Court left open the same question in its August 9, 2013 Opinion and Order, noting only that the patent exhaustion doctrine "does not necessarily limit" a patentee's contractual rights and that "a conclusion that a patentee would not be entitled to patent damages as a result of patent exhaustion does not amount to a determination that contract damages are likewise unavailable." (Dkt. No. 105, at 33.)

⁵  The other purpose was to grant Kodak an analogous license under Ricoh's patents.  (Ex. I, at 1.)

7

Accordingly, the PLA at issue here is indisputably a contract by which Kodak seeks to exert its rights as a patent holder. As such, Kodak's assertion of those contractual rights must be subject to the doctrine of patent exhaustion, which precludes the exercise of such rights following "the initial authorized sale of a patented product." *MPEG*, 933 N.Y.S. 2d at 822-23; *Quanta*, 553 U.S. at 621. Thus, contrary to the assumptions that Mr. Thomas made regarding the law applicable to his analysis, the doctrine of patent exhaustion must be taken into account when determining Kodak's damages for breach of contract here.

      2.      Patent Exhaustion Applies to Cameras Purchased by Pentax from a Licensed OEM

Patent exhaustion is triggered by the first sale of a patented product that is authorized by the patent holder. *Quanta*, 553 U.S. at 621 ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."). There is no dispute that Altek, Asia Optical, and Sanyo were licensed under Kodak's patents and that those OEMs were unconditionally authorized by Kodak to sell digital cameras to Pentax. (Exs. D, E, F.) Sales by those OEMs to Pentax thus trigger the doctrine of patent exhaustion: once such authorized sales occur, Kodak can no longer exercise its contractual rights—obtained only by virtue of its patent rights—to collect royalties on subsequent sales of the same digital cameras by Pentax. *Quanta*, 553 U.S. at 621.

This conclusion is not altered by the purported failure of Altek, Asia Optical, and/or Sanyo to pay royalties to Kodak on their initial, authorized sales to Pentax (Ex. A at 27-31). The Federal Circuit's decision in *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357 (Fed. Cir. 2011), is conclusive on this point. In *Tessera*, the plaintiff had executed patent license agreements that authorized its licensees to sell products in return for royalties. *Id.* at 1364. Those licensees ultimately failed to pay the required royalties. *Id.* But the Federal Circuit held that, despite the

failure of the licensees to pay royalties, the plaintiff could not recover damages from the licensees' customers. *Id.* The failure of the licensees to pay royalties did not convert an authorized sale into an unauthorized sale for purposes of determining whether patent exhaustion applied to the licensees' customers. *Id.* at 1365.

Based on these settled principles, it is clear that the doctrine of patent exhaustion applies to all cameras sold to Pentax by licensed OEMs, regardless whether those OEMs paid royalties to Kodak. *Quanta*, 553 U.S. at 621; *Tessera*, 646 F.3d at 1370. Thus, contrary to the assumptions that Mr. Thomas made regarding OEM royalty payments (and related burdens of proof), such OEM royalty payments are irrelevant to the calculation of damages in this case.

### 3. Mr. Thomas' Opinions Regarding the Payment of Royalties by OEMs to Kodak Should Be Excluded from Evidence

Mr. Thomas has opined that there is no evidence that Altek or Asia Optical paid any royalties to Kodak on any of the cameras that they sold to Pentax. (Ex. A at 27-29.) Mr. Thomas further opines that there is no evidence that Sanyo paid royalties to Kodak on ▆▆▆▆ of the ▆▆▆▆ cameras that it sold to Pentax. (*Id.* at 30-33.) But because patent exhaustion applies to *every* camera sold to Pentax by licensed OEMs, opinions regarding whether those OEMs paid royalties to Kodak are irrelevant to any issue to be decided by the jury in this case. (*See supra* Parts II.B.1, II.B.2.) Thus, the presentation of such opinions will be unhelpful to the jury and will serve only to confuse the issues. Mr. Thomas' opinions regarding which cameras were subject to a royalty payment by the OEMs should accordingly be excluded from evidence. *Malletier*, 525 F. Supp. 2d at 565; *Amorgianos*, 303 F.3d at 265; *Refco*, 2012 WL 7007795, at *4.

9

>    4.   Mr. Thomas' Opinions Regarding the Number of Pentax Cameras on Which Ricoh Purportedly Owes Royalties Should Be Excluded from Evidence

In order to determine the number of Pentax cameras on which Ricoh purportedly owes royalties, Mr. Thomas (i) sums the number of Pentax cameras that Kodak contends are covered by the PLA and (ii) subtracts the number of those cameras for which Mr. Thomas contends an OEM has already paid royalties to Kodak. (Ex. A at 27-31.) But what is relevant to the calculation of the royalty base is how many cameras sold by Pentax were previously the subject of an ***authorized sale*** by an OEM, ***not*** how many digital cameras were subject to an ***actual royalty payment*** by an OEM. (*See supra* Parts II.B.1, II.B.2.) Accordingly, Mr. Thomas' methodology for calculating the royalty base in this case is fundamentally flawed and inconsistent with applicable legal principles. Mr. Thomas' methodology is thus unreliable, and Mr. Thomas' opinions regarding the royalty base in this case should be excluded from evidence. *Malletier*, 525 F. Supp. 2d at 572; *Am. Med. Sys.*, 712 F. Supp. 2d at 901.

