UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY, </br></br> Plaintiff, </br></br> v. </br></br> RICOH COMPANY, LTD., </br></br> Defendant. | Case No. 12-CV-03109 (DLC) |

**EASTMAN KODAK COMPANY'S OPPOSITION TO RICOH COMPANY LTD.'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Eastman Kodak Company ("Kodak") respectfully submits this opposition to Ricoh Company, Ltd.'s ("Ricoh's") Renewed Motion for Judgment as a Matter of Law.  (Dkt. 209.)

**I.      INTRODUCTION**

The jury was asked to decide a single question at trial: Whether a Pentax DSLR camera sold with a lens in a kit is "self-contained" such that it is a covered Digital Camera under the parties' Patent License Agreement ("PLA").  After considering the evidence—including the testimony of Kodak's expert Dr. Kannan Ramchandran, the admissions of Ricoh's corporate witnesses, physical Pentax DSLR kits, and more than twenty Pentax DSLR manuals—the jury unanimously determined that the answer is "yes."  The Court has already found that the jury's verdict was well-supported by the evidence presented at trial.  In denying Ricoh's first Motion for Judgment as a Matter of Law on October 22, 2013, the Court concluded that the jury's verdict was "***entirely consistent with the evidentiary record***":

> I do think that elevating substance over form, it made sense to find that when a body and lens are shipped together by Pentax, that that is a self-contained camera, meeting the definition, but there were arguments on the other side too.  So you got a chance to present this to a jury.  They've given you their verdict.  ***I think it's entirely consistent with the evidentiary record as you know it and appropriate,***

*and I don't quarrel with the jury's verdict*.

(Ex. 1, Tr. at 338:15-22 (emphasis added).)

Ricoh has not set forth any reason for the Court to change this ruling and set the jury's verdict aside. Ricoh argues—just as it did when it made its initial Motion for Judgment as a Matter of Law—that a Pentax DSLR sold with a lens in a kit is not "self-contained" because the lens is not physically attached to the camera body when it is packaged for sale. But this argument wholly ignores: (i) the undisputed evidence that a Pentax DSLR kit includes in one package **all the components** needed to take a picture; (ii) the unrebutted evidence that Pentax specifically intends customers who buy DSLR kits to attach the lens to the camera body in order to take pictures; and (iii) the express language of the PLA itself, which states that a camera is self-contained *even if* it has removable components. (Dkt. 210-1, Plaintiff's Trial Exhibit 1, PLA at § 1.2 (defining Digital Camera to include devices that use "Removable Storage Media").)

The Court was correct in concluding that the jury's verdict was well-supported by the evidence at trial. Kodak requests that the Court again deny Ricoh's Motion for Judgment as a Matter of Law.

## II.  FACTUAL BACKGROUND

### A.  The Only Issue The Jury Was Asked To Decide At Trial Was Whether Pentax DSLRs Sold With A Lens In A Kit Are "Self Contained."

Kodak filed this suit in April 2012, alleging that Ricoh breached the PLA by failing to pay royalties on Digital Cameras sold by Pentax when Ricoh acquired Pentax in 2011. On August 9, 2013, the Court granted partial summary judgment for Kodak and held that Ricoh's failure to pay royalties on Pentax's Digital Camera sales was a breach of the PLA. In particular, the Court ruled that Pentax did not have a license to Kodak's Digital Camera patents (Dkt. 105, Summary Judgment Order at 28) and that Ricoh's failure to pay royalties on at least Pentax's

point-and-shoot Digital Cameras was a breach of the PLA.  (Dkt. 105, Summary Judgment Order at 28-29 ("Kodak has demonstrated that that Pentax was 'not previously licensed' under Kodak patents … because Pentax was not previously licensed by Kodak under Kodak patents Ricoh's failure to pay any royalties on Pentax's digital cameras sold during the term of the PLA constitutes a breach of that agreement.").)

