```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
EASTMAN KODAK COMPANY,                   :
                         Plaintiff,      :      12 Civ. 3109 (DLC)
                                         :
              -v-                        :      OPINION AND ORDER
                                         :
RICOH COMPANY, LTD.,                     :
                                         :
                         Defendant.      :
                                         :
                                         :
---------------------------------------- X
```

APPEARANCES

For the Plaintiff:

Robert J. Gunther
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Michael J. Summersgill, and Jordan L. Hirsch
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109


For the Defendant:

David Eiseman, and Philip C. Sternhell
Quinn Emanuel Urquhart & Sullivan LLP
1299 Washington Ave. NW, Suite 825
Washington, DC 20004

Ryan S. Goldstein
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Melissa J. Bailey

Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

DENISE COTE, District Judge:

On December 3, 2013, Ricoh Company, Ltd. ("Ricoh") filed a renewed motion for judgment as a matter of law, pursuant to Rule 50, Fed.R.Civ.P., to vacate a jury verdict entered against it in this contract action brought by Eastman Kodak Company ("Kodak"). For the reasons set forth below, the motion is denied.

BACKGROUND

In April 2012, Kodak filed this suit against Ricoh, alleging that Ricoh had breached the terms of a 2001 Patent Licensing Agreement ("PLA"), by failing to pay royalties on "Digital Cameras" (a term defined below) sold by Pentax, which was a company that Ricoh acquired in 2011. Pentax sold two types of digital cameras relevant to this action: point-and-shoot cameras, and Digital Single-Lens Reflex ("DSLR") cameras. Furthermore, Pentax sold DSLR cameras in at least two ways: the DSLR camera body was sometimes sold on its own; sometimes it was sold in a "kit" with one or more DSLR lenses. Kodak contended that Ricoh was liable under the PLA to pay royalties on Pentax's sales of point-and-shoot cameras and DSLR camera bodies sold in

a kit with a DSLR lens.

In an Opinion and Order of August 9, 2013, partial summary judgment was granted to Kodak.  <u>Eastman Kodak Co. v. Ricoh Co., Ltd.</u>, 12 Civ. 3109 (DLC), 2013 WL 4044896 (S.D.N.Y. Aug. 9, 2013).  It was determined that, because Pentax did not have a license to Kodak's patents for digital cameras, Ricoh was liable under the PLA to pay royalties on all Pentax digital cameras meeting the PLA's definition of Digital Cameras.  <u>Id.</u> at *8-*11.  It was also determined that Pentax's point-and-shoot cameras met the Digital Cameras definition.  <u>Id.</u> at *13-*14.  There remained, however, a question of fact as to whether Pentax's DSLR camera bodies sold in a kit with a DSLR lens were Digital Cameras, as defined in the PLA.  <u>Id.</u> at *14-*15.

In an Order of August 9, the case was placed on the October 2013 trial-ready calendar.  In an Order of September 10, the trial was scheduled for October 21.

On the eve of trial, the parties stipulated to the amount of damages on Pentax's point-and-shoot cameras and, if Ricoh were liable for royalties on DSLR cameras, the amount of damages on Pentax's DSLR camera bodies sold in a kit.  Thus, the sole issue for the jury to determine was whether Pentax's DSLR camera bodies sold in a kit with a DSLR lens met the Digital Cameras definition in the PLA.

The PLA defined "Digital Camera" as follows:

> [a] portable, <u>self-contained device</u> utilizing an Area Image Sensor having at least 300,000 pixels, as well as electronics and optical elements that captures still or motion images of visible radiation and (a) records a digital signal representing such images on a Removable Digital Storage Media or (b) stores at least two such images in internal memory.

(emphasis added). The key dispute was whether a DSLR camera body sold in a kit with a DSLR lens was a "self-contained device." At summary judgment, the term "self-contained" had been defined as "complete in itself" or "complete, or having all that is needed, in itself." <u>Eastman Kodak Co. v. Ricoh Co., Ltd.</u>, 2013 WL 4044896, at *14. The parties did not object at trial to that definition.

Trial began on October 21. An eight-person jury was chosen. Kodak's case-in-chief consisted principally of the following items of evidence: (1) physical exhibits of actual Pentax DSLR kits containing both a DSLR camera body and a DSLR lens; (2) Pentax user manuals instructing users how to attach the DSLR lens to the DSLR camera; (3) expert testimony from Dr. Kannan Ramchandran, stating that when a DSLR camera body is "attached" to a DSLR lens, it is able to take a photograph and is therefore "complete"; (4) deposition testimony from a Pentax employee, Kiyoshi Kawano, stating essentially the same; and (5) other testimony suggesting that Pentax intended for users to

attach the DSLR lenses included in the kits to the DSLR camera bodies.

