**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,        )<br>                                                 )<br>                    Plaintiff,        )<br>                                                 )<br>            v.                                   )<br>                                                 )<br>RICOH COMPANY, LTD.,               )<br>                                                 )<br>                    Defendant.       )<br>                                                 )<br>                                                 ) | Case No. 12-CV-03109 (DLC) |

**EASTMAN KODAK COMPANY'S OPPOSITION TO RICOH COMPANY LTD.'S
MOTION FOR RELIEF FROM JUDGMENT**

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR, LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE & DORR, LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax:(617) 526-5000

*Attorneys for Eastman Kodak Company*

**REDACTED**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 3

   A.   The Undisputed Record Evidence Shows that Ricoh Owes $8.46 Million
        in Royalties On Digital Cameras That Pentax Purchased from Sanyo. ................. 3

   B.   Ricoh Stipulated That It Owes the $8.46 Million. ................................................. 7

   C.   The Damages Stipulation Allows Ricoh to Seek to Modify the Judgment
        Only If OEMs "Make" Payments to Kodak After Entry of Judgment. ................. 8

III. ARGUMENT ....................................................................................................... 9

   A.   Ricoh's Motion Should Be Denied Because The Undisputed Evidence
        Uncovered During Discovery Shows that the Parties' Damages Stipulation
        Is Correct. ............................................................................................................ 10

   B.   Ricoh's Motion Should Be Denied Because Ricoh Waived Any Argument
        That It Does Not Owe the $8.46 Million. ............................................................. 13

   C.   Kodak Would Be Prejudiced By the Modification That Ricoh Seeks ................. 15

IV.  CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Carnegie v. Miller,*
  86 CIV. 8658 (KMW), 1991 WL 221102 (S.D.N.Y. Oct. 16, 1991) ......................................12

*Davila v. Chapman Indus. Corp.,*
  89 C 4540, 1990 WL 186480 (N.D. Ill. Nov. 20, 1990) ..........................................................16

*Davis v. Musler,*
  713 F.2d 907 (2d Cir. 1983) ....................................................................................................12

*Foley v. United States,*
  645 F.2d 155 (2d Cir. 1981).....................................................................................................12

*Gonzalez v. Armac Indus., Ltd.,*
  768 F. Supp. 107 (S.D.N.Y. 1991)...........................................................................................15

*Green ex rel. Estate of Green v. Advanced Cardiovascular Imaging,*
  07 CIV.3141 JCF, 2009 WL 3154317 (S.D.N.Y. Sept. 30, 2009) ...........................................12

*In re Master Key Antitrust Litig.,*
  76 F.R.D. 460 ...........................................................................................................................16

*Jedrejcic v. Croatian Olympic Comm.,*
  190 F.R.D. 60 (E.D.N.Y. 1999)................................................................................................13

*Katz v. Mogus,*
  07 CIV. 8314 PKC KNF, 2012 WL 263462 (S.D.N.Y. Jan. 25, 2012)....................................12

*LeBlanc v. Cleveland,*
  248 F.3d 95 (2d Cir. 2001).......................................................................................................12

*Nemaizer v. Baker,*
  793 F.2d 58 (2d Cir. 1986) .........................................................................................................9

*Peterson v. Term Taxi, Inc.,*
  429 F.2d 888 (2d Cir. 1970) ....................................................................................................12

*Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,*
  507 U.S. 380 (1993) .................................................................................................................12

*Progressive Cas. Ins. Co. v. Liberty Mut. Ins. Co.,*
  91 CIV. 2477 SWK LB, 1996 WL 524339 (S.D.N.Y. Sept. 13, 1996)..............................13, 14

*Schlafman v. State Univ. of New York, Farmingdale*,
    541 F. App'x 91 (2d Cir. 2013)......................................................................................10

*Tetra Sales (U.S.A.) v. T.F.H. Publications, Inc.*,
    727 F. Supp. 92 (S.D.N.Y. 1989)..........................................................................11, 16

*United States v. Bank of New York*,
    14 F.3d 756 (2d. Cir. 1994) .........................................................................................9, 13

*United States v. Cirami*,
    563 F.2d 26 (2d Cir. 1977).............................................................................................12

**RULES**

Fed. R. Civ. P. 60 ........................................................................................... passim

Eastman Kodak Company ("Kodak") respectfully submits this opposition to Ricoh Company, Ltd.'s ("Ricoh's") Motion for Relief from Judgment (Dkt. 220).

## I.     INTRODUCTION

On November 5, 2013, after denying Ricoh's Motion for Judgment as a Matter of Law, the Court entered Final Judgment in favor of Kodak. Ricoh's Renewed Motion for Judgment as a Matter of Law was denied on March 6, 2014. (Dkt. 227.) Now, Ricoh argues for the first time— ten months after the close of fact discovery, four months after the jury returned a verdict, and more than three months after Final Judgment was entered—that the amount of damages *to which Ricoh stipulated* was incorrect and that it should be excused from paying $8.46 million of the Final Judgment. Ricoh is wrong and its motion should be denied for three principal reasons.

