UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY, ) ) ) Plaintiff, ) ) v. ) ) RICOH COMPANY, LTD. ) ) Defendant. ) ) ) | Case No. 12-CV-3109 (DLC) |

**RICOH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR RELIEF FROM JUDGMENT**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT..........................................................................................................................3

    I.      Kodak's Efforts To Deny Any Mistake Are Demonstrably False And Underscore The Lengths It Will Go To Preserve Its Improper Double Recovery. ...........................................................................................................3

    II.     Ricoh Has Not Waived It's Right To Seek To Amend The Judgment To Correct For The Mistake. ......................................................................................7

    III.    Kodak Will Suffer No Legitimate Prejudice By Losing Its Improper Double Recovery. ...............................................................................................9

CONCLUSION.....................................................................................................................10

# INTRODUCTION

Kodak does not dispute the fundamental principle that it cannot lawfully recover, and is therefore not seeking, royalties on digital cameras for which it has already been paid royalties by an OEM, such as Sanyo. Kodak has repeatedly conceded this principle against double recovery. *See*, *e.g.*, (Dkt. No 123 [Kodak's Reply in Support of Motion for Partial Summary Judgment] at 3 fn.3.) Moreover, this Court has confirmed this principle in its statements and holdings. (Declaration Of David Eiseman in Support of Ricoh Company, Ltd.'s Motion For Relief From Judgment, Ex. 3 [May 8, 2013 Hearing Transcript] at 3, 5 ("Kodak agrees, as it must, that it cannot collect royalties twice from . . . the sale of the same camera."); Dkt. No. 105 [Order Granting Partial Summary Judgment] at 32 (noting Kodak cannot "seek a double recovery of licensing fees").) Most importantly, the principle is embodied in the parties' October 20, 2013 Joint Stipulation ("Stipulation") and Judgment that is the subject of Ricoh's Rule 60 motion. The Stipulation established that accuracy in the Judgment and avoiding double recovery is more important than any interest in finality by incorporating Ricoh's ability to seek to alter or modify the Judgment in the event there is a change in OEM payments, regardless of how much time has passed since entry of Judgment. (Joint Stipulation at ¶ 12.)

Ricoh's Rule 60 Motion demonstrated that the attorneys and experts on both sides mistakenly concluded that Sanyo had failed to make all required royalty payments to Kodak on licensed products sold to Pentax. That mistake occurred because the attorneys and experts incorrectly assumed the data in the Pentax Spreadsheet was organized in calendar-year quarters, when in fact it was organized in fiscal-year quarters, causing the attorneys and experts to compare misaligned data. Ricoh's motion shows that when that mistake is corrected and the quarterly data in the Pentax Spreadsheet is understood to be in fiscal quarters rather than calendar quarters, the figures align perfectly and demonstrate that Sanyo in fact made its OEM royalty payments to

1

Kodak. To remove any doubt, Ricoh obtained a sworn declaration from Sanyo indicating that it had in fact made all of its royalty payments to Kodak on sales of digital cameras to Pentax during Sanyo's patent license agreement with Kodak.

Yet, in contrast to all its prior statements about principles, Kodak's response to the Rule 60 Motion seeks to preserve its improper double recovery at all costs. It relies on incorrect assumptions and a misreading of a single line of the Pentax Spreadsheet, taken out of context, to argue that the entire document must be based on calendar quarters, and to deny the existence of any mistake. It tries to suggest Ricoh's expert is lying in his declaration when he explains he was mistaken in his prior understanding of the Pentax Spreadsheet, and it mischaracterizes the position of Ricoh's in-house team. Contrary to Kodak's assertions, a more thorough examination of the Pentax Spreadsheet and other evidence does not prove the data is arranged by calendar quarters; it actually confirms that the data is arranged by fiscal quarters as Ricoh explained in its Rule 60 motion. Ultimately, Kodak can only maintain the fiction that there was no mistake by ignoring overwhelming evidence, including Sanyo's unrebutted, sworn statement that it made all its OEM royalty payments on sales to Pentax.