>    **C.   Mr. Thomas' Opinions Regarding the Royalty Base at Issue in This Case Should Be Excluded as a Matter of Law Because It Is Contrary to Kodak's Repeated Concession That It Cannot Seek To Recover a Double Royalty**

Even if the doctrine of patent exhaustion did not apply here (which it does), Mr. Thomas' opinions regarding cameras purchased by Pentax from licensed OEMs should still be excluded. As noted above, Kodak has repeatedly conceded that it cannot seek and is not seeking more than one royalty per digital camera. (*E.g.*, Ex. G, at 5:16-17; *see also* Ex. A at 26.) But Kodak has ***already*** sought royalties on digital cameras purchased by Pentax from Asia Optical, Altek, and Sanyo. Indeed, Kodak brought litigation against Asia Optical seeking to recover "royalties on ***all*** of [Asia Optical's] sales of digital cameras as an OEM." (Ex. K, at 10 (emphasis added).) Similarly, Kodak brought litigation against Altek seeking to recover "royalties on ***all*** of [Altek's] sales of digital cameras as an OEM, including but not limited to its sales to Sanyo." (Ex. J, at 11

10

(emphasis added).) And not only has Kodak already sought royalties on OEM sales through litigation, Kodak has already received or is soon to receive royalties for those OEM sales, as Kodak's claim for royalties against Asia Optical has been settled and Kodak's claim for royalties against Altek is pending. (Exs. L, B.)

By Kodak's own admission, it should not be permitted to seek royalties a second time on the same digital cameras (*i.e.*, those that Pentax purchased from Asia Optical, Altek, and Sanyo). Thus, for this reason as well, Mr. Thomas' opinions regarding digital cameras purchased by Pentax from licensed OEMs (including his opinion that such cameras should be included in the royalty base in this case when they were already included in the royalty base in other cases that Kodak brought against licensed OEMs) are unreliable and should be excluded.

> **D. Mr. Thomas' Opinions Regarding the Royalty Base at Issue in This Case Should Be Excluded Because Mr. Thomas Is Unqualified To Offer Those Opinions**

By his own admission, Mr. Thomas has none of the "knowledge, skill, experience, training, or education" necessary to qualify him as an expert on any damages issues related to transfer pricing under Rule 702. At his deposition, Mr. Thomas explained that he had no familiarity at all with transfer pricing issues, having never studied such issues and having never had any practical experience involving those issues. (Ex. C at 14:22-15:2, 15:22-24, 16:11-23, 17:6-23.) Indeed, Mr. Thomas testified that he had never even heard of an Advanced Pricing Agreement—a type of agreement related to transfer pricing—prior to having read Dr. Becker's rebuttal report. (*Id*. at 17:24-18:7, 18:16-19:4, 19:5-14.)

Given this complete lack of "knowledge, skill, experience, training, or education" related to damages issues involving transfer pricing, Kodak cannot satisfy its burden of showing that Mr. Thomas is qualified to offer damages opinions in this case. *Daubert*, 509 U.S. at 593 n.10; *Williams*, 506 F.3d at 160. Mr. Thomas is not qualified to identify transfer pricing as an issue

11

relevant to the determination of the royalty base in this case and/or to offer any opinions regarding how transfer pricing affects that determination. Thus, Mr. Thomas' opinions should be excluded from evidence at trial. *Dooney & Bourke*, 525 F. Supp. 2d at 642; *Eagleston*, 41 F.3d at 874.

## IV. CONCLUSION

For all of the reasons stated above, Ricoh respectfully requests that (i) the opinions and testimony of Mr. Thomas relating to whether OEMs paid Kodak royalties be excluded from evidence; (ii) the opinions and testimony of Mr. Thomas regarding the calculation of the number of Pentax cameras on which Ricoh purportedly owes a royalty to Kodak be excluded from evidence; and (iii) the opinions and testimony of Mr. Thomas regarding the revenues that should form the royalty base in this case be excluded from evidence.

DATED:  October 7, 2013            Respectfully submitted,

By /s/ *David Eiseman*
David Eiseman*
Melissa J. Baily
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davideiseman@quinnemanuel.com
melissabaily@quinnemanuel.com

John B. Quinn*
Ryan S. Goldstein*
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
johnquinn@quinnemanuel.com
ryangoldstein@quinnemanuel.com

Philip C. Sternhell*
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Ave. NW, Suite 825
Washington, DC 20004
(202) 538-8000
philipsternhell@quinnemanuel.com

*Admitted pro hac vice*
*Counsel for Defendant Ricoh Company, Ltd.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT, on the 7th day of October, 2013, I caused the above document to be served on all attorneys of record via electronic mail.


DATED: October 7, 2013

/s/   *Graham M. Pechenik*
     Graham M. Pechenik