The only issues that remained after the Court's summary judgment ruling were: (1) the amount of damages owed to Kodak on Pentax point-and-shoot Digital Camera sales; (2) whether Pentax DSLR cameras that were sold with a lens in a kit meet the PLA's definition of Digital Camera such that Ricoh also owed royalties on such DSLR kits; and (3) the amount of royalties owed on Pentax DSLR cameras sold with a lens in a kit.

On October 20, 2013, the parties reached a stipulation that resolved two of these final issues.  The parties stipulated that Ricoh owes Kodak $52,950,000 for unpaid royalties due on Pentax's point-and-shoot Digital Cameras and that Ricoh would owe Kodak an additional $22,830,000 if Pentax DSLR cameras sold with a lens in a kit are covered Digital Cameras.  (Dkt. 192, Stipulation at ¶¶ 5, 6.)  Accordingly, the only issue that remained for the jury to decide at trial was whether Pentax DSLR cameras sold with a lens in a kit meet the PLA's "Digital Camera" definition.

      **B.**    **The Overwhelming Evidence Presented At Trial Supports The Jury's Determination That Pentax DSLRs Sold With A Lens In A Kit Are "Self Contained."**

Ricoh's only argument that Pentax DSLRs sold with a lens in a kit are not covered by the PLA was that the cameras are not "self-contained," as required by the PLA's definition of covered "Digital Cameras."  (Dkt. 210-1, Plaintiff Trial Exhibit 1, PLA at § 1.2.)  In its summary judgment ruling, the Court construed "self-contained" to mean "complete in itself" or "complete, or having all that is needed, in itself."  (Dkt. 105, Summary Judgment Opinion at 37.)  The

- 3 -

parties do not dispute the Court's construction of "self-contained," which was set forth in the Court's charge to the jury. (Dkt. 209, Ricoh Br. at 2; Ex. 1, Tr. at 319:9-10.) Kodak presented substantial evidence at trial that a Pentax DSLR camera sold with a lens in a kit meets this agreed-upon definition.

***First***, Kodak's technical expert, Dr. Kannan Ramchandran, explained to the jury that that in his expert opinion, a Pentax DSLR camera sold with a lens in a kit is "complete in itself." Dr. Ramchandran has a PhD in Electrical Engineering and has worked on the design and development of digital cameras and digital imaging for 25 years. (Ex. 1, Tr. 98:8-19; *id.* at 104:8-11.) Ricoh did not at any point challenge Dr. Ramchandran's qualifications as a digital camera expert. At trial, Dr. Ramchandran presented unrebutted testimony that a DSLR sold with a lens in a kit includes everything that the user needs to take a picture and is therefore a complete picture taking device:

> Q. …Can you describe in detail the first basis for your opinion that the DSLR cameras that you studied are self-contained?
>
> A. Yes, so the first basis was the fact that the box that I purchased had the lens and the body next to each other in the box – to the body of the camera, I have a fully functional operational digital camera that satisfies the elements of the [Digital Camera] definition.
>
> Q. Now, sir, it can take a picture?
>
> A. It's a picture taking device that satisfies all the elements. And as I demonstrated in the court, I was able to take a picture using the components that were contained in the box that I bought in one piece.
>
> ***
>
> Q. … And sir, my question is, you testified that you studied DSLR models in which the camera body and this lens are sold together in the same package. Do those models that you have studied, do they meet the definition of self-contained that we have up on the screen?

>   A.   Yes they do.
>
>   Q.   Can you explain why?
>
>   A.   Yes …once I have attached the lens to the camera, which came in the box sitting next to each other, it has all the components that I need for it to be complete, meaning it has everything I need to take a picture … So it's certainly complete once I've attached the lens to the body …

(Ex. 1, Tr. 139:13-25; *id.* at 137:23-138:16; *see also id.* at 149:20-23 (a DSLR camera sold in a kit with a lens is a "self-contained, complete picture taking device."); *id.* at 187:14-17 ("…when Pentax sells me a kit with a lens and a body inside the kit, my opinion is that Pentax is intending for me to attach the lens to the body and that is a complete digital camera device.").)