On October 22, at the conclusion of Kodak's affirmative case, Ricoh moved for judgment as a matter of law pursuant to Rule 50, Fed.R.Civ.P.  The Court heard argument and reserved ruling on the motion.  Ricoh then presented its case, which consisted principally of the testimony of Ricoh employee, Kazumichi Eguchi, who testified in relevant part that Pentax never sold kits in which the DSLR camera body and DSLR lens were attached as they rested in the kits.

In the afternoon of October 22, the jury was charged as follows on the issue critical to the motion:

> Kodak contends that Ricoh owes royalties to it for Digital Single Lens Reflex ("DSLR") camera bodies and lenses that were sold together by Pentax in a kit. Ricoh denies that it has such an obligation.
>
> It has been determined that Ricoh is required to pay royalties to Kodak under a patent licensing agreement, which I will call the "PLA."  Specifically, it has been determined that Ricoh is required to pay royalties to Kodak based on the Worldwide Net Sales of Licensed Products of a company called Pentax, which Ricoh acquired in 2011.  Under Section 4.3 of the PLA, a "Licensed Product" is "considered sold when first placed in commercial use."  The term "Licensed Product" is defined in the PLA to mean "Digital Camera," with certain exclusions that do not affect the issue before you.
>
> The term "Digital Camera" is defined in Section 1.2 of the PLA to mean:
>     [a] portable, self-contained device

>       utilizing an Area Image Sensor having at
>       least 300,000 pixels, as well as electronics
>       and optical elements that captures still or
>       motion images of visible radiation and (a)
>       records a digital signal representing such
>       images on a Removable Digital Storage Media
>       or (b) stores at least two such images in
>       internal memory.
>
> The parties disagree whether a DSLR camera body and
> lens are "a self-contained device" when sold together
> by Pentax as a kit.  Your task is to resolve that
> dispute.
>
>       The term "self-contained" means "complete in
> itself" or "complete, or having all that is needed, in
> itself."  The burden is on Kodak to prove that a DSLR
> camera body sold by Pentax in a kit that contains at
> least one DSLR lens is "a self-contained device" and
> therefore a "Digital Camera" under the terms of the
> PLA.

The jury spent less than two hours deliberating on October 22 before breaking for the end of the day.  The jury returned the next morning and, within one hour of resuming deliberations, returned a unanimous verdict in Kodak's favor.

After the jury was dismissed, the Court addressed and denied Ricoh's motion for judgment as a matter of law:

>       I do think that elevating substance over form, it
> made sense to find that when a body and lens are
> shipped together by Pentax, that that is the self-
> contained camera, meeting the definition, but there
> were arguments on the other side too.
>
>       So you got a chance to present this to the jury.
> They've given you their verdict.  I think it's
> entirely consistent with the evidentiary record as you
> know it and appropriate, and I don't quarrel with the
> jury's verdict.

6

On November 5, a final judgment was entered in favor of Kodak against Ricoh in the amount of $75,780,000, pursuant to the damages figures set forth in the joint-stipulation. On November 18, Ricoh posted a supersedeas bond, thereby staying enforcement of the judgment.

On December 3, Ricoh renewed its motion for judgment as a matter of law. The motion was fully submitted as of January 10, 2014.

DISCUSSION

Ricoh's motion for judgment as a matter of law is made pursuant to Rule 50, Fed.R.Civ.P. Rule 50 provides, in relevant part, that judgment as a matter of law may be entered against a party only if "a reasonable jury would not have a legally sufficient basis to find for [a] party on that issue." Rule 50(a)(1), Fed.R.Civ.P.

"This is a particularly heavy burden where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." Carroll v. Cnty. of Monroe, 712 F.3d 649, 651 (2d Cir. 2013) (per curiam) (citation omitted). In such circumstances, a court "may set aside a verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have

been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Id. (citation omitted).  Furthermore, the court

> is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.  The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.

Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted).

Ricoh has not met the particularly heavy burden necessary to set aside the verdict.  There was evidence from which a reasonable and fair minded jury could conclude, as it did in ruling for Kodak, that a DSLR camera body sold in a kit with an unattached DSLR lens is a "self-contained device."