*First*, Ricoh's argument is directly contrary to the undisputed factual record. Ricoh argues that it "made a mistake" when it agreed to pay $8.46 million in damages on Digital Cameras that Pentax purchased from Sanyo. Specifically, Ricoh argues that a spreadsheet that it produced ("the OEM spreadsheet") allegedly tracks Sanyo's sales to Pentax by "fiscal quarter" not "calendar quarter" and that, as a result, Ricoh owes none of the $8.46 million. But the undisputed record evidence proves that there was no mistake. The OEM spreadsheet itself confirms that it lists Sanyo's sales to Pentax by calendar quarter. It shows that Pentax first released and began selling one of its most successful Sanyo-manufactured cameras—the Optio 550—in March 2003. It also shows that Pentax first purchased the Optio 550 from Sanyo in "Q1 2003." Pentax must have purchased the Optio 550 from Sanyo before first selling it. The "Q1 2003" purchase date therefore must include March 2003 or earlier. This is possible only if Q1 2003 is the first *calendar* quarter of 2003 (January to March 2003)—not if Q1 2003 is the first Sanyo *fiscal* quarter of 2003 (April to June 2003) as Ricoh now argues. Indeed, Ricoh's own damages expert, Dr. Brian Becker,

"verified" **on four separate occasions** during discovery that Kodak's expert's analysis of the spreadsheet (including that the spreadsheet tracks sales by calendar quarter) was correct.

**Second**, Ricoh waived any argument that the OEM spreadsheet tracks sales by fiscal quarter and thus that Ricoh does not owe the $8.46 million.  Ricoh could have made this argument at any time before trial.  There was nothing preventing Ricoh from obtaining the alleged "confirmation" from Sanyo that it claims to have now obtained.   But it never did.  Instead, after a full opportunity to take damages discovery, Ricoh **stipulated** that it owes all of the $8.46 million and expressly agreed that it would **not** challenge these damages.  Contrary to Ricoh's new assertion, the damages stipulation does not permit the parties to re-litigate the agreed-upon damages amount by later arguing that OEMs had actually made additional payments to Kodak as of the time of the stipulation.  Instead, paragraph 12 of the stipulation states that the parties can modify the damages amount only if OEMs **"make"** future payments to Kodak for Pentax cameras after the date of the stipulation:

> The provisions of this paragraph are subject to Ricoh's rights to seek to modify, vacate, or obtain other relief from judgment with respect to the stipulated dollar amount . . . **with respect to any payments that Altek, Asia Optical, and/or Sanyo <u>make</u> to Kodak** to the extent such payments represent payments on Pentax digital cameras.

(Dkt. 188, Damages Stipulation ¶ 12 (emphasis added).)  Having affirmatively decided not to pursue the argument that it now makes—despite having the opportunity to do so—Ricoh cannot use Rule 60 to get a do-over.

**Third,** allowing Ricoh to now reargue one portion of the stipulated damages amount would cause Kodak significant prejudice.   By first raising this issue months after the close of discovery and the subsequent trial (despite the fact that it could have raised the issue at any point during discovery), Ricoh has effectively precluded Kodak from fully testing the argument.  Moreover,

both parties made concessions in reaching the stipulated damages amount.  Ricoh should not be permitted to re-argue one portion of the stipulation while Kodak is stuck with the concessions that it made in the other parts of the stipulation.

Accordingly, Kodak respectfully requests that the Court deny Ricoh's motion.

## II.    FACTUAL BACKGROUND

### A.    The Undisputed Record Evidence Shows that Ricoh Owes $8.46 Million in Royalties On Digital Cameras That Pentax Purchased from Sanyo.

Kodak filed this case on April 19, 2012, asserting that Ricoh breached the parties' patent license agreement ("PLA") by failing to pay royalties on Digital Cameras sold by Pentax when Ricoh acquired Pentax.  (Dkt. 1, Complaint.)  Early in the case, Ricoh argued that, under the doctrine of "patent exhaustion," it should not have to pay royalties on any Digital Cameras that Pentax purchased from any Original Equipment Manufacturers ("OEMs") (including Sanyo) that were Kodak licensees, irrespective of whether these OEMs had paid royalties to Kodak.  (*See e.g.*, Dkt. 18, Ricoh Answer, at 76-78; Dkt. 51, May 8, 2013 Hearing Tr. at 2-5.)

The Court rejected this argument.  Instead, the Court ruled that: (i) Ricoh is excused from paying royalties on Digital Cameras that Pentax purchased from OEMs only if there was evidence that the OEMs had already paid royalties to Kodak on those specific cameras (Dkt. 105, Summary Judgment Opinion and Order, at 33-34; Ex. 1, Pretrial Hearing Tr. at 31:18-21); and (ii) Ricoh bears the burden of showing that OEMs—including Sanyo—had already paid royalties to Kodak on the Digital Cameras that Pentax purchased (Ex. 1, Pretrial Hearing Tr. at 10:2-12).

Ricoh produced only one piece of evidence during discovery to try to meet this burden:  a spreadsheet that it generated listing the Digital Cameras that Pentax purchased from Sanyo and other OEMs.  (Dkt. 234-2, Becker Decl. Ex. 2 (the "OEM spreadsheet").)  As shown below, the OEM spreadsheet shows: (i) the Digital Camera models that Pentax purchased from OEMs; (ii) the

Pentax release date of the Digital Cameras that Pentax purchased from OEMs (*i.e.* when Pentax started selling the cameras to its customers); and (iii) the number of Digital Cameras that Pentax purchased from OEMs each quarter:



(*Id.* at 4 (highlighting added).)

The OEM spreadsheet does not, however, show whether or to what extent the OEMs actually paid royalties to Kodak.  The parties agreed that to determine whether the OEMs had paid royalties to Kodak on the Digital Cameras that Pentax purchased, they would compare the OEM spreadsheet with the royalty reports that the OEMs submitted to Kodak.  Specifically, the parties agreed that with respect to Sanyo they would:

1. Use the OEM spreadsheet to determine what Digital Camera models Sanyo sold to Pentax each quarter;

2. Identify for each quarter any Digital Camera models that were listed on the OEM spreadsheet but that Sanyo did not report to Kodak in its royalty reports; and

3. Use the OEM spreadsheet to determine for each quarter the number of unreported Digital Cameras that Sanyo sold to Pentax.

Ricoh agreed that it would owe royalties on these unreported Digital Cameras. (Dkt. 232-11, Thomas Report at 26-34; Dkt. 187-4, Becker Rep. at 19-20, 22.)

Ricoh admits that if the OEM spreadsheet tracks the Digital Cameras that Sanyo sold to Pentax by calendar quarter, this analysis results in $8.46 million in royalties that Sanyo did not pay to Kodak and that Ricoh must pay.  (Dkt. 231, Ricoh Br. at 2, 9; Dkt. 234, Becker Decl. ¶¶ 10-13.) Ricoh now asserts, however, that the OEM spreadsheet actually shows sales by *fiscal quarter* and, therefore, Sanyo already paid Kodak the full $8.46 million.  But the undisputed evidence

uncovered during eleven months of discovery shows that the OEM spreadsheet in fact tracks sales by *calendar quarter*, not fiscal quarter.

The OEM spreadsheet itself shows that sales are tracked by calendar quarter.  Ricoh's expert represented that the OEM spreadsheet shows Pentax's Digital Camera purchases "[f]rom May 1, 2002"—the date the Kodak-Ricoh PLA became effective and thus the date the damages period began.  (Dkt. 187-4, Becker Report at 19 (representing that "Table 4" of report, which is based on OEM spreadsheet, shows Pentax purchases from May 1, 2002).)  The first quarter that Ricoh included on the OEM spreadsheet is Q2 2002, which on a calendar year basis, includes May 2002.  (Dkt. 234-2, OEM Spreadsheet.)  But if, as Ricoh now asserts, the spreadsheet tracks sales by fiscal quarter, this would mean that first month included on the OEM spreadsheet is *July 2002*.[1] Ricoh's representation that the spreadsheet covers Q2 sales starting May 1, 2002 (*i.e.* the beginning of the damages period) could be correct only if the spreadsheet tracks sales by calendar quarter.

The "release date" column of the spreadsheet further confirms that the spreadsheet tracks sales by calendar quarter.  One of Pentax's most successful Digital Cameras was the Optio 550.  As shown below, the spreadsheet indicates that Pentax first released and began selling the Optio 550 in March 2003.[2]  But the spreadsheet also shows that the first quarter in which Pentax purchased the Optio 550 from Sanyo was "Q1 2003":



---

[1]     According to Ricoh, the Sanyo fiscal quarters are: April to June (Q1), July to September (Q2), October to December (Q3), and January to March (Q4).  (*See* Dkt. 231, Ricoh Br. at 9.)
[2]     *See* Ex. 2, Kishi Dep. at 86:3-18 (release date refers to the date a camera model is released into the market).

REDACTED

(Dkt. 234-2, OEM Spreadsheet at 4.)  Pentax must of course have purchased the Optio 550 from Sanyo before it began selling it itself.  Accordingly, if Pentax began selling the Optio550 in March 2003 (as the spreadsheet indicates), it must have purchased the Optio 550 at some point in, or prior to, March 2003.  As a result, "2003/1Q" must be calendar quarter 2003 (and thus include March 2003) and cannot, as Ricoh now argues, correspond to April-June 2003.

Confirming that the OEM spreadsheet tracks sales by calendar quarter, Ricoh did not argue a single time during discovery that the spreadsheet—which it generated and produced—tracks sales by fiscal rather than calendar quarter.  Instead, its own damages expert repeatedly "verified" that Kodak's analysis of the OEM spreadsheet—including that the spreadsheet tracks sales by calendar quarter—was correct:

- On May 17, 2013, Kodak's damages expert, Vince Thomas, submitted an expert report concluding that the OEM spreadsheet tracks sales in calendar quarters.  (Dkt. 232-11, Thomas Report at 26-34.)  Ricoh never challenged Mr. Thomas's conclusion.[3]  In fact, Ricoh did not ask Mr. Thomas a single question about his conclusion that the OEM spreadsheet tracks sales by calendar quarter during his deposition.

- On July 8, 2013, Ricoh's own damages expert, Dr. Brian Becker, submitted an expert report and **"verified"** Mr. Thomas' analysis of the OEM spreadsheet.  (Dkt. 187-4, Becker Report at 19-20 ("verifying" that Sanyo paid royalties to Kodak on only a fraction of the Digital Cameras it sold to Pentax).

- On August 8, 2013, Dr. Becker admitted at his deposition that Mr. Thomas's OEM analysis was correct.  (Ex. 3, Becker Dep. at 24:21-25:6 ("Q. Do you believe as you sit here today that the general ordering of the steps that Mr. Thomas performed to calculate damages was 100 percent correct? [Objection] A. Yes, I think that you can say that.  That's fine."); *id.* at 109:5-110:3 ("Q. Right. So based on the count that you have in your report, there were ▮▮▮▮ digital cameras that Sanyo sold to Pentax, but didn't include in the royalty reports it submitted to Kodak, correct? [Objection] A. That's approximately correct .")

---

[3]     Ricoh did file a *Daubert* motion to exclude Mr. Thomas's testimony but that was based only on the assertion that his opinions regarding OEM damages were precluded by the doctrine of patent exhaustion, and the incorrect assumption that Kodak had recovered royalties owed on Pentax cameras in its litigations with Altek Corporation and Asia Optical Co. Inc.  (Dkt. 185.)  That motion was denied.  (Ex. 1, Pretrial Hearing Tr. at 31:12-32:17.)

- On September 23, 2013, Dr. Becker submitted another expert report, again *"verifying"* Mr. Thomas' analysis of the OEM spreadsheet. (Ex. 4, Becker Supp. Report at Updated Tables 9A, 9B, 10A, 10B, Appendix E).

- On October 12, 2013, Dr. Becker submitted yet another report and confirmed *for the fourth time* that Mr. Thomas' analysis of the OEM spreadsheet was correct. (Ex. 5, Becker 2d Supp. Report at Updated Tables 9A, 9B, 10A, 10B, Appendix E).

**B.     Ricoh Stipulated That It Owes the $8.46 Million.**

Ricoh did not attempt to take any discovery to challenge that it owes the $8.46 million on the Sanyo-manufactured Digital Cameras that Pentax purchased from Ricoh.  It did not take or provide any discovery indicating that the OEM spreadsheet it produced tracked sales in fiscal quarters and it apparently did not attempt to obtain any information, documents, or statements from Sanyo indicating that Sanyo had already paid the $8.46 million to Kodak.

Instead, Ricoh relied on its "patent exhaustion" argument and represented to the Court that the royalties that Sanyo paid Kodak are *"entirely irrelevant*."  (Dkt. 163, Ricoh Opp. to Kodak Pretrial Memorandum of Law at 8 ("…whether the OEMs have 'actually paid royalties' to Kodak is *entirely irrelevant* to this case.") (emphasis added); *see also id.* at 2-9.)  Even after the Court rejected this argument and held that Ricoh was only excused from paying royalties on Digital Cameras for which Sanyo had actually made royalty payments (Ex. 1, Pretrial Hearing Tr. at 31:18-21), Ricoh did not challenge that the OEM spreadsheet tracks sales by calendar quarter or that it owes the $8.46 million.  Indeed, during the October 17, 2013 Pretrial Conference, the Court specifically invited Ricoh to dispute at trial the amount that it owed on the Digital Cameras purchased from Sanyo:

> THE COURT:  The burden will be on Ricoh to show that there were additional payments by OEMs. *It may cross-examine Kodak witnesses with respect to whether or not Kodak's records are adequate to show that no such payments were received with respect to the covered cameras. Ricoh has a right to show, if it can at trial, that really the Pentax recordkeeping was inadequate, to assure the jury that no additional payments were made for the covered cameras.*

(Ex. 1, Pretrial Hearing Tr. at 48:21-49:3 (emphasis added); *see also id.* at 42:13-21 ("…

Obviously, if you have a factual dispute, this is the trial to resolve it…").)  But Ricoh did not take

the Court up on its offer.  To the contrary, on October 20, 2013—the day before trial began—

Ricoh stipulated that it owes the $8.46 million on Digital Cameras Pentax purchased from Sanyo

and affirmatively removed the issue from trial.  (Dkt. 188, Damages Stipulation.)

> **C.**      **The Damages Stipulation Allows Ricoh to Seek to Modify the Judgment Only
> If OEMs "Make" Payments to Kodak After Entry of Judgment.**

The stipulation contains three provisions relating to the amount that Ricoh agreed to pay on

the Digital Cameras that Pentax purchased from Sanyo.  First, at paragraph 5, Ricoh agreed that it

would pay $17.7 million to cover the Digital Cameras that Pentax purchased from all OEMs

(which includes the $8.46 million for the Sanyo cameras).  (Dkt. 188, Damages Stipulation ¶ 5.)

Second, at paragraph 4, Ricoh affirmatively represented that Sanyo had ***not*** paid any of the

$8.46 million to Kodak and that it would not argue that Sanyo had paid these royalties:

> ***Ricoh agrees that none of the royalties Kodak is seeking have already been paid
> by*** *any of the Pentax Original Equipment Manufacturers ("OEM") Altek, Asia
> Optical, and Sanyo, or by* ***any other entity***.  Ricoh agrees that it will not argue or
> present any evidence at trial that the OEMs have paid any such royalties.

(*Id.* at ¶ 4 (emphasis added).)

Third, at paragraph 12, Ricoh agreed that it would only attempt to modify the stipulation in

the event the OEMs "make" payments to Kodak—*i.e.* if an OEM makes a new payment to Kodak

after the date of the stipulation to cover an amount that had not yet been paid:

> …  The provisions of this paragraph are subject to Ricoh's rights to seek to modify,
> vacate, or obtain other relief from judgment with respect to the stipulated dollar
> amount set forth in Paragraph 5(b) under the Federal Rules of Civil Procedure,
> Federal Rules of Appellate Procedure, and/or other applicable authorities ***with
> respect to any payments that Altek, Asia Optical, and/or Sanyo*** <u>***make***</u> ***to Kodak*** to
> the extent such payments represent payments on Pentax digital cameras.

- 8 -

(*Id.* at ¶ 12 (emphasis added).)  Ricoh requested that this provision be added to the stipulation because of Kodak's ongoing litigations with Asia Optical and Altek—other OEMs that sold Digital Cameras to Pentax.  Ricoh indicated that it wanted to preserve the right to modify the stipulation in the event that either made future payments for Digital Cameras that were attributable to cameras sold by Pentax.  (*See e.g.*, Dkt. 163, Ricoh Opp. to Kodak Pretrial Memorandum of Law at 9-11 (arguing that Kodak not entitled to royalties on cameras that were the subject of litigation with Asia Optical and Altek.).)

After the jury returned a verdict for Kodak on the sole remaining issue of whether Pentax DSLR kits are covered by the PLA, Ricoh submitted a proposed Final Judgment to the Court, reiterating that Ricoh agreed to pay the full amount of stipulated damages due on the Digital Cameras that Pentax purchased from Sanyo.  (Dkt. 202, Ricoh Proposed Judgment.)  The Court entered its Final Judgment on November 5, 2013.  (Dkt. 203.)  On March 6, 2014, the Court denied Ricoh's renewed motion for judgment as a matter of law.  (Dkt. 227.)

## III.    ARGUMENT

It is well-established under Second Circuit precedent that a Final Judgment can be modified under Rule 60(b) only in the "***exceptional circumstance***" where there is a genuine mistake of fact or law of which the parties were unaware when the Final Judgment was entered.  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (emphasis added).  Importantly, the Second Circuit has made clear that this standard is ***not*** satisfied when a party enters a settlement or stipulation and later contests that it could have negotiated a better deal.  *See United States v. Bank of New York*, 14 F.3d 756, 759 (2d. Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, [the party] cannot be relieved of such a choice merely because her assessment of the consequences was

incorrect . . . To hold otherwise would undermine the finality of judgments in the litigation

process." ).  Ricoh has not shown the required exceptional circumstances.

> **A.    Ricoh's Motion Should Be Denied Because The Undisputed Evidence Uncovered During Discovery Shows that the Parties' Damages Stipulation Is Correct.**

The factual record in this case—compiled during eleven months of discovery that included

more than thirty depositions, 600 pages of expert reports, and the production of more than 95,000

documents—was undisputed with respect to how the OEM spreadsheet tracked sales.  According

to ***four separate admissions*** from Ricoh's damages expert (Dkt. 187-4, Becker Rep. at 19-20, 22;

Ex. 4, Becker Supp. Report at Updated Tables 9A, 9B, 10A, 10B, Appendix E; Ex. 5, Becker 2d

Supp. Report at Updated Tables 9A, 9B, 10A, 10B, Appendix E; Ex. 3, Becker Dep. at 24:21-25:6,

109:5-110:3), ***the parties' damages stipulation*** (Dkt. 188, Damages Stipulation ¶¶ 4-5), the

***independent conclusion*** reached by Kodak's damages expert (Dkt. 232-11, Thomas Report at 26-

34), and ***the spreadsheet itself*** (Dkt. 234-2, OEM Spreadsheet (including the "release date"

information and the fact that the spreadsheet correlates May 2002 sales with Q2 2002)), the OEM

spreadsheet tracks sales by calendar quarter. [4]

Indeed, throughout the entire course of this case, ***there was not a single instance during***

***discovery that Ricoh contended that the spreadsheet tracks sales by fiscal quarter***.  As a matter of

law, Ricoh cannot use Rule 60 to modify the Final Judgment where the undisputed record evidence

shows that the Judgment is correct.  *See Schlafman v. State Univ. of New York, Farmingdale*, 541

F. App'x 91, 93 (2d Cir. 2013) (affirming the district court denial of Plaintiff's Rule 60 motion

where claims were a "thinly-veiled attempt[ ] to relitigate the district court's evidentiary rulings

---

[4]    The declaration from Sanyo employee Mitsuhiko Maeda that Ricoh attaches to its motion further supports this point.  Mr. Maeda makes a series of conclusory assertions but ***never contends*** that that the OEM spreadsheet shows sales by fiscal quarter rather than calendar quarter.  (Dkt. 233.)

and factual issues underlying the merits"); *Tetra Sales (U.S.A.) v. T.F.H. Publications, Inc.*, 727 F. Supp. 92, 96 (S.D.N.Y. 1989) (denying Plaintiff's motion to modify a detailed joint stipulation on the basis that "a motion under Rule 60(b) is no invitation to relitigation of matter adjudged by the original judgment") (internal citation and quotation omitted).

Ricoh's arguments do not change this result.  Ricoh asserts that it "made a mistake" by conceding that the spreadsheet tracks sales by calendar quarter because Kodak allegedly "withheld information" and was not "forthcoming" with information about Sanyo's royalty payments. (Ricoh Br. at 5.)  This argument fails for multiple reasons.  First, the OEM spreadsheet was created and produced **by Ricoh**.  If the spreadsheet really tracked sales by calendar quarter, Ricoh would have said so at some point during discovery.  Instead, Ricoh and its expert repeatedly said the opposite and conceded that the spreadsheet tracked sales by calendar quarter.

Second, the Court has already rejected Ricoh's assertion that Kodak is somehow at fault for not providing more information from Sanyo.  The Court ruled that Ricoh—not Kodak—bears the burden of producing evidence showing that Sanyo paid any portion of the $8.46 million at issue. (Ex. 1, Pretrial Hearing Tr. at 10:2-12 ("…Ricoh bears the burden of proving that one or more of the OEMs already paid royalties to Kodak for the cameras for which Kodak seeks payment from Ricoh.").)  In fact, the Court denied Ricoh's April 26, 2013 motion to compel in which Ricoh argued, just as it does now, that Kodak should have provided more discovery on the royalty payments it received from OEMs.  (Dkt. 53, Hearing Tr. at 11:6-14 (denying motion to compel additional discovery relating to OEM royalty payments because "fact discovery is closed.  We're in a clean-up period . . . I have not had a clear explanation from you [counsel for Ricoh] as to why you need this [additional] 30(b)(6) deposition, so I'm not going to permit it.").)

Third, Ricoh's argument is legally incorrect.  The cases that Ricoh cites do not, as Ricoh suggests, hold that a Final Judgment can be modified whenever a party asserts that it made a "mistake" during litigation.  Ricoh's cases instead stand for the very different proposition that Rule 60 may be available where a party *did not have an opportunity* to dispute a fact during litigation because of a mistake such as a missed filing deadline.  *See Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 397 (1993) (Rule 60 available where respondents did not have opportunity to contest facts because of missed filing deadline); *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983) (Rule 60 available where movant did not have opportunity to contest facts after missing deadline to answer complaint); *Peterson v. Term Taxi, Inc.,* 429 F.2d 888, 891-92 (2d Cir. 1970) (Rule 60 available where plaintiff did not have opportunity to contest facts after showing up to trial late); *Green ex rel. Estate of Green v. Advanced Cardiovascular Imaging,* 07 CIV.3141 JCF, 2009 WL 3154317 at *1, 4 (S.D.N.Y. Sept. 30, 2009) (Rule 60 available where party did not have opportunity to contest facts because of missed deadlines).[5]

That is plainly not the case here. Ricoh had eleven months of discovery during which it could have argued that the OEM spreadsheet tracks sales by fiscal quarter but instead repeatedly

---

[5]     *The other cases that Ricoh cites are equally inapposite.  See LeBlanc v. Cleveland*, 248 F.3d 95, 98-101 (2d Cir. 2001) (Rule 60 available where plaintiff did not have opportunity to contest facts because claims were dismissed for lack of subject matter jurisdiction); *Foley v. United States*, 645 F.2d 155, 156-57 (2d Cir. 1981) (Rule 60 available where plaintiff did not have opportunity to contest facts after failing to appear at discovery conference); *United States v. Cirami*, 563 F.2d 26, 34-35 (2d Cir. 1977) (Rule 60 available where party did not have opportunity to contest facts because counsel missed deadlines as a result of mental disorder); *Katz v. Mogus*, 07 CIV. 8314 PKC KNF, 2012 WL 263462 at *3-5 (S.D.N.Y. Jan. 25, 2012) (Rule 60 available where parties did not have opportunity to contest facts because order of dismissal was entered in anticipation of settlement that fell through); *Carnegie v. Miller*, 86 CIV. 8658 (KMW), 1991 WL 221102 at *1-3 (S.D.N.Y. Oct. 16, 1991) (Rule 60 available where plaintiff did not have opportunity to contest facts because case was dismissed for failure to prosecute).

admitted that the spreadsheet tracks sales by calendar quarter.  It cannot now use Rule 60 to change the record.

> **B.      Ricoh's Motion Should Be Denied Because Ricoh Waived Any Argument That It Does Not Owe the $8.46 Million.**

Ricoh's motion fails for the additional independent reason that Ricoh long ago waived any claim that it does not owe the $8.46 million on Digital Cameras that Pentax purchased from Sanyo. During discovery, Ricoh made the strategic decision to argue "patent exhaustion" and not to contest the amount of unpaid royalties.  Indeed, Ricoh argued that whether OEMs such as Sanyo had paid royalties was "***irrelevant***."  (Dkt. 163 at 8.)  Even after the Court invited Ricoh to rethink its strategy and argue at trial that it should not have to pay the $8.46 million (Ex. 1, Pretrial Hearing Tr. at 48:21-49:10; 42:13-21), Ricoh declined to do so.  Instead, it entered the stipulation and entirely removed from trial the question of how the OEM spreadsheet tracks sales and whether the $8.46 million calculation is correct. (Dkt. 188 at ¶¶ 4-5)).

Ricoh cannot deliberately decide not to dispute the $8.46 million damages calculation throughout discovery and trial, stipulate to its accuracy, and then try for the first time to dispute this calculation on a Rule 60 motion.  Indeed, in *Progressive Cas. Ins. Co. v. Liberty Mut. Ins. Co.*, 91 CIV. 2477 SWK LB, 1996 WL 524339 (S.D.N.Y. Sept. 13, 1996), the Southern District of New York addressed this precise issue and held that where the plaintiff "made no effort" to seek information from a witness it argued was "key" and then complained of a mistake that "was substantially due to its own neglect," the plaintiff could not use Rule 60 to modify the Judgment. *Progressive*, 1996 WL 524339, *3; *see also Bank of New York*, 14 F.3d at 759 ("When a party makes a deliberate, strategic choice to settle, [the party] cannot be relieved of such a choice merely because her assessment of the consequences was incorrect . . . To hold otherwise would undermine the finality of judgments in the litigation process." ); *Jedrejcic v. Croatian Olympic Comm.*, 190

- 13 -

F.R.D. 60, 80 (E.D.N.Y. 1999) ("Rule 60(b) does not afford relief for deliberate tactical decisions of a party.") (internal quotations and citations omitted).

This well-established rule also makes the declaration from Sanyo employee Mitsuhiko Maeda irrelevant. Mr. Maeda concedes that the alleged information he relies on has been maintained by Sanyo for years. (Dkt. 223, Maeda Decl. at ¶ 5 ("During the course of the Sanyo/Kodak PLA, Sanyo maintained detailed sales records for digital camera products sold to third parties in its capacity as an original equipment manufacturer .").) He even admits that Sanyo "would have provided" the information he relies on had it been asked during discovery (meaning Ricoh, who had the burden to show OEM payments, could have obtained the alleged information). (*Id.* at ¶ 15.) There is thus no information that Ricoh relies on now that it could not have obtained from Sanyo during discovery. As a result, Ricoh could have made the same argument it makes in its Rule 60 motion at any point during discovery. But it never did. As a matter of law, Ricoh cannot rely on evidence that it could have produced—but decided not to—in order to modify a Final Judgment. *See Progressive*, 1996 WL 524339, *3 (denying Plaintiff's motion for Rule 60 relief where Plaintiff "made no effort" to seek information from the "key person" on the fact to which Plaintiff later stipulated and "the mistake [Plaintiff] now complains of was substantially due to its own neglect.").

Nor can Ricoh rely on the language of the parties' damages stipulation to try to make new arguments at this stage. Ricoh argues that the stipulation allows it to now assert for the first time that Sanyo already paid the $8.46 million to Kodak despite that it repeatedly admitted during discovery that Sanyo had not made these payments. (Dkt. 231, Ricoh Br. at 1-2, 11.) But this is directly contrary to the plain language of the stipulation, in which: (i) Ricoh affirmatively agreed that Sanyo had not paid ***any*** of the $8.46 million to date (Dkt. 188 at ¶ 4); (ii) Ricoh agreed that it

would "***not argue***" that Sanyo had made any such payments (*id.*) and (iii) Ricoh agreed that the parties could modify the stipulation only if OEMs like Sanyo "***make***" payments to Kodak for sales to Pentax, *i.e.* if an OEM makes a new payment to Kodak after the date of the stipulation to cover an amount that had not yet been paid (*id.*at ¶ 12).  There is no dispute that this has not happened.

### C.     Kodak Would Be Prejudiced By the Modification That Ricoh Seeks

Ricoh's assertion that Kodak would not be prejudiced if the $8.46 million were removed from the Final Judgment (Dkt. 231, Ricoh Br. at 17-18) is incorrect.  Allowing Ricoh to now reargue one portion of the stipulated damages amount would cause Kodak significant prejudice.  Because Ricoh failed to argue that it does not owe the $8.46 million during discovery or trial (even though all of the alleged evidence it now relies on was available), Ricoh effectively denied Kodak the opportunity of fully testing this argument and the alleged evidence that Ricoh cites.  That is precisely the type of prejudice that is not permitted under Rule 60.  *See Gonzalez v. Armac Indus., Ltd.*, 768 F. Supp. 107, 109-10 (S.D.N.Y. 1991) (denying Plaintiff's motion to vacate the parties' stipulation because of the "late stage" of the proceeding).

Allowing Ricoh to modify the damages stipulation at this late stage would also prejudice Kodak because both parties made concessions in reaching the stipulated damages amount.  Indeed, prior to the stipulation, Kodak was seeking more than $90 million in damages for Ricoh's breach of the PLA. (Ex. 6, Thomas Second Supp Report at 2 ("Total damages including DSLRs with a lens and point-and-shoot Digital Cameras are $90,585,604 USD.").)  By entering the stipulation, Kodak compromised on its damages claim and agreed to accept $75.78 million—nearly $15 million less than it was originally seeking.  (Dkt. 188, Damages Stipulation, ¶ 6.)  If Ricoh had refused to pay the $8.46 million while the parties were negotiating the stipulation, it would have impacted Kodak's ability to compromise its claims.  Ricoh should not be permitted to re-argue one

portion of the stipulation while Kodak is stuck with the concessions that it made in the other parts

of the stipulation.  *See Davila v. Chapman Indus. Corp.*, 89 C 4540, 1990 WL 186480, at *3 (N.D.

Ill. Nov. 20, 1990) (denying Defendant's Rule 60 motion for relief, finding prejudice to Plaintiff

"caused by the defendant's lack of diligence"); *see also In re Master Key Antitrust Litig.*, 76

F.R.D. 460, 464-65 (D. Conn. 1977 (denying defendants' Rule 60 motion to vacate settlement

where "plaintiffs might well have demanded a far greater sum of money before consenting to the

dismissal of the actions.").[6]

## IV.    CONCLUSION

The undisputed record evidence—including the Ricoh OEM spreadsheet itself—confirms

that there was no mistake:  Ricoh owes the $8.46 million on Digital Cameras that Pentax purchased

from Sanyo. Ricoh could have asserted at any point during pretrial discovery that the OEM

spreadsheet tracks sales by fiscal quarter or that Sanyo had already paid the $8.46 million to

Kodak.  But instead of doing so, Ricoh repeatedly represented that the spreadsheet tracks sales by

calendar quarter, waived any argument that it does not owe the $8.46 million, and then stipulated

that it owes this amount.  It is far too late for Ricoh to attempt to undo the record that it created

over the past two years.  Kodak respectfully requests that the Court deny Ricoh's Motion for Relief

from Judgment.

---

[6]    Ricoh's offer to have a new hearing to address the damages owed on the Digital Cameras
that Pentax purchased from Sanyo (Dkt. 231, Ricoh Mot. at 19) fails for the same reason.  It
would be fundamentally unfair to force Kodak to spend additional time and money relitigating
one portion of the stipulation while Ricoh continues to benefit from the concessions that Kodak
made on the other parts of the stipulation.  *See Tetra Sales,* 727 F. Supp. at 96 ("a motion under
Rule 60(b) is no invitation to relitigation of matter adjudged by the original judgment").

**REDACTED**

Respectfully submitted,

Dated: New York, New York
      March 14, 2014

/s/ *Robert J. Gunther, Jr.*
Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR, LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE & DORR, LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax:(617) 526-5000

*Attorneys for Eastman Kodak Company*