Kodak's other arguments fare no better. Kodak contends Ricoh waived its argument about the mistake by not discovering it and bringing it to the Court's attention sooner. And it complains, without much content, that it would somehow be prejudiced if the Court corrected the mistake now, since time for discovery and testing of evidence has closed. But these arguments would apply whenever a mistake affects a judgment. Nevertheless, Rule 60 lists mistake as a ground for amending a judgment, such motions based on mistake are common (and are commonly granted), and courts have emphasized that timely Rule 60 motions "should be liberally construed when substantial justice will thus be served." *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001)

(*quoting Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963)).  It is therefore no answer for Kodak to point out that the mistake both sides' attorneys and experts made concerning OEM payments is reflected in prior expert statements or even in the Stipulation itself.  That is the nature of the mistake.  Correcting that mistake will not prejudice any legitimate interest Kodak has, although it will undo the substantial prejudice reflected in the current Judgment by eliminating Kodak's double recovery.

Accordingly, Ricoh's Rule 60 Motion should be granted.

## ARGUMENT

**I.     Kodak's Efforts To Deny Any Mistake Are Demonstrably False And Underscore The Lengths It Will Go To Preserve Its Improper Double Recovery.**

Kodak's arguments in its opposition center around its assertion that there was in fact no mistake (Opp. at 3-7, 10), and therefore, Rule 60 does not apply.  Kodak's assertion, however, is demonstrably false.

Kodak bases its assertion on an incorrect "analysis" of a single line of the Pentax Spreadsheet:

Pentax Spreadsheet

[REDACTED]

(Opp. at 5.)  According to Kodak, this line of the Pentax Spreadsheet shows that a single model of camera—the Optio550 (Product No. 76130)—was released in March 2003, and it also shows that [REDACTED] units of the Optio550 were purchased during "2003/1Q."  Kodak infers that the [REDACTED] units on this line must have been the same cameras used in the March 2003 release, and therefore, "1Q" must mean January through March to correspond with the release date in March.  Focusing

on this single line entry and ignoring the remaining hundred-plus pages of data, Kodak concludes the Pentax Spreadsheet must report sales by *calendar* quarters.

Kodak's theory does not stand up to common sense or simple arithmetic. All this line shows is that the Optio550 (Product No. 76130) was released in March, and that ▆▆▆ units (not necessarily the same units in the initial release) were subsequently purchased during April, May and June. This information is easily confirmed by checking Sanyo's sales database report ("Sanyo Data"). (*See* Declaration of Mitsuhiko Maeda in Support of Ricoh Company Ltd.'s Motion for Relief from Judgment ("Maeda Decl.").) The very first page of the Sanyo Data shows sales for the Optio550 (Product No. 76130). (*See id.*, Ex. B.) Adding the monthly sales listed for April-June, 2003 (shown as 2003-04, 2003-05, and 2003-06 in the Sanyo Data and highlighted in yellow) confirms that Sanyo sold a total of ▆▆▆ units to Pentax from April to June—the exact number Pentax reported purchasing in *fiscal* quarter "2003/1Q."

Sanyo Data



4

[Total Units Sanyo Sold from April to June = ███ ]

(*Id.* (highlighting and bracketed information added).)

The Sanyo Data shows a different set of units of the Optio550 (Product No. 76130) that Sanyo sold in March 2003 (shown as 2003-03 in the Sanyo Data and highlighted in blue), which would have corresponded to the release of that camera. This resolves the apparent inconsistency Kodak raised about March 2003 sales of the Optio550.[1] The Sanyo Data therefore confirms that Pentax Spreadsheet refers to *fiscal* not *calendar* quarters.

Likewise, Kodak cannot ignore the mistake by relying on statements from Ricoh's attorneys and experts that they have subsequently acknowledged to be erroneous. Until several months ago, both sides' attorneys and experts believed the Pentax Spreadsheet referred to calendar quarters. Hence, both sides' attorneys and experts believed that the reporting period started on May 1, 2002. And, both sides' attorneys and experts believed that Sanyo had not paid royalties on all sales to Pentax during Sanyo's patent license agreement with Kodak. They were mistaken. As Dr. Becker has explained, his prior understanding and prior statements about the Pentax Spreadsheet were *in error*. (Declaration of Brian C. Becker in Support of Ricoh Company, Ltd.'s Motion for Relief from Judgment ("Becker Decl.") at ¶¶ 4-6.) Kodak therefore cannot point to Dr. Becker's prior "verif[ications]" to disprove the mistake. (Opp. at 6-7.) To the contrary, Dr. Becker's statements demonstrate the parties were mutually mistaken about the Pentax Spreadsheet throughout the litigation and this underlying mistake formed the foundation of the parties' Stipulation.

---

[1] The Sanyo Data makes clear that Kodak has already received royalties on these sales. As the sales did not appear on the Pentax Spreadsheet, however, they are not included in Ricoh's request to modify the Judgment.

5

Without any argument based in fact, Kodak resorts to snide attacks on Ricoh's integrity. If the Pentax Spreadsheet "really" tracked sales by fiscal quarter, Kodak remarks, "Ricoh would have said so at some point during discovery." (Opp. at 11.) According to Kodak, it is inconceivable that Ricoh could have been mistaken about a document "created and produced **by Ricoh**." (*Id.* (emphasis in original).) Kodak is inaccurately characterizing the mistake. Ricoh is not arguing that its in-house team was mistaken about whether the Pentax Spreadsheet was organized by fiscal quarters. (Mot. at 8.) Rather, due to the restrictions of the Stipulated Protective Order, Ricoh's in-house team did not have access to Kodak's data or to the portions of the expert reports comparing Kodak's data to the Pentax data. (*Id.*) Hence, Ricoh's in-house team was not in a position to discover that the experts were misinterpreting the Pentax Spreadsheet in conducting their cross-comparison analysis. (*Id.*) For the avoidance of any doubt, however, Ricoh's internal records confirm that it created the Pentax Spreadsheet by aggregating monthly sales into *fiscal* quarters.[2]

But even without relying on Ricoh's representations, Kodak's argument fails for another simple reason that Kodak completely chooses to ignore: using fiscal rather than calendar quarter results in *no* discrepancy between the model numbers shown in the Pentax Spreadsheet and those appearing in the Sanyo royalty reports. (Maeda Decl., Ex. A.) As shown at Exhibit C to the Declaration of David Eiseman submitted herewith, all models appearing in a given time period on the Pentax Spreadsheet appear in the same time period on the Sanyo royalty reports. Kodak provides no explanation for why using fiscal quarters to interpret the Pentax Spreadsheet shows no discrepancy across the more than 60 digital camera models sold over the course of the entire patent

---

[2] The Pentax Spreadsheet extracts quarterly data from a sales spreadsheet produced as RICOH60000622. Tracing quarterly data to monthly data in RICOH60000622 confirms the Pentax Spreadsheet refers to *fiscal* quarters. As demonstrated in the Declaration of David Eiseman submitted herewith, RICOH60000622 confirms that "2003/1Q" sales aggregate monthly sales from April, May, and June of 2003 (the three months that make up the first quarter of the fiscal year).

license agreement between Kodak and Sanyo, while using calendar quarters shows an error in almost every quarter.  With the correct interpretation, the Pentax Spreadsheet confirms exactly what Sanyo has now affirmed in a sworn statement:  Sanyo has paid royalties on all sales to Pentax during Sanyo's patent license agreement with Kodak.

## II.     Ricoh Has Not Waived Its Right To Seek To Amend The Judgment To Correct For The Mistake.

Kodak complains that the Joint Stipulation incorporated into the Judgment cannot justify Ricoh's Rule 60 request because paragraph 12 permits Ricoh to "seek to modify, vacate, or obtain other relief from judgment with respect to the stipulated dollar amount set forth in paragraph 5(b) under the Federal Rules of Civil Procedure, Federal Rules of Appellate Procedure, and/or other applicable authorities with respect to any payments that [the OEMs] make to Kodak to the extent such payments represent payments on Pentax digital cameras."  Seizing on the tense of the word "make," Kodak argues that Ricoh has waived any right to seek to amend the Judgment based on newly discovered prior payments by OEMs.  (Opp. at 8-9.)

Even if Kodak's interpretation of the tense were correct, which is unclear, any assumptions about prior OEM payments reflected in the Stipulation would merely be part of the mistake that requires correction.  That is inherent in the concept of a mistake warranting an amendment to the Judgment.  The very fact that there was a mistake cannot be the grounds for arguing a party waived their right to seek to correct the mistake.  Instead, where a "previously undisclosed fact [is] so central to the litigation that it shows the initial judgment to have been manifestly unjust," Rule 60 provides relief "even [if] the original failure to present that information was inexcusable." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (affirming relief from judgment based on stipulated facts).  The circularity of Kodak's waiver argument provides sufficient grounds to reject it.

Second, Kodak misses the significance of paragraph 12. What is important is that the parties contemplated the tension between the "no double recovery" rule embodied in the Judgment and the normal interests in finality, and thus stipulated that accuracy in the Judgment and avoiding double recovery is more important than the finality interests that normally attach to a final judgment. Kodak places weight on the tense of the term "make" solely as a justification for it to keep an improper double recovery. Even if "make" had such significance, the term would merely reinforce the parties' mistaken belief that they had eliminated double recovery for existing payments. If the Stipulation had said nothing about amending the Judgment to correct for changes in the status of OEM payments, Ricoh would be free to bring a Rule 60 motion to correct the present mistake and Kodak could not argue it was somehow waived by not being expressly included in the Stipulation. The fact the parties addressed amendments generally and agreed to them to avoid double recovery in at least some circumstances can only strengthen Ricoh's motion to correct the Judgment to avoid double recovery.

Even aside from the Stipulation, Rule 60 provides independent legal authority to correct the mistake underlying the Judgment. Contrary to Kodak's suggestion, relief under Rule 60 is not limited to instances "where a party did not have an opportunity to dispute a fact during litigation because of a mistake such as a missed filing deadline." (Opp. at 12.) As addressed in the Motion, courts grant relief from judgment where the parties incorporated a mutual mistake by stipulation. *See, e.g.*, *Good Luck Nursing Home, Inc.*, 636 F.2d at 577; *Mazzone v. Stamler*, 157 F.R.D. 212, 214 (S.D.N.Y. 1994); *see also EMI Entertainment World, Inc. v. Karen Records*, 05 Civ. 390, 2013 WL 2480212, at * 3 (S.D.N.Y. June 10, 2013) (vacating judgment where movant mistakenly "admitted" plaintiff's status as copyright holder). Courts also grant relief where the movant made a unilateral mistake based on incomplete investigation prior to judgment. *See, e.g.*, *In re UAL*

Case 1:12-cv-03109-DLC   Document 249   Filed 04/01/14   Page 11 of 13
REDACTED

*Corp.*, 411 F.3d 818, 824-25 (7th Cir. 2005); *Guishan, Inc. v. Arici*, 635 F. Supp.2d 187, 192 (E.D.N.Y. 2009); cf. *Gayle v. Harry's Nurses Registry, Inc.*, 07-CV-4672 NGG MDG, 2013 WL 5502950, at *3-4 (E.D.N.Y. Sept. 30, 2013); *Kurzweil v. Philip Morris Companies, Inc.*, 94 CIV. 2373 (MBM), 1997 WL 167043, at *4 (S.D.N.Y. Apr. 9, 1997).  Therefore, even where the parties had an opportunity to litigate factual disputes prior to judgment, relief is still warranted to avoid a mistaken and manifestly unjust judgment.  Cf. *Floyd v. City of New York*, 813 F. Supp. 2d 457, 469-70 (S.D.N.Y. 2011) (reconsidering judgment where party failed to properly analyze relevant data, finding the failure to be a "serious oversight" but "obviously not a tactical decision for which they must now pay the price").

### III. Kodak Will Suffer No Legitimate Prejudice By Losing Its Improper Double Recovery.

As Ricoh has proven, absent modification, the Judgment will work a manifest injustice on Ricoh and provide an inappropriate windfall to Kodak.  Moreover, granting relief and correcting the Judgment is consistent with the parties' stipulations and intent, which themselves are incorporated in the Judgment and Stipulation, and with cases governing relief under Rule 60(b).  Ricoh has acted diligently throughout the case and promptly brought the need for correction to Kodak's and the Court's attention.  Cf. *Davila v. Chapman Indus. Corp.*, 89 C 4540, 1990 WL 186480, at *3 (N.D. Ill. Nov. 20, 1990) (cited Opp. at 16) (denying relief where mistakes were due to movant's persistent lack of diligence, including its inexplicable failure to respond to motions and discovery requests and its inexcusable failure to comply with a court order).

Under these circumstances, Kodak's assertion that it will suffer legitimate prejudice if the mistake is corrected is not persuasive.  Ignoring overwhelming evidence to the contrary, Kodak asserts that double recovery was actually a bargained-for concession that the parties negotiated. (Opp. at 15-16.)  According to Kodak, "[i]f Ricoh had refused to pay the $8.46 million [in double recovery] while the parties were negotiating the stipulation, it would have impacted Kodak's

9

ability to compromise its claims." (*Id.* at 15.)  By this logic, had Kodak known its potential damages were millions lower than anticipated, it would have been *less* willing to compromise and would have demanded *more* money from Ricoh.  Kodak's reasoning is entirely backwards.  If the parties had correctly interpreted the Pentax spreadsheet during negotiations, that correction would only have lowered the upper limit for any claimed damages.  Indeed, correcting the mistake earlier would have directly decreased the parties' stipulated damages amount since Kodak has long conceded that it cannot lawfully recover, and is therefore not seeking, royalties on digital cameras for which it has already been paid royalties by an OEM.

Finally, Kodak cannot claim any undue prejudice from the few months' delay in correcting the Judgment.  Ricoh discovered this mistake and brought it to Kodak's and the Court's attention far earlier than is typical for Rule 60 motions.  Indeed, Kodak never had an enforceable judgment.  Less than four months elapsed since entry of Judgment, and at all times the Judgment has subject to this Court's jurisdiction and potential reconsideration.  Kodak cannot identify any legitimate loss it will incur or harm it will suffer if the Court corrects the mistake and removes its improper double recovery.  Most importantly, the Judgment and Stipulation envisioned the need for just such corrections and clearly placed the principle of no double recovery ahead of any interests Kodak may have in finality.

## CONCLUSION

For the reasons stated above and in Ricoh's Rule 60 Motion, Ricoh respectfully requests that paragraph 5(b) of the Judgment be corrected to replace "$17.7 million" with "$10.0" million.  In addition, paragraph 5(e) of the Judgment should be modified to replace "$4.83 million" with "$4.06 million" to account for interest on the improperly included damages.

DATED: March 26, 2014

By: /s/ *David Eiseman*

David Eiseman*
Melissa J. Baily
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davideiseman@quinnemanuel.com
melissabaily@quinnemanuel.com

Christopher Tayback*
Ryan S. Goldstein*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
ryangoldstein@quinnemanuel.com

Richard de Bodo*
Bingham McCutchen LLP
1601 Cloverfield Boulevard
Suite 2050 North
Santa Monica, CA 90404
(310) 907-1000
rich.debodo@bingham.com

David B. Salmons*
Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6000
david.salmons@bingham.com

*Admitted pro hac vice*

*Counsel for Defendant Ricoh Company, Ltd.*