***Second***, Kodak introduced into evidence deposition testimony from Pentax's own corporate witness confirming that, even according to Pentax, a DSLR camera with a lens is "complete":

>   Q.   Once you attach the lens to the camera, you have a complete camera, right?
>
>   A.   What do you mean by complete?
>
>   Q.   Once you attach the lens to a single-lens reflex camera you can take a picture, correct?
>
>   A.   That's correct, in the sense that you can take a photo, yes.

(Ex. 1, Tr. at 87:21-88:2 (deposition testimony of Kiyoshi Kawano, Ricoh's corporate designee on the structure, function, operation and technical features of Pentax Digital Cameras).)

***Third***, Ricoh's own fact witness regarding Pentax DSLRs, Kazumichi Eguchi, conceded during cross examination that a Pentax DSLR with a lens is a "complete picture taking device":

>   Q.   Sir, with a K-30 lens kit, the one that has both the [lens] and the camera body in the same box, is it possible for the user to take that kit, open the box, take the camera body, attach the lens, and as a result, have a picture taking device?

- 5 -

> A. Yes. You need to go through those processes to be able to do that.
>
> Q. And once you do, you have a complete picture taking device, right?
>
> A. Yes.

(Ex. 1, Tr. at 259:7-15.) In fact, Mr. Eguchi testified that DSLRs sold with a lens in a kit are assigned unique product codes (different than DSLR camera bodies or lenses sold by themselves) and tracked as unique products. (Ex. 1, Tr. at 248:4-17.)

*Fourth*, the jury was presented with actual Pentax DSLR kits including both a DSLR camera body and lens in the same box as physical exhibits. (*See e.g.*, Plaintiff's Trial Exhibit 48 (K-x Lens Kit) (admitted at Tr. 126:11-24); Defense Physical Exhibit 2 (K-30 Lens Kit) (admitted at Tr. 217:15-218:9); Defense Physical Exhibit 3 (K-30 Zoom Kit) (admitted at Tr. 234:21-235:11).) At trial, these physical exhibits were used to show the jury that a DSLR camera body sold with a lens in a kit is a complete picture taking device. Kodak's expert, for example, used the K-x DSLR (Plaintiff's Exhibit 48) kit to show the jury that a DSLR camera body sold with a lens contains all of the components of a "fully-functional camera that meets all the elements of the PLA." (Ex. 1, Tr. at 126:11-130:7.) Ricoh's DSLR witness similarly admitted when presented on cross examination with the physical Pentax K-30 DSLR kit (Defense Physical Exhibit 3) that a DSLR camera body sold with a lens in a kit is a "complete picture taking device." (Ex. 1, Tr. at 259:7-15.)

*Fifth*, Kodak presented unrebutted evidence that when Pentax sold a DSLR with a lens in a kit, it intended the user to attach the lens to the camera body in order to have a complete picture taking device without the need for any additional components. Kodak introduced *twenty-one* Pentax DSLR manuals that specifically instruct users how to attach the lens to the DSLR camera body:

- 6 -



(Ex. 2, Plaintiff's Trial Exhibit 51 [K-x Operating Manual] at 48; Ex. 3, Joint Stipulation Regarding Preadmitted Exhibits (listing 21 operating manuals admitted into evidence).)

Kodak's expert walked the jury through these instructions:

> Q.  … We have put up pages 48 and 49 … of the Plaintiff's Exhibit 51, the K-x operating manual.  Sir, what's going on at this portion of the manual?
>
> A.  This is exactly telling you how to do what I just did a few minutes earlier … So, the kit comes with the lens and the body sitting next to each other and you take them out, and page 48 or whatever page that is, tells you how you attach the lens to the body.  And in particular, you line up the red dots and you're ready to go.

ActiveUS 119669127v.1

> Q. What does that tell you, sir, about whether Pentax intends a purchaser to attach the lens to the camera?
>
> A. It's telling you exactly how to do it. So, clearly, it's intending that – Pentax is intending the user to attach the lens to the camera.

(Ex. 1, Tr. at 142:4-19; *see also id.* at 142:20-143:19 (discussing instructions provided in 20 other Pentax DSLR camera instruction manuals).)

Kodak's expert also provided the jury with unrebutted evidence that the user of Pentax DSLR kits is intended to attach the lens to the body:

> Q. Now, sir, the second basis for your opinion with respect to the cameras being self-contained, you said Pentax intends the lens to be attached to the camera. Can you explain that in detail?
>
> A. Yes. So, even before Pentax's intention, I would say it's a common-sensical thing. If you see, we all know that cameras need lenses. Even a kid knows that. So, if you have a lens and a camera body sitting next to each other obviously, the manufacturer is intending for the user to attach the lens to the camera. It's not really that difficult. Anyone can do this. Not only that, in case you don't have that common sense and you're wondering what these two components are doing there, you can pluck our the manual and the first thing it tells you is 'getting started.' And almost one of the first or second steps is installing the batteries and installing the lens, so it's clear that Pentax was intending for the user to install, to attach the lens to the body.

(Ex. 1, Tr. at 140:1-18; *see also id.* at 138:18-22 ("…the camera body was intended to be attached to the lens. That's why it came in the same box, and that's why the operating manual goes through this step by step. The first step of doing this is to attach the lens.").)

In fact, even Ricoh's witnesses admitted that Pentax intends DSLR users to attach the lens in the kit to the camera body in order to take a picture:

> Q. O.K. So in order to take a photo, the Pentax SLR needs to have a lens attached, correct?
>
> A. That's correct.

> Q.  And when you sell the Pentax SLR, you intend for the customer to attach the lens to the SLR, correct?
>
> A.  That's correct.
>
> Q.  Because otherwise, customers could never take a picture with a Pentax SLR, correct?
>
> A.  That's correct.

(Ex. 1, Tr. at 89:25-90:8 (deposition testimony of Kiyoshi Kawano, Ricoh's corporate designee on the structure, function, operation and technical features of Pentax Digital Cameras); *see also id.* at 253:11-19 (testimony from Mr. Eguchi that Pentax intends the consumer of its kits to attach the lens to the camera body.)

Ricoh did not call its own technical expert to rebut any of this evidence. In fact, not a single Ricoh witness testified at trial that a DSLR sold with a lens in kit could be anything other than a complete picture taking device.

After hearing all of the evidence, the jury returned its verdict that a DSLR camera sold with a lens in a kit is self-contained.  (Dkt. 203, Final Judgment.)

## C. The Court Already Determined That The Jury's Verdict Is "Entirely Consistent" With The Evidence Presented At Trial.

On October 22, 2013, at the close of Kodak's affirmative case, Ricoh moved for judgment as matter of law.  Ricoh argued, just as it does now, that a Pentax DSLR sold with a lens in a kit is not self-contained because the lens is not physically attached to the camera body in the box and the user has to attach the lens. (Ex. 1, Tr. at 225:2-227:3.)  The Court denied Ricoh's motion. (Ex. 1, Tr. at 339:5-9.)  The Court ruled that: (1) "it made sense to find when a body and lens are shipped together by Pentax, that that is a self-contained camera"; and (2) the jury's verdict was therefore "entirely consistent with the evidentiary record."   (Ex. 1, Tr. at 338:15-22.)

- 9 -

ActiveUS 119669127v.1

### III.     ARGUMENT

"A jury verdict should not be set aside lightly." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 515-16 (S.D.N.Y. 2013). Judgment as a Matter of Law should be granted only where there is a "***complete absence of evidence***" supporting the jury's verdict. *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 142 (2d Cir. 2008) (emphasis added). As the Court has already determined, that is far from the case here.

### A.     The Court Correctly Concluded That The Jury's Verdict Was "Entirely Consistent" With The Evidence Presented At Trial.

Kodak's argument at trial was straightforward. As the Court stated during trial, Kodak's position was that DSLRs sold with a lens in a kit are "complete" because: (1) they include in a single package all of the components necessary to take a picture; and (2) Pentax intends the user to attach the lens and body components in the kit in order to take a picture:

> [Dr. Ramchandran] made it clear, a body and a camera can't do the things on their own that are required by the definition of a digital licensed product in the PLA. You must attach them. And he's explained why he thinks they may fit within the definition of self-contained, because they were sold together in the same box and intended to be, in his view, attached . . .

(Ex. 1, Tr. at 163:12-18.)

Kodak presented overwhelming evidence supporting this argument. The evidence unequivocally showed that Pentax DSLRs sold with a lens in a kit include everything needed to take a picture. This was demonstrated by:

- *The testimony of Kodak's technical expert* (Ex. 1, Tr. 138:10-16 ("…once I have attached the lens to the camera, which came in the box sitting next to each other, it has all the components that I need for it to be complete, meaning it has everything I need to take a picture … So it's certainly complete once I've attached the lens to the body …"); *id.* at 139:23-25 ("…I was able to take a picture using the components that were contained in the box that I bought in one piece"));

- *The admissions of Ricoh's own corporate witness* (Ex. 1, Tr. 88:7-10 ("Q. You don't need any other components or assistance in order to take a picture.  A.  I think that's the case.  If you mean that it doesn't need any other components."));

- *The trial testimony of Ricoh's DSLR witness*  (Ex. 1, Tr. 259:7-15 ("Q.  Sir, with a K-30 lens kit, the one that has both the kit and the camera body in the same box, is it possible for the user to take that kit, open the box, take the camera body, attach the lens, and as a result, have a picture taking device?  A.  Yes.  You need to go through those processes to be able to do that.  Q.  And once you do, you have a complete picture taking device, right?  A.  Yes.")); and

- *Physical DSLR kits admitted as exhibits* (Plaintiff's Trial Exhibit 48 (K-x lens kit); Defense Physical Exhibit 2 (K-30 lens kit); Defense Physical Exhibit 3 (K-30 zoom kit); *see also* Ex. 1, Tr. at 126:11-130:7 (K-x DSLR camera kit with a lens contains all components needed to take a picture); *id.* at 259:7-15 (K-30 DSLR camera kit with lens is a "complete picture taking device.").)

Similarly, the evidence clearly demonstrated that Pentax intends its users to attach the lenses included in DSLR kits to the camera body in order to take a picture.  This was proven by:

- *Twenty-one Pentax user manuals*  (Ex. 3, Joint Stipulation Regarding Preadmitted Exhibits (listing 21 DSLR camera operating manuals); Ex. 1, Tr. at 142:17-19 ("It's telling you exactly how to do it.  So, clearly, it's intending that – Pentax is intending the user to attach the lens to the camera."));

- *Testimony from Kodak's technical expert* (Ex. 1, Tr. 138:18-19 ("…the camera body was intended to be attached to the lens.")); and

- *The admissions of Ricoh's own witnesses* (Ex. 1, Tr. 90:3-5; ("Q.  And when you sell the Pentax SLR, you intend for the customer to attach the lens to the SLR, correct?  A.  That's correct"); *id.* at 253:11-19 (Pentax intends for consumers to use the lens provided in its DSLR camera kits).).

Based on this evidence, the jury was entirely justified in concluding that Pentax DSLRs sold with a lens in a kit are complete, self-contained Digital Cameras under the PLA.  *See Altman v. Port Auth. of New York & New Jersey*, 879 F. Supp. 345, 351 (S.D.N.Y. 1995) (denying Defendant's motion for judgment as a matter of law in part because the jury's verdict comports with "common sense" and the facts of the case); *see also* Ex. 1, Tr. at 338:15-22 (finding the jury's verdict is "entirely consistent" with the evidentiary record).

- 11 -

### B. Ricoh's Arguments Are Fundamentally Flawed.

Ricoh makes two arguments to try to overturn the jury's verdict. Neither argument comes close to showing a "complete absence of evidence" for the jury's verdict.

First, Ricoh asserts that Kodak "proved Ricoh's position" by arguing that DSLRs are not complete unless and until the lens is physically attached to the camera body. (Dkt. 209, Ricoh Br. at 1, 8-9.) That is incorrect. To the contrary, as the Court recognized, Kodak's position throughout trial was that a DSLR is complete if it is sold in a single package that contains all the components necessary to capture an image. (Ex. 1, Tr. 163:15-18 ("[Dr. Ramchandran] explained why he thinks [DSLRs sold as a kit] may fit within the definition of self-contained, because they were sold together in the same box and intended to be, in his view, attached"); *id.* at 139:23-25 ("…I was able to take a picture using the components that were contained in the box that I bought in one piece"); *id.* at 138:18-19 ("…the camera body was intended to be attached to the lens.").) Indeed, even Ricoh does not (and could not) dispute that a DSLR kit contains all of the components necessary to take a picture.

Second, Ricoh argues that under Section 4.3 of the PLA, the Digital Camera definition is met only by cameras that have all components physically attached to one another at the time of sale. (Dkt. 209, Ricoh Br. at 7-8.) But that is not what Section 4.3 provides. Indeed, Section 4.3 does not say *anything* about the definition of "Digital Cameras" or what cameras can be considered "self-contained." Section 4.3 simply states that covered Digital Cameras (Ricoh "Licensed Products") are considered sold for purposes of calculating royalties as of the date the cameras are put into commercial use:

> For the purpose of this Agreement, Ricoh Licensed Products shall be considered sold when first placed in commercial use by Ricoh or any of its Subsidiaries, such as when billed out, delivered to the trade or exported.

(Dkt. 210-1, Plaintiff's Trial Exhibit 1, PLA at § 4.3.)

Contrary to Ricoh's argument, the PLA explicitly states that a camera can be "self-contained" (and therefore covered by the Digital Camera definition), even if it has removable components.  In particular, at Section 1.2, the PLA states that a camera meets the "Digital Camera" definition even if it has removable memory:

> "Digital Camera" shall mean a portable, self-contained device utilizing an Area Image Sensor having at least 300,000 pixels, as well as electronics and optical elements that captures still or motion images of visible radiation and (a) records a digital signal representing such images on a **Removable Digital Storage Media** or (b) stores at least two such images in internal memory.

(*id.* at § 1.2 (emphasis added).)  No provision of the PLA states that a camera falls outside of the Digital Camera definition simply because it has a detachable component.

### IV.  CONCLUSION

The Court's prior ruling denying Ricoh's Motion for Judgment as a Matter of Law was correct.  The evidence presented at trial—including Kodak's expert testimony, Ricoh's own admissions, physical exhibits, and more than twenty user manuals—overwhelmingly supports the jury's determination that Pentax DSLR kits include all components necessary to take an image and, thus, are self-contained.  Kodak respectfully requests that the Court deny Ricoh's Renewed Motion for Judgment as a Matter of Law.

Respectfully submitted,

Dated: New York, New York  
      December 20, 2013

/s/ *Robert J. Gunther, Jr.*  
Robert J. Gunther, Jr.  
WILMER CUTLER PICKERING HALE & DORR, LLP  
7 World Trade Center  
250 Greenwich Street  
New York, New York 10022  
Tel: (212) 230-8800  
Fax: (212) 230-8888  
robert.gunther@wilmerhale.com

- 13 -

ActiveUS 119669127v.1

        Michael J. Summersgill
        Jordan L. Hirsch
        WILMER CUTLER PICKERING HALE & DORR, LLP
        60 State Street
        Boston, Massachusetts 02109
        Tel: (617) 526-6000
        Fax:(617) 526-5000

        *Attorneys for Eastman Kodak Company*