There was no dispute at trial that the DSLR camera body and DSLR lens are not attached as they rest in the Pentax kits at the time of sale and further that a DSLR camera body is unable to take a photograph until a DSLR lens is attached.  Thus the central dispute that the jury was being asked to resolve was whether a DSLR camera body sold in a single kit with, <u>but not attached to</u> a DSLR lens, is a device that is complete, or having

all that is needed, in itself.

The jury's finding that a DSLR camera body sold in a kit with an unattached DSLR lens is "complete" was adequately supported by the evidence. The jury was presented with examples of the actual "kits" at issue in this case. These kits consisted of a single rectangular box containing both a DSLR camera body and a DSLR camera lens. In some instances, the body and lens were themselves contained within smaller rectangular boxes housed within the larger rectangular box that constituted the kit. In all instances, the DSLR camera body and the DSLR camera lens were in close physical proximity and part of the same overall box that constituted the "kit." Additionally, the jury was presented with the live testimony of Kodak's expert witness, Dr. Ramchandran, and the deposition of testimony of Pentax employee Mr. Kawano. Both pieces of testimony established that when the DSLR camera body is "attached" to the DSLR lens, it is capable of taking a photograph and is therefore "complete." Having seen the kits containing both a DSLR camera body and DSLR lens in close proximity, and having heard testimony establishing that a DSLR camera body is "complete" when it is "attached" to a DSLR lens, a reasonable and fair minded jury could reach the conclusion that the DSLR camera body, even when detached from the DSLR lens when sold in such a

kit, is a "complete" device, and thus a "self-contained device" under the PLA.

Ricoh's instant motion is, in essence, based on a single argument.  It proceeds as follows:  Kodak's evidence establishes that a DSLR camera body is "complete" when it is "attached" to a DSLR lens.  It is undisputed that the DSLR camera body was never sold "attached" to a DSLR lens in the kits at issue.  Accordingly, there is no evidence to support the jury's verdict that the DSLR camera bodies were "complete" and thus "self-contained" devices when first placed in commercial use.

While there is a formalistic appeal to this argument, the argument nevertheless fails because it was the jury's task to evaluate the evidence, and the parties' arguments from that evidence, and it rejected this very argument, which Ricoh made at trial.  To be sure, Dr. Ramchandran's and Mr. Kawano's testimony only establishes that a DSLR camera body is "complete" when it is "attached" to a DSLR lens.  But the role of the jury in this case was to answer the question of whether -- in light of the overall evidence, including the physical proximity of the DSLR camera body and DSLR lens in a single kit -- a DSLR camera body sold in such a kit was a "complete" device pursuant to the PLA definition, even though the body was not "attached" to a DSLR lens at the moment of sale.

10

In making this determination, the jury was charged to draw on its "reason and experience and common sense."  This is, after all, the fundamental purpose of a jury in our justice system.  As the Supreme Court stated well over a century ago:

> If cases were to be decided alone by the application of technical rules of law and evidence, it could better be done by men who are learned in the law, and who have made it the study of their lives; and while it is entirely true that the jury are bound to receive the law from the court, and to be guided by its instructions, it by no means follows that they are to abdicate their common sense, or to adopt any different processes of reasoning from those which guide them in the most important matters which concern themselves.  Their sound common sense, brought to bear upon the consideration of testimony, and in obedience to the rules laid down by the court, is the most valuable feature of the jury system, and has done more to preserve its popularity than any apprehension that a bench of judges will willfully misuse their power.

<u>Dunlop v. United States</u>, 165 U.S. 486, 499-500 (1897).

Here, the jury deliberated and chose -- in the language of this Court's ruling on the initial motion for judgment as a matter of law -- "substance over form," a determination that was entirely appropriate given its function and one that was also entirely consistent with the evidentiary record.  Ricoh may be unhappy with the jury's choice, but that is an insufficient basis to set aside its verdict.  Ricoh does not argue in this motion that there was any error in the charge given to the jury.  Ricoh's formalistic argument does not meet the high bar to

11

prevail on this renewed motion for judgment as a matter of law under Rule 50, Fed.R.Civ.P.[1]

CONCLUSION

Ricoh's December 3, 2013 motion is denied.

Dated:   New York, New York
         March 6, 2014

                              _____
                                       DENISE COTE
                              United States District Judge

---

[1] Ricoh's remaining arguments respond to arguments that Kodak made in its opposition but on which this Court does not rely. Thus, they are not addressed in this Opinion. One example is Ricoh's argument that Kodak's evidence regarding Pentax's intent cannot be considered because the PLA defines "Digital Cameras" at the time of sale. Because this Opinion does not rely on Kodak's evidence regarding Pentax's intent, Ricoh's argument need not be